KILPATRICK TOWNSEND & STOCKTON LLP
X. Diego Wu Min (State Bar No. 317488)
dwu@ktslaw.com
12255 El Camino Real, Suite 250
San Diego, CA 92130
Telephone:(858) 350-6154
Facsimile: (858) 350-6111

Dario A. Machleidt (Admitted *Pro Hac Vice*)
dmachleidt@ktslaw.com
Kathleen R. Geyer (Admitted *Pro Hac Vice*)
kgeyer@ktslaw.com
1420 Fifth Avenue
Seattle, WA 98101
Telephone: (206) 224-2857
Facsimile: (206) 374-2199

Kristin M. Adams (Admitted *Pro Hac Vice*)
kmadams@ktslaw.com
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6138

Attorneys for Defendant
KAOTICA CORPORATION

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ICONIC MARS CORPORATION, a California corporation<br><br>Plaintiff,<br><br>v.<br><br>KAOTICA CORPORATION, a Canadian corporation<br><br>Defendant.<br><br><br>AND RELATED COUNTERCLAIMS | Case No. 3:22-cv-00092-CAB-DEB<br><br>**DEFENDANT KAOTICA CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Complaint Filed: January 23, 2022<br><br>Date: September 4, 2024<br>Courtroom: 15A<br><br>The Honorable Judge Bencivengo<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

# TABLE OF CONTENTS

I.  INTRODUCTION ....................................................................................................1

II.  BACKGROUND ...................................................................................................2

    A.  Lobbin's representation of Iconic in its disputes with Kaotica. ..................................................................................................4

    B.  The parties' First Lawsuit ending in the Stipulated Judgment. ..................................................................................................5

    C.  Iconic's and Lobbin's Contempt Hearing misrepresentations. ............................................................................................5

    D.  Iconic's complaint in this lawsuit and its attempt to blame Kaotica. ..................................................................................................7

    E.  Kaotica's answer, its counterclaims, and Iconic's denial of undisputed facts. ..................................................................................8

    F.  Kaotica's Sanctions Letter that Iconic and its lawyers ignored. ..................................................................................................9

    G.  Iconic's ever-changing testimony about the similarities between its Old and New Comet. ...................................................11

    H.  Iconic's refusal to stick to its verified discovery responses and Lobbin's misrepresentation about Kaotica's damages report. ...............................................................12

    I.  The Court's judgment as a matter of law and jury verdict. ..................................................................................................13

III.  LEGAL FRAMEWORK ....................................................................................14

IV.  ARGUMENT .....................................................................................................15

    A.  The Court should sanction Iconic's lawyer, Lobbin, under 28 U.S.C. § 1927 and order him to pay Kaotica's attorney fees. ..................................................................16

        1.  Lobbin knew all along that Iconic's state-law claims were frivolous. ..............................................................16

        2.  Lobbin defended his client against Kaotica's breach-of-contract counterclaim by falsely stating that Iconic complied with the Stipulated Judgment. .....................................................................20

3. Lobbin litigated in bad faith by intentionally injecting confusion into what should have been a simple case. ..................................................20

4. Lobbin unreasonably and vexatiously tried this case by ignoring facts, the rules, and this Court's orders. ...............................................21

B. The Court should find this to be an "exceptional case" and order Iconic to pay Kaotica its attorney fees because Iconic litigated in an exceptionally improper fashion, in line with the jury's willful trade dress infringement verdict...............................................28

C. The Court should sanction Iconic, Lobbin, and SML Avvocati under its inherent authority for Kaotica's attorney and expert fees. .................................33

D. The Court should hold Iconic, Lobbin, and SML Avvocati jointly and severally liable. ...........................................34

V. CONCLUSION .......................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*800 Adept, Inc. v. Murex Sec., Ltd.*,
539 F.3d 1354 (Fed. Cir. 2008) ........................................................................18

*Avirgan v. Hull*,
932 F.2d 1572 (11th Cir. 1991) ........................................................................17

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
No. 09-cv-1091, 2013 WL 3833065 (D. Minn. July 23, 2013) .........................2

*Bell v. California*,
No. C01-0870, 2003 WL 23784808 (N.D. Cal. Aug. 26, 2003).......................22

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
963 F.3d 859 (9th Cir. 2020)............................................................................31

*Bullard v. Chrysler Corp.*,
925 F. Supp. 1180 (E.D. Tex. 1996) ...................................................................2

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ...........................................................................15, 33, 34

*Estate of Blas ex rel. Chargualaf v. Winkler*,
792 F.2d 858 (9th Cir. 1986)...............................................................14, 20, 27

*City of Carlsbad v. Shah*,
850 F. Supp. 2d 1087 (S.D. Cal. 2012) ............................................................31

*Dimension One Spas, Inc. v. Coverplay, Inc.*,
No. 03-cv-1099, 2008 WL 4165034 (S.D. Cal. Sept. 5, 2008).........................18

*Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*,
524 F.3d 1254 (Fed. Cir. 2008).........................................................................18

*Eclipse Grp. LLP v. Target Corp.*,
No. 15-cv-1411-JLS (BLM), 2017 WL 2103573 (S.D. Cal. May 12,
2017)....................................................................................................................2

*Fitness IQ, LLC v. TV Prod. USA, Inc.*,
No. 10-cv-2584, 2012 WL 13175920 (S.D. Cal. Sept. 14, 2012)..........15, 17, 34

*Haynes v. Home Depot USA, Inc.*,
800 F. App'x 480 (9th Cir. 2020)................................................................15

*Idle Media Inc. v. Wisdom*,
No. LA CV180-3817, 2019 WL 13039655 (C.D. Cal. June 25, 2019) .............30

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,
68 F.4th 1203 (9th Cir. 2023)...................................................14, 15, 29

*Kilopass Tech., Inc. v. Sidense Corp.*,
82 F. Supp. 3d 1154 (N.D. Cal. 2015).........................................................30, 33

*Kimble v. ADT Sec. Servs.*,
No. 3:16-cv-02519, 2018 WL 1898556 (S.D. Cal. Apr. 20, 2018).............14, 32

*LCS Grp. LLC v. Shire LLC*,
No. 1:18-cv-02688, 2020 WL 9260990 (S.D.N.Y. Jan. 8, 2020) ........................2

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
726 F.3d 1359 (Fed. Cir. 2013).........................................................33

*Morrison v. Walker*,
939 F.3d 633 (5th Cir. 2019)..............................................................17

*Nutrition Distribution LLC v. PEP Rsch., LLC*,
No. 16-cv-2328, 2018 WL 3769162 (S.D. Cal. Aug. 9, 2018)..........................2

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) ..........................................................................14

*Pham v. Talkdesk, Inc.*,
No. 2:22-cv-05325, 2023 WL 6892582 (C.D. Cal. Sept. 29, 2023) ...................2

*Phonometrics, Inc. v. Westin Hotel Co*,
350 F.3d 1242 (Fed. Cir. 2003).........................................................35

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*,
793 F.2d 1132 (9th Cir. 1986)..............................................................31

*Pumphrey v. K.W. Thompson Tool Co.*,
62 F.3d 1128 (9th Cir. 1995)..............................................................15

*Reply All Corp. v. Gimlet Media, Inc.*,
No. 15-cv-4950, 2021 WL 1291103 (E.D.N.Y. Apr. 5, 2021) ..................13, 19

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
No. 18-cv-967, 2023 WL 7597630 (S.D. Cal. Nov. 14, 2023) ........................29

*San Diego Comic Convention v. Dan Farr Productions*,
No. 14-cv-1865, 2019 WL 1599188 (S.D. Cal. Apr. 15, 2019), *aff'd
in relevant part,* 807 F. App'x 674 (9th Cir. 2020)................................28, 29, 33

*Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*,
251 F. Supp. 3d 1288 (N.D. Cal. 2017), *aff'd,* 786 F. App'x 662 (9th
Cir. 2019).......................................................................................................31

*Soules v. Kauaians for Nukolii Campaign Comm.*,
849 F.2d 1176 (9th Cir. 1988) ........................................................................14

*SunEarth Inc. v. Sun Earth Solar Power Co., Ltd*,
839 F.3d 1179 (9th Cir. 2016)............................................................15, 29, 32

*Swisher Hygiene Franchise Corp. v. Barton*,
No. 20-16727, 2022 WL 1055563 (9th Cir. Apr. 8, 2022) ..............................15

*Takeda Chem. Indus., Ltd. v. Mylan Lab'ys, Inc.*,
549 F.3d 1381 (Fed. Cir. 2008) ......................................................................33

*Toyo Tire & Rubber Co. Ltd. v. Doublestar Dong Feng Tyre Co., Ltd.*,
No. SACV-15-00246, 2018 WL 3203421 (C.D. Cal. June 26, 2018) ..............14

*In re W. Fid. Mktg., Inc.*,
No. 4:01-MC-0020-A, 2001 WL 34664165 (N.D. Tex. June 26,
2001) ..............................................................................................................21

*World Triathalon Corp. v. Dunbar*,
539 F. Supp. 2d 1270 (D. Haw. 2008) ............................................................30

*World Triathlon Corp. v. Hapai*,
320 F. App'x 778 (9th Cir. 2009) ...................................................................30

**Statutes**

15 U.S.C. § 1117(a) .................................................................................................34

28 U.S.C. § 1927................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 26............................................................................................19, 32

Fed. R. Civ. P. 30................................................................................................24

Fed. R. Civ. P. 54(d)(2)(B)(iii) ..........................................................................2

# <u>TABLE OF ABBREVIATIONS & ACRONYMS</u>

| | |
|---|---|
| Kaotica | Defendant Kaotica Corporation |
| Iconic | Plaintiff Iconic Mars Corporation |
| Lobbin | Stephen Lobbin |
| Osborn | Joshua Osborn |
| SML Avvocati | SML Avvocati, P.C. |
| Olaleye | Oluseyi Olaleye |
| Zukowski | Konrad Zukowski |
| Billick | Tim Billick |
| Roberts | Jack Roberts |
| Old Comet or Version 1 | *See* Dkt. 96 at 2. |
| New Comet or Version 2 | *See* Dkt. 96 at 2. |
| Sanctions Letter | The letter Kaotica sent Lobbin on July 14, 2022 (Ex. 3)[1] |
| Trade Dress | *See* Dkt. 111 at 17 (Instruction No. 16) |
| Stipulated Judgment | Dkt. 1-2 |
| Contempt Hearing | Transcript of the hearing held in *Kaotica IP Corp v. Iconic Mars Corp.*, No. 21-CV-433-CAB-DEB (S.D. Cal.) on March 24, 2022 (Ex. 4) |
| First Lawsuit | The case captioned *Kaotica IP Corp v. Iconic Mars Corp.*, No. 21-CV-433-CAB-DEB (S.D. Cal. 2021) |
| Purple Comet Video | The Video introduced as Ex. 264 during trial in this matter |
| TT | Trial Transcript (Ex. 1) |
| ENE | Early Neutral Evaluation |
| JMOL | Judgment as a Matter of Law |
| MSJ | Motion for Summary Judgment |

---

[1] All Exhibits are attached to the Declaration of Dario Machleidt.

## I.  INTRODUCTION

Sometimes victory at trial is not enough. This is one of those times. Iconic's and its attorney's repeated pattern of vexatious litigation in the face of overwhelming and contrary law and facts necessitates deterrence. From before the inception of this lawsuit, plaintiff (Iconic) and its counsel (Lobbin and his firm, SML Avvocati) misrepresented damaging facts, ignored Court orders, and refused to follow the Federal Rules. Iconic litigated what it knew was a meritless case and, when forced to defend its untenable positions before a jury, turned a simple trial into a debacle.

No matter how often this Court reprimanded Iconic's lawyers and its president (Olaleye), they simply did not get the message. Day after day, witness after witness, and argument after argument, Iconic and Lobbin treated the courtroom as their playpen, free from the restrictions of facts, laws, and rules. Ultimately, their antics failed. The jury rejected Iconic's single-remaining claim (the others having been rejected by the Court) and, instead, found Iconic liable to Kaotica for willful trade dress infringement.

This motion builds off of the Court's warning to Lobbin on the final day of trial, given during his rebuttal closing, that "you are bordering on getting a contempt issued from me." TT 764:2. While Lobbin might have avoided contempt, this Court must make clear that litigants and lawyers cannot repeatedly violate their ethical and legal duties with the impunity that Iconic and Lobbin exhibited here.

Title 28 U.S.C. § 1927, the Lanham Act, and the Court's inherent authority provide ample grounds to award fees and issue sanctions.[2] Under these authorities,

---

[2] Kaotica seeks to recover its attorney fees and costs against: (1) Lobbin as a sanction under § 1927; (2) Iconic because this is an exceptional case under the Lanham Act; and (3) Iconic, Lobbin, and SML Avvocati under the Court's inherent authority to issue sanctions for bad faith conduct in the course of litigation. In addition to Lobbin, two other lawyers litigated on Iconic's behalf: Josh Osborn and Adrian Lyons. Kaotica does not seek sanctions against Osborn or Lyons.

Kaotica requests that this Court find: Kaotica to be the prevailing party[3]; this to be an exceptional case; and bad faith on the part of Iconic, Lobbin, and SML Avvocati. Kaotica further requests that the Court find Iconic and its counsel jointly and severally liable for Kaotica's attorney fees and costs, and that the Court set a schedule for the parties to brief the recoverable amount.[4] Doing so would deter Iconic and its counsel from continuing to misuse the courts,[5] admonish them for the unreasonable manner in which they litigated this case, and compensate Kaotica for having to defend against Iconic's frivolous claims.

## II. BACKGROUND

Kaotica and Iconic compete in the market for microphone isolation products. Kaotica sells a device called the "Eyeball," named for its distinct appearance.

---

[3] Kaotica should be deemed the prevailing party even though equitable issues remain outstanding. For example, Iconic alleged intentional interference and unfair competition. Only the interference claim was tried to the jury. Iconic relies on the same factual allegations to support both causes of action but it has not yet filed a motion regarding resolution of its unfair competition claim.

[4] Consistent with Fed. R. Civ. P. 54(d)(2)(B)(iii), Kaotica estimates its recoverable attorney fees and costs to be less than or about $1.5 million.

[5] Courts, including this one, have sanctioned Lobbin in the past, which is relevant when considering "any previous similar conduct by the attorney." *Bullard v. Chrysler Corp.*, 925 F. Supp. 1180, 1190 (E.D. Tex. 1996); *see LCS Grp. LLC v. Shire LLC*, No. 1:18-cv-02688, 2020 WL 9260990, at *8 (S.D.N.Y. Jan. 8, 2020) (granting sanctions and explaining that the "Court is troubled by what it views as Lobbin's effort to mislead the Court as to his history regarding sanctions … Lobbin confirmed … he was sanctioned under 28 U.S.C. § 1927 once and under Federal Rule of Civil Procedure 37 on three separate occasions"); *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, No. 09-cv-1091, 2013 WL 3833065, at *6 (D. Minn. July 23, 2013) ("Sanctions against Lobbin … are warranted."); *Pham v. Talkdesk, Inc.*, No. 2:22-cv-05325, 2023 WL 6892582, at *4 (C.D. Cal. Sept. 29, 2023) ("The decision to impose terminating sanctions was an extreme measure commensurate with [Pham's and Lobbin's] egregious, intentional, bad faith conduct."); *Nutrition Distribution LLC v. PEP Rsch., LLC*, No. 16-cv-2328, 2018 WL 3769162, at *13 (S.D. Cal. Aug. 9, 2018), *report and recommendation adopted as modified in* No. 16-cv-2328, 2018 WL 6323082 (S.D. Cal. Dec. 4, 2018) ("[Lobbin] did contribute to the discovery violations …"); *Eclipse Grp. LLP v. Target Corp.*, No. 15-cv-1411-JLS (BLM), 2017 WL 2103573, at *5 (S.D. Cal. May 12, 2017).

Iconic's first two commercial products (introduced long after the Eyeball entered the market) are named "Comet." In 2017, shortly before Olaleye started Iconic, he asked Kaotica whether he could promote and sell the Eyeball. TT 429:1-432:21. Kaotica agreed but ended the relationship in 2019. TT 434:18-435:20. Iconic began developing the Old Comet in 2018 when Olaleye was still selling the Eyeball, and by 2020, Iconic came out with the Old Comet. TT 150:11-15, 249:6-8.

Kaotica sued Iconic in 2021 after concluding that the Old Comet infringed, among other rights, Kaotica's Trade Dress. That suit ended in Kaotica's favor in October 2021 with the parties signing the Stipulated Judgment. There, Iconic conceded that Kaotica's Trade Dress was valid, the Old Comet infringed, and continued sales of that product would irreparably harm Kaotica. Dkt. 1-2, ¶¶ 3(j), 7, 8. Despite Kaotica spending $80,000 to litigate against Iconic the first time around, Kaotica accepted $25,000 as a compromise that was meant to stop Iconic's continued violation of Kaotica's rights. TT 361:24-362:3.

But Iconic did not stop. First, it breached the Stipulated Judgment almost immediately after signing it. Iconic never stopped advertising its Old Comet despite the clear requirement in the Stipulated Judgment to do so. Dkt. 111 at 14 ("The Court found that Kaotica has proven its claim against Iconic for breach of contract in so far as … Iconic still used images of the Comet Version l to market its products in violation of the Stipulated Judgment."); *see also* Ex. 2. Second, just two months after agreeing the Old Comet infringed the Trade Dress covering the external appearance of the parties' microphone isolation devices, Iconic began selling the New Comet *that is externally identical to the old one*—notably, only the external elements of the Eyeball design were claimed as the Trade Dress and any changes to the inside of the Comet are legally irrelevant to infringement of that right. *See* Dkt. 1-2; TT 251:4-7, 499:17-500:15.

Iconic's ongoing infringement of the Trade Dress and refusal to comply with this Court's Stipulated Judgment led Kaotica to send cease-and-desist notices to

third parties where Iconic continued to advertise the Old Comet. In response to these notices, Iconic sued, accusing Kaotica of breach of contract, intentional interference, and misrepresentation. Iconic built much of its complaint around Kaotica's alleged misrepresentations to Shopify made in 2021. Dkt. 1, ¶¶ 9, 10, 13-17, 45-57, 63-67.

Yet even before filing suit, Osborn admitted in a letter to Kaotica that its 2021 notice to Shopify did not cause Iconic any harm. Ex. 5 ("[I]t appears that Shopify did not do anything until recently [in January 2022.]"). Osborn also acknowledged that Shopify "mistakenly thought" Kaotica's notice "was a DMCA request and treated it as such." *Id.*; *see also* Ex. 3 ("[Y]our January letter also admits that Shopify 'mistakenly thought' the November 2021 letter 'was a DMCA request and treated it as such.' This was a Shopify mistake that, in Iconic's complaint, you tried to pin on Kaotica …").

Kaotica counterclaimed and defended itself against Iconic's accusations, ultimately prevailing against its adversary both prior to and at trial. In particular, the jury found Iconic liable for willful trade dress infringement. This suit, however, was unnecessary and litigated in bad faith. Iconic and its counsel weaponized their ill-founded claims based on uncorroborated and wholly speculative allegations of hundreds of thousands of dollars in damages to Iconic in hopes of extracting a large settlement payment from Kaotica as a means to avoid the cost of this lawsuit. The parties' history, further discussed below, shows this to be an exceptional case litigated in bad faith.

A. **Lobbin's representation of Iconic in its disputes with Kaotica.**

Lobbin and SML Avvocati have always represented Iconic against Kaotica. They were counsel of record in the First Lawsuit, represented Iconic in its pre-suit actions relating to Kaotica's notices, argued on Iconic's behalf during the Contempt Hearing, and represented Iconic in this lawsuit. Lobbin's signature appears on the Stipulated Judgment. Dkt. 1-2 at 7. He served as Iconic's lead counsel during trial.

**B.      The parties' First Lawsuit ending in the Stipulated Judgment.**

Kaotica filed the First Lawsuit in early 2021. It saw Iconic's Old Comet, determined it infringed various intellectual property rights, and sued. Among its asserted rights was the Trade Dress. The Stipulated Judgment depicts the Trade Dress as the Kaotica "Eyeball," including its "pop filter." Dkt. 1-2 at 3, 8-18. The Court entered judgment against Iconic and in favor of Kaotica. There, Iconic agreed that the Old Comet infringed and that the Trade Dress was valid. It even represented that the Old Comet was the only product Iconic had sold as of October 2021, which was an important reason why Kaotica agreed to settle in the first place. Dkt. 1-2, ¶ 5.

**C.      Iconic's and Lobbin's Contempt Hearing misrepresentations.**

Kaotica sought to hold Iconic in contempt shortly after the parties signed the Stipulated Judgment. Relevant here, Kaotica asked the Court to find that Iconic violated the Stipulated Judgment by continuing to advertise products using images of the Old Comet into 2022, including its recently released New Comet. *See, e.g.*, Ex. 4, 19:8-13.

The Court held a hearing on Kaotica's motion on March 24, 2022. There, Lobbin began to attempt to distance himself and Iconic from the text of the Stipulated Judgment. He represented that the "trade dress, over my objections, was not defined in the settlement agreement." Ex. 4, 14:21-22. He also said that "[w]e don't admit to the validity of any trade dress, and we don't admit to the infringement of any trade dress …." Ex. 4, 15:2-10. Contrary to the terms of the Stipulated Judgment—signed just months before the hearing—Lobbin told this Court: "We didn't infringe their trade dress then. We don't infringe after January 1st." Ex. 4, 15:17-18; *id.*, 16:23. This Court shut down this argument, telling him the "fact that you signed an agreement and agreed to be permanently enjoined and now claim you don't know what their trade dress was is your problem, not their problem." Ex. 4, 18:21-23.

This Court's next series of questions led to Lobbin making factual

misrepresentations that underpinned this entire suit, including through trial more than two years after the Contempt Hearing. The Court asked him the following question: Kaotica has "contended through this demonstration and in their papers that you were advertising actively the originally accused [Old Comet] product and that even though you ultimately sold the new [Comet] product, the pictures, the advertisements that brought people to your website continued after the 1st [of January 2022] to be the accused device. Is that true?" Ex. 4, 19:8-13.

Lobbin responded with a clear "no": "No, it's not true. So this is the original version 1 accused product at the beginning of the case. *This disappeared before January 1st. The product disappeared. The advertising for the product disappeared. Gone.*" Ex. 4, 19:14-18 (emphasis added); *see also id.*, at 21-22 ("This is version 2. This is the only thing that was sold, advertised, discussed, shown anywhere after January 1st."); *id.*, at 22:25-23:3.

Iconic's president, Olaleye, took the stand during the hearing. He testified consistently with Lobbin's representations. Ex. 4, 25:22-27:22. Based on Lobbin's representations and Iconic's testimony, the Court explained that, "right now, I have this gentlemen's [Olaleye's] testimony that these changes were made and that those figures are not the version that as the accused device." Ex. 4, 28:2-4. The Court denied the request to hold Iconic in contempt.

Iconic filed its complaint in this action while the parties were litigating Kaotica's contempt motion in the First Lawsuit. Kaotica counterclaimed for breach of the Stipulated Judgment, relying on the same facts from its contempt motion but under the preponderance-of-the-evidence standard. Dkt. 12 at 18, n. 2. Assuming Iconic and Lobbin would stick to their story from the Contempt Hearing—that Iconic got rid of all images of the Old Comet beginning in 2022—Kaotica embarked on proving what Iconic should have, but did not, admit on its own; namely, it violated the Stipulated Judgment.

Kaotica's unrebutted proof took several forms: an admission by Iconic that

the Purple Comet Video shows the Old Comet; Kaotica's CEO's own recording of Iconic's website in January 2022 showing that the Purple Comet Video was prominently displayed on the first page of the website; Kaotica's CEO's own recording of Iconic's Instagram page in 2022 showing that the Purple Comet Video was posted on Iconic's new Instagram page in April 2022; and a declaration from Vimeo that the Purple Comet Video on Iconic's website had been viewed over 6,500 times since January 2022.[6] Dkt. 54-1 at 14-16; TT 443:8-444:15 (discussing Trial Ex. 443).[7] The Court ruled on summary judgment that Iconic breached the Stipulated Judgment. Dkt. 77 at 2.

### D. Iconic's complaint in this lawsuit and its attempt to blame Kaotica.

Iconic sued Kaotica in March 2022. Kaotica summarizes here Iconic's affirmative claims that made it to summary judgment or trial.

<u>Declaratory judgment that its New Comet did not infringe the Trade Dress.</u> Iconic asked this Court to find that the New Comet did not infringe the same Trade Dress covered by the Stipulated Judgment (and that Iconic admitted its Old Comet

---

[6] Kaotica obtained multiple additional sources of proof showing Iconic's breach. Dkt. 54-1 at 16 ("Iconic continues promoting and advertising the Comet 1.0 in other ways as well. For instance, its Facebook page has postings dating back to 2021 (and earlier) … Iconic reluctantly admitted that some of these posts—which remain available today—show the Comet 1.0. (citations omitted)"). It relied on the Purple Comet Video, however, to ensure Iconic could not recycle its false arguments from the Contempt Hearing that it replaced all images of the Comet on its websites. Iconic's social media posts from 2021, showing the Old Comet (and long before Iconic claims to have begun selling the New Comet) remain available today.

[7] In his opening statement, Lobbin characterized evidence of Iconic's breach as Kaotica having "found some back page of the internet or somewhere on our website that our owner will tell you he had nothing to do with, with this product still being shown." TT 127:7-9. This was factually untrue and legally irrelevant. TT 203:2-9 ("THE COURT: [Olaleye] is responsible. I have already ruled on it. So you just, what? You are just going to ignore my ruling that the Court's already ruling there was a breach of the contract because images were used to market his device, after January 1st of 2022, that were the Comet 1? They provided evidence of that. You guys had nothing in response to that to contradict it, so I ruled on it. It's done.").

infringed). Dkt. 1, ¶¶ 37-44.

Breach of contract (Shopify & Facebook). Iconic accused Kaotica of breaching the Stipulated Judgment by sending a letter to Shopify in November 2021 that informed it about the parties' agreement. *Id.*, ¶ 10. Iconic separately contended that Kaotica breached the agreement by informing Facebook that Iconic could not offer for sale the Old Comet on Facebook. *Id.*, ¶ 11.

Interference. Iconic argued that Kaotica's notices to various third parties in 2022 regarding Iconic's alleged infringement and breach of the Stipulated Judgment were unlawful. *Id.*, ¶¶ 52, 60.

Misrepresentation. Iconic accused Kaotica of falsely telling Shopify that an action between the parties was pending as of January 6, 2022. *Id.*, ¶¶ 15, 16, 52, 60.

**E.    Kaotica's answer, its counterclaims, and Iconic's denial of undisputed facts.**

Kaotica answered the complaint on May 6, 2022. Dkt. 12. As part of its counterclaims, Kaotica alleged—and attached supporting evidence—that numerous contentions in Iconic's complaint were wrong. First, regarding Iconic's contract claim, Kaotica explained: "Shopify took no action in response to the November 15, 2021 letter until January 2022." Dkt. 12, p. 11, ¶ 9. This fact was undisputed, was always known to Iconic, remained unchanged throughout the course of the litigation (including at trial), and ultimately proved fatal to this part of Iconic's contract claim. *See* TT 555:14-558:13, 580:6-21, 653:9-18. Yet in its response to Kaotica's counterclaims, Iconic denied this statement. Dkt. 19, ¶ 9.

Second, Kaotica set the record straight about the alleged misrepresentation to Shopify. Kaotica explained that its then-counsel, Billick, "corrected Shopify's misunderstanding regarding the existence of a pending action seeking a court order" and that Kaotica's counsel explained to Shopify, "[t]o be clear, Kaotica ***already has*** a court order [the Stipulated Judgment] that demands the removal of all content that advertises the Iconic Mars Comet product." Dkt. 12, at 14 ¶¶ 13-14 (emphasis in

original). Iconic denied these facts. Dkt. 19, ¶¶ 13-14.

Kaotica likewise supported the accuracy of its various cease-and-desist notices. For example, already at this early stage of the case, Kaotica pointed to Iconic's use of the Purple Comet Video as proof that Iconic violated the Stipulated Judgment. *See, e.g.*, Dkt. 12, at 11-13, ¶¶ 10-11; *id.*, ¶ 11. Once more, Iconic denied these factually supported averments. Dkt. 19, ¶¶ 10-11.

### F. Kaotica's Sanctions Letter that Iconic and its lawyers ignored.

On July 14, 2022, Kaotica sent its Sanctions Letter to Iconic, addressing it to Lobbin. Ex. 3. The letter echoed much of what Kaotica wrote in its answer and also emphasized facts undercutting Iconic's complaints that Lobbin already knew:

> Iconic's claims are based on allegations that are simply untrue. For example, contrary to your breach-of-contract accusations, Mr. Billick's November letter to Shopify did not cause Iconic any harm in 2021. You admitted this very fact in a January 2022 letter you sent Kaotica shortly before filing suit: "However, it appears that Shopify did not do anything until recently …" Remarkably, you took the opposite—and false—position in the complaint: "On November 15, 2021, Defendant Kaotica violated the Stipulated Injunction by sending a DMCA cease and desist notice concerning IMC's Old Comet product to both Shopify and Facebook, resulting in a major interruption in IMC's business."

Ex. 3 at 1.

Osborn, on behalf of SML Avvocati, sent the "January 2022" letter referenced above on January 11, only a few days before Iconic filed this lawsuit. Ex. 5. Kaotica reminded Lobbin of this correspondence in its Sanctions Letter. Ex. 3. This Court relied on that very same SML Avvocati letter to grant Kaotica's JMOL during trial:

> THE COURT: The letter that appears at Exhibit 340, which was sent from the Iconic firm, specifically says Shopify did not do anything until recently, which I'm understanding to be in January [2022] …

> THE COURT: I don't care why you're asking the question, Counsel. I care about you misleading the jury and leading out an inference that in this hot holiday season, he sent a letter intended – intentionally intending to misrepresent to them that they couldn't support this website and they did something; and they didn't, so I want you to clear up with them that nothing happened with Shopify.

TT 555:14-558:13, 580:6-21, 653:9-18, 20:21-22 (Lobbin admitting "Shopify didn't cause us any damage because Shopify allowed us to continue selling products").

In its Sanctions Letter, Kaotica also highlighted what it pointed out in its answer—that Kaotica never misrepresented anything to Shopify:

> Further, to the extent you did not know when you filed the complaint, you now know that Kaotica did not misrepresent the existence of a "pending action" in 2022. Kaotica's answer, counterclaims, and supporting exhibits make clear that this was Shopify's error that Kaotica corrected the same day it was made.

> Ultimately, the entire factual support for Iconic's claim of misrepresentation is wrong; at most, Shopify's errors led to the issues you complain about. We expect that Iconic will not continue pursuing its baseless misrepresentation argument and related allegations. Should this case proceed, we expect Iconic to dismiss its misrepresentation claim. Because you know that Kaotica did not misrepresent the existence of a "pending action" in 2022, we expect that Iconic will amend its complaint to remove this allegation as a basis for breach of contract, intentional interference with prospective economic advantage, and unfair competition.

> If Iconic continues to pursue its baseless claims, we will take appropriate actions, including seeking Rule 11 sanctions for maintaining positions that you know lack evidentiary support (and [] are contrary to the evidence).

Ex. 3 at 2. Rather than voluntarily dismiss its misrepresentation claim, Iconic forced Kaotica to move for summary judgment.

Kaotica informed Lobbin that Iconic violated the Stipulated Judgment and that it was continuing to do so during the parties' lawsuit. Kaotica also pointed out Lobbin's own false statements made during the Contempt Hearing:

> Iconic continues to violate the Stipulated Judgment to this day. That judgment prohibits Iconic from advertising and promoting the Version 1.0 Comet in 2022. You represented at the contempt hearing that Version 1.0 "disappeared before January 1st. The product disappeared. The advertising for the product disappeared. Gone…This is version 2. This is the only thing that was sold, advertised, discussed, shown anywhere after January 1st."

> That is not true. As only one example, Iconic continues to advertise and promote Version 1.0 in a video on its Instagram page: [showing the Purple Comet Video appearing on Iconic's *new* Instagram page in July

2022[8]].

Ex. 3 at 2-3. Lobbin never responded to the Sanctions Letter. Nor did Iconic change its litigation strategy in response to the letter.

### G. Iconic's ever-changing testimony about the similarities between its Old and New Comet.

An important issue for multiple claims is the similarity between the external appearance of Iconic's Old and New Comets. Iconic and Lobbin constantly changed their story on how these two products compared to each other.

Contempt Hearing. During the Contempt Hearing, Lobbin conceded that the Old Comet, which Iconic admitted infringed the Trade Dress, looks the same as the New Comet. Ex. 4, 17:3-4 ("The outside shape, the same. So when you have the filter on, version 2 looks like version 1"); Ex. 4, 22:16-18. Yet he quickly followed that statement with the brazen allegation, contradicted by the Stipulated Judgment, that "we never thought there was any trade dress infringement because we never thought that there was any trade dress." Ex. 4, 22:14-22.

Interrogatory response. Iconic did not identify any external, aesthetic differences between its Old and New Comets in its original interrogatory responses, served December 14, 2022, or when it verified the responses on October 30, 2023. TT 499:17-500:15.

Deposition testimony. Iconic's deposition testimony differed from its interrogatory response. Olaleye, Iconic's only deponent, now claimed that the New Comet was denser than its predecessor. *Compare* TT 168:19-169:12 & 253:10-256:20, *with* TT 499:17-500:15.

Trial. Both Iconic and Lobbin substantially changed their tune during trial. Kaotica summarized the change in its closing argument:

---

[8] Iconic's president claimed Kaotica's actions resulted in a permanent takedown of Iconic's Instagram. TT 181:23-182:9. He testified that he "had to build the website from scratch" again in 2022. *Id.* That means any images and videos of the Old Comet still present on Iconic's websites in *2022* were put there anew by Iconic *after the date the Stipulated Judgment went into effect*, in violation of that agreement.

Things changed, in trial, for a third time. When the Iconic CEO was being asked questions by his lawyers and he had the Comet, the Version 2 in his hands, he added more detail again … he referenced angles. There's a difference in angles being changed between the old and the new. He talked about how the new one is taller than the old one. We heard that testimony. I had the chance, of course, to examine him on cross-examination, and I brought up what he said at his deposition. We talked about that. But what you did not see, … we took the Version 2 Comet that we have had in our possession since January of 2022, the one that was purchased by Mr. Billick, and we looked at that one, and we compared it to the Version 2 Comet that the Iconic team brought to this trial for you and had their CEO inspect. And we put the two New Comets together, and they were different. The version that we bought before this lawsuit, in January of 2022, is different than the one that they brought to this trial.[9]

TT 731:1-732:10; *see also* TT 168:19-169:12.

### H. Iconic's refusal to stick to its verified discovery responses and Lobbin's misrepresentation about Kaotica's damages report.

Summary judgment and motions *in limine* largely went in Kaotica's favor.[10] During those hearings, however, Iconic and Lobbin repeatedly refused to treat their verified interrogatory responses as binding. Over the course of sur-replies pointing out Iconic's attempt to change the landscape of its allegations (Dkts. 71-1, 74; Dkt. 96, p. 3 nn. 1-5), to pages of transcripts where Kaotica kept explaining where Iconic was arguing allegations that were nowhere to be found in its complaint or verified interrogatory responses (Ex. 6, 17:21-32:9), Kaotica spent unnecessary time and

---

[9] Kaotica brought this difference to the Court's attention to explain why the parties were going to introduce two sets of each product. TT 482:2-4. Lobbin defensively proposed that "I think it might be the manufacturing tolerances of the product … I just want to give some context." TT 482:14-18. But the Comet products are manufactured using injection molding, which creates a product by filling a rigid mold with foam. There is no evidence on record to indicate injection molding is cable of suffering from manufacturing tolerances.

[10] As one example, the Court quickly ruled against Iconic on its misrepresentation claim. Ex. 6, 9:15-18; *id.*, 9:23-25. This was the inevitable outcome based on the undisputed record and Lobbin's own admissions. Iconic, however, kept this claim in the case without any support. *Infra* § II.F.

resources simply ensuring that Iconic and Lobbin followed basic litigation rules.[11]

This came to a head when Lobbin argued Iconic's *Daubert* motion against Kaotica's financial expert (Roberts). His report was straightforward and only addressed Kaotica's potential financial recovery based on Iconic's trade dress infringement. Roberts did not opine on any damages Iconic owed Kaotica for Iconic's breach of the Stipulated Judgment. But during the parties' first hearing, Lobbin represented otherwise: "certainly, to quantify in any significant degree that an image on the internet, without any sales, has some effect on Kaotica in a financially quantifiable way is much too speculative for the Court to allow." Ex. 6, 35:6-9; *id.*, 36:9-11. Notably, this argument was not even a basis briefed in Iconic's *Daubert* motion. Dkt. 57 at 13-14.

Lobbin's references to just an "image" on the internet related to Kaotica's breach-of-contract counterclaim. But Roberts said nothing in his report about it, something Lobbin, as the lawyer arguing to exclude Roberts' opinions, certainly knew. Ultimately, however, Lobbin's false characterization of Roberts' opinions led this Court to hold a separate, second *Daubert* hearing to address Iconic's motion with Roberts called to testify. Beforehand, Kaotica provided the entire Roberts report to the Court. At the second hearing, where Kaotica brought Roberts for examination, the Court denied Iconic's motion without taking testimony.

## I. The Court's judgment as a matter of law and jury verdict.

The Court held a jury trial from June 10-13, 2024. It granted Kaotica's JMOL

---

[11] Iconic sought summary judgment on every single one of its claims, including, remarkably, misrepresentation. Dkt. 57; Dkt. 61 ("Iconic does not selectively present only those issues ripe for adjudication on summary judgment but seeks summary resolution of *all* of Iconic's affirmative causes of action and *all* of Kaotica's counterclaims. Iconic, however, primarily relies on unsupported attorney argument and selective facts most helpful to it while ignoring any facts to the contrary. The end result is an overzealous hope to prevail without trial on a case that Iconic filed but did little to prosecute."). Its briefing often conflated what facts it contended were relevant to different claims. Dkt. 71-1 at 2-3. Such haphazard briefing led to confusion and unnecessary time spent correcting the record.

on Iconic's breach of contract claim. It let the interference claim go to the jury. The jury ruled against Iconic on its single claim, found in favor of Kaotica on its counterclaims, and awarded it over $686,000 due to Iconic's willful trade dress infringement. Dkt. 113 (verdict form). The Court entered judgment in favor of Kaotica on July 17, 2024. Dkt. 116.

## III.  LEGAL FRAMEWORK

Title 28 U.S.C. § 1927. "Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "A prerequisite to the imposition of Section 1927 sanctions is that the attorney's conduct be in bad faith." *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1185 (9th Cir. 1988). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Estate of Blas ex rel. Chargualaf v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986) (citations omitted). "Bad faith may be inferred from a totally baseless course of conduct." *Kimble v. ADT Sec. Servs.*, No. 3:16-cv-02519, 2018 WL 1898556, at *5 (S.D. Cal. Apr. 20, 2018) (quotation omitted).

Lanham Act. The Lanham Act "authorizes discretionary attorney fees to the prevailing party in 'exceptional cases.'" *Toyo Tire & Rubber Co. Ltd. v. Doublestar Dong Feng Tyre Co., Ltd.*, No. SACV-15-00246, 2018 WL 3203421, at *4 n.3 (C.D. Cal. June 26, 2018) (quoting and citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, (2014), and 15 U.S.C. § 1117(a)). "A court determines if a case is exceptional by considering the 'totality of the circumstances' and evaluating whether the case is 'one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and facts of the case) or the unreasonable manner in which the case was litigated' based on a preponderance of the evidence." *Jason Scott Collection,*

*Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 550, 217 L. Ed. 2d 293 (2024) (quoting *SunEarth Inc. v. Sun Earth Solar Power Co., Ltd*, 839 F.3d 1179, 1180 (9th Cir. 2016)). Courts consider the "'totality of the circumstances' using a 'nonexclusive list' of factors, including 'frivolousness, motivation, objective unreasonableness (both in factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 1223 n.13 (internal citations omitted). The "*SunEarth* test is less stringent than the previous [pre-*Octane Fitness*] 'willful infringement' standard" and, accordingly, a "case of willful infringement would satisfy the *SunEarth* test." *Id.*

Inherent equitable power. A court may award attorney fees if it finds the losing party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42-47 (1991). The underlying rationale for this type of "fee shifting" is punitive and "can be imposed only in exceptional cases and for dominating reasons of justice." *Fitness IQ, LLC v. TV Prod. USA, Inc.*, No. 10-cv-2584, 2012 WL 13175920, at *4 (S.D. Cal. Sept. 14, 2012). The award of fees in this context "satisfies a dual purpose-deterrence and compensation." *Id.*, at *7.

"District courts 'have inherent authority to discipline lawyers.'" *Swisher Hygiene Franchise Corp. v. Barton*, No. 20-16727, 2022 WL 1055563, at *1 (9th Cir. Apr. 8, 2022) (quoting *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995)). This includes the ability to sanction law firms. *Haynes v. Home Depot USA, Inc.*, 800 F. App'x 480, 487 (9th Cir. 2020). "Sanctions on attorneys under this inherent power are reviewed for abuse of discretion" and will not be overturned "unless the court committed an error of law or the court's factual determinations were clearly erroneous." *Swisher Hygiene*, 2022 WL 1055563, at *1 (quotation omitted) (quotation omitted).

## IV.   ARGUMENT

The Court should award Kaotica the attorney and expert fees it spent

litigating against Iconic. First, Section 1927 authorizes a critically important fee award against Lobbin. Second, the jury's willful trade dress infringement verdict and the manner in which Iconic and its counsel litigated this action support an exceptional case finding and a fee award. Third, this Court has the inherent authority to make Kaotica whole by ordering Iconic and its counsel to pay for Kaotica's attorney and expert fees. To avoid any doubt, the Court should not try to divorce the conduct of Iconic from its lawyers. They have jointly spent the past several years forcing Kaotica through unnecessary litigation. They must jointly be held accountable to Kaotica.

### A. The Court should sanction Iconic's lawyer, Lobbin, under 28 U.S.C. § 1927 and order him to pay Kaotica's attorney fees.

#### 1. Lobbin knew all along that Iconic's state-law claims were frivolous.

Iconic threatened Kaotica with recovery of hundreds of thousands of dollars based on allegations of breach of contract, misrepresentation, and intentional interference. Only the interference claim reached the jury. The Court disposed of all others before then. Lobbin knew these claims were objectively baseless, yet he brought frivolous claims for the improper motive of using them as leverage to get Kaotica to pay Iconic an amount it did not owe.

Misrepresentation. Lobbin's decision to ignore the undisputed fact that no misrepresentation took place (even seeking summary judgment in Iconic's favor on that claim) shows a profound disregard of his ethical duties. In its answer and the Sanctions Letter, Kaotica pointed out, with support, why Shopify made a mistake that Kaotica immediately corrected. *Supra*, §II.e. Yet this did not matter to Lobbin. He ignored the facts and forced Kaotica to litigate the claim, seek summary judgment on it, and then re-litigate it again as Lobbin kept trying to insert it back into the case. *See, e.g.*, Dkt. 96 at 3 n. 1.

Lobbin's decision to ignore undisputed facts harmful to his client is only one example of how he "multiplie[d] the proceedings … unreasonably and vexatiously."

28 U.S.C. § 1927. It also shows his resort to "frivolous dilatory tactics" taken simply to run up Kaotica's litigation expenses. *Fitness IQ*, 2012 WL 13175920, at *7; *see also Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (affirming an award of fees and costs pursuant to 28 U.S.C. § 1927 and explaining that, "[w]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest") (quotation omitted).

Breach of contract (Shopify). Kaotica pointed out in its answer and again in its Sanctions Letter what Lobbin knew from the beginning: Iconic suffered no harm *in 2021* (the only year that mattered for Iconic's contract claim) from Kaotica's November 2021 letter to Shopify. *Supra*, §II.e-f. Iconic rejected this fact when answering Kaotica's counterclaims and Lobbin simply pretended it did not exist by ignoring the Sanctions Letter. But Lobbin must contend with it now. He should be sanctioned for "advanc[ing] a baseless claim despite clear evidence undermining his factual contentions." *Morrison v. Walker*, 939 F.3d 633, 638 (5th Cir. 2019).

Breach of contract (Facebook). The same holds true for Facebook. Iconic contended that Kaotica's actions breached Paragraph 12 of the Stipulated Judgment. That paragraph, however, does not impose any obligations on Kaotica. While the parties never agreed on whether *Iconic*'s actions in 2021 breached that provision, there is nothing there for Kaotica to breach. At best, Lobbin forced Kaotica to expend resources defending against a legally baseless contract claim that should, if anything, have been litigated as an interference or unfair competition claim. Indeed, in a November 22, 2021 letter, Lobbin threatened Kaotica's counsel with a "lawsuit alleging Unfair Competition and alleging misrepresentation" based on Kaotica's actions in 2021. Ex. 7 at 2. He said nothing about a contract claim.

Intentional interference. Iconic put most of its efforts on interference, contending Kaotica's notices led to Iconic's loss of its original Instagram account and the near-total destruction of Iconic's business. *E.g.*, TT 199:10-200:2. But other than allege this unfounded claim in its complaint, Lobbin did virtually nothing to

prove it. For instance, Iconic originally accused Kaotica of asserting patent infringement before inspecting the New Comet and that this contention somehow meant Kaotica was liable for interference. Dkt. 1, ¶ 18. Proving this allegation required Iconic's lawyers to muster clear-and-convincing evidence that Kaotica made these assertions in bad faith. *See 800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008).

A "bad faith standard cannot be satisfied in the absence of a showing that the claims asserted were objectively baseless." *Dimension One Spas, Inc. v. Coverplay, Inc.*, No. 03-cv-1099, 2008 WL 4165034, at *17 (S.D. Cal. Sept. 5, 2008). "Subjective considerations of bad faith are irrelevant if the assertions are not objectively baseless." *Id.* The "objectively baseless" standard can be satisfied by showing that the defendant's patent rights at issue in the communication were "plainly not infringed." *Id.* "[O]bjective baselessness requires a determination based on the record ultimately made in the infringement proceedings and the record of the state tort action, and not on the basis of information available to the patentee at the time the allegations were made." *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1264 (Fed. Cir. 2008) ("Dominant's focus on the contention that there was no indication that Schachtner had performed a sufficient analysis … [was irrelevant to] the issue of … objective[] baseless[ness].").

Lobbin, however, did no work to develop the record consistent with these legal requirements. Instead, he simply relied on the notion that Kaotica first accused the New Comet of patent infringement without inspecting that product. Dkt. 1, ¶ 18. Even if true, at most, these allegations about Kaotica's pre-suit conduct deal with Kaotica's *subjective* intent. They are irrelevant to *objective* considerations that the law requires Iconic to prove.

In contrast to Iconic's lack of effort, Kaotica devoted significant resources to defending against the interference count. It sought discovery, moved for summary judgment, and opposed Iconic's corresponding motion. And Kaotica prepared its

defense for trial. It brought Billick from Seattle to San Diego to rebut any allegation that Kaotica and its counsel possessed *subjective* bad faith in asserting infringement (they did not) even though Iconic never produced any evidence supporting objective bad faith. *See, e.g.*, TT 519:7-521:12; TT 583:11-13 ("Mr. Billick is our witness literally to give context to all of their allegations that jumble everything together.").

Kaotica also retained Roberts to counter Iconic's $300,000+ damages contentions[12] premised on alleged interference. Iconic repeatedly refused to explain any remotely legitimate basis for its $300,000 in alleged losses from use of its original Instagram account, setting forth no information in any Rule 26 Initial Disclosures, in interrogatory responses, at deposition of its 30(b)(6) witness, or in any pleadings or briefings, and did not put forth any damages expert. Ex. 8 at 16:21-25:12; Dkt. 87 §§ I-III(B), III(D). Lobbin's failure to develop this claim and its related damages theory converted it into an objectively unreasonable one, as plainly evidenced by this Court's exclusion of Iconic's damages theory underpinning all but a mere $15,000 of alleged damages. Ex. 8 at 23:16. Such failure to do the work on a claim used to threaten one's opponent with crippling damages supports a finding of bad faith. *See, e.g.*, *Reply All Corp. v. Gimlet Media, Inc.*, No. 15-cv-4950, 2021 WL 1291103, at *4 (E.D.N.Y. Apr. 5, 2021) (awarding attorney fees under Section 1927 for "advancing unsubstantiated and legally incognizable damages theories").

At trial, Olaleye confirmed that the sales information Iconic provided could not even have mathematically come close to the remaining $15,000 in sales alleged from Facebook interference. TT 260:17-270:23 (confirming Iconic knew it tracked Facebook sales data, yet alleged $15,000 in lost Facebook sales over 10 days, when

---

[12] These figures were speculative moving targets. In its Initial Disclosures, Iconic claimed $120,000 in damages. Dkt. 87-4 (Iconic's Rule 26(a) Initial Disclosures) at 2. Yet in its response to contention interrogatories, Iconic increased that amount to $315,000 in damages, $300,000 of which allegedly relates to the loss of Iconic's Instagram account in 2022 ($15,000 stems from harm Iconic claims it suffered in 2021). Dkts. 87-2 at 6 & 87-3 at 6 (Iconic's Verified Responses to Kaotica's First and Third Set of Interrogs.).

Iconic's own financials demonstrate an average of approximately only $2,000 *per month*—equating to an average of less than $700 for 10 days, which is less than 5% of the alleged $15,000 damages). Iconic's entire damages theory on this claim was demonstrably factually impossible and thus sanctionable.

### 2. Lobbin defended his client against Kaotica's breach-of-contract counterclaim by falsely stating that Iconic complied with the Stipulated Judgment.

"Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument," *Winkler*, 792 F.2d at 860, and that is what Lobbin did here. He repeatedly misrepresented Iconic's use of images of the Old Comet to advertise and market the New Comet. *Supra*, §II.c. Even at trial, Lobbin and his team pretended as if the Court had not ruled against them on Kaotica's contract claim. TT 203:2-9. There is simply no excuse for this habitual failure to tell the truth or, once called out on it, to acknowledge their errors. The factual record and trial transcript do not support an innocent mistake as to the falsity of these representations, and the Court should disregard any averments by Iconic to that effect.

Indeed, much of the present case stemmed directly from Lobbin's shameless—and false—assurances to this Court in the Contempt Hearing that all traces of the Old Comet disappeared from Iconic's websites. This was a frivolous argument carried through into this lawsuit. Either Lobbin knew it was frivolous as a discussion with his client (or review of its websites) would have shown, or he recklessly misrepresented the truth of a critical fact that he had a duty to investigate (Iconic's compliance with the Stipulated Judgment). Either way, Lobbin's statements and arguments around this issue amount to bad faith justifying sanctions.

### 3. Lobbin litigated in bad faith by intentionally injecting confusion into what should have been a simple case.

This should have been a simple case. Kaotica served targeted discovery requests seeking the bases for Iconic's allegations. Iconic answered and never amended or supplemented. Accordingly, Kaotica prepared its case based on Iconic's

verified discovery responses. That is when things went awry. Lobbin continually raised new arguments that differed from his client's prior representations and, fed up with this course of conduct, the Court admonished Lobbin for doing the same thing at trial:

> THE COURT: Counsel, you can't keep – the thing doesn't just keep rolling. You started this case. You filed this complaint. You identified where the harm was happening. You answered interrogatories under oath, verified that this is where the harm was and now it seems like it's just, well, we also meant this and meant that, and it doesn't work that way.

TT 24:21-25:5; *see also* TT 158:21-23; TT 157:14-16; TT 161:9-162:15.

Kaotica raises this fact for two reasons. First, Lobbin multiplied the proceedings unreasonably and vexatiously. 28 U.S.C. § 1927. His conduct "obstruct[ed] the orderly process of the litigation" during three hearings (including a second, unnecessary *Daubert* hearing scheduled in large part because of Lobbin's misrepresentations about the nature of Roberts' opinions), and at trial. *In re W. Fid. Mktg., Inc.*, No. 4:01-MC-0020-A, 2001 WL 34664165, at \*22 (N.D. Tex. June 26, 2001). Second, the Court should not consider denying sanctions because of the seemingly complicated nature of this case. The only reasons this case appeared complicated stemmed from Lobbin's refusal to follow the rules, opting instead to create a moving target at each hearing and, finally, at trial. But that conduct justifies finding Lobbin litigated in bad faith.

### 4. Lobbin unreasonably and vexatiously tried this case by ignoring facts, the rules, and this Court's orders.

Lobbin's refusal to follow the rules continued throughout trial. Whether dealing with the Federal Rules or orders from this Court, Lobbin treated them as mere non-binding suggestions, willfully and repeatedly ignoring them throughout the trial. Parties and lawyers cannot be allowed to behave as Lobbin did.

<u>Repeated violation of this Court's pretrial rulings.</u> The Court ruled *in limine* that the parties were not to discuss patents, copyrights, or trademarks during trial.

Ex. 8, 42:4-17. The Court reminded the parties of this ruling before opening statements, stressing that it "[r]eally [didn't] want to hear any more discussion about patents and copyrights because they're not at issue in this case, and I think it's creating a false impression to the jury. But I trust that you understand that at this point." TT 110:22-25.

The Court, unfortunately, was wrong. In opening statement, Lobbin told the jury that Kaotica in the First Lawsuit "asserted a patent. They asserted another patent … They asserted a copyright. They asserted a trademark.[13]" TT 118:10-12; TT 119:1-4. He continued his pattern of violating the Court's pretrial ruling, going so far as to tell the jury that Kaotica's previously asserted patents were no longer in the case and that "the registered trademark they asserted against us in the first lawsuit" was also "gone." TT 121:16-20. Such allegations were factually wrong and also violated this Court's rulings. Lobbin knew this because the Court reminded him that same day of its ruling. And as Iconic's lead lawyer during the First Lawsuit, he knew what intellectual property Kaotica did, and did not, assert. Nothing justifies Lobbin's blatant disregard of this Court's orders or factually incorrect representations to the jury.

Lobbin tried to circumvent the *in limine* ruling in other ways as well. During cross-examination of Kaotica's CEO (Zukowski), Osborn (Lobbin's associate)[14]

_____

[13] The Court pointed out that Lobbin misstated the facts because Kaotica had not asserted a trademark in the First Lawsuit. TT 236:11-15 ("You've been playing fast-and-loose with a lot of things including in your opening statement yesterday where you said they accused your client of trademark infringement. There was no trademark claim in that initial lawsuit. That was just factually incorrect.").

[14] Osborn's conduct shows he "unreasonably and vexatiously multiplied the proceedings" by violating this Court's orders and he, together with Lobbin, "acted in bad faith." *Bell v. California*, No. C01-0870, 2003 WL 23784808, at \*18-19 (N.D. Cal. Aug. 26, 2003) (sanctioning only the senior lawyer). That means this "Court is within its discretion to impose sanctions against both" lawyers. *Id.* at \*19. Kaotica requests, however, that the Court sanction Lobbin and not his associates. Ideally, Osborn will learn from his mistakes the next time around. *Id.* ("The Court hopes that [counsel] will learn from her mistakes … ").

repeatedly tried to force Kaotica's utility patent into the case. First, he attempted to impeach Zukowski using that patent. TT 320:16-322:5; *id.*, 321:3-5. The Court said yet again that "[y]ou're not going to pull up the specifications of the patent to demonstrate that the design of a circle is purely functional … I don't care. I have ruled on this three or four times now." TT 321:24-322:5.

Osborn did not heed this warning. He again attempted to backdoor the patent into the case, this time reading from it during his continued questioning:

> THE COURT: Go ahead, Counsel. Your objection?
>
> ATTORNEY GEYER: These are all statements from the patent. He's reading it into the record.
>
> THE COURT: It's also irrelevant. The cylindrical shape of the interior of the device is not part –
>
> ATTORNEY OSBORN: He said that –
>
> THE COURT: Do not talk over me and do not yell. Calm down. The trade dress is this, the outside with the pop filter. This is not part of the trade dress. All your questions about how this functions are irrelevant to the trade dress … You will not ask any more questions about the cylindrical shape of the interior because it is not relevant to this case. The case is about whether the curve on the outside – If you can establish there is a functionality to the roundness of the ball, I'll let you go there, not using the patent. But this part doesn't matter. It's not part of the trade dress. The trade dress in this case is the exterior, that it's in a round shape … We're not going to talk about this anymore.

TT 325:2-326:4. No amount of warnings stopped Iconic's lawyers from repeatedly violating this Court's pretrial rulings. They shamelessly did it over and over again. Such disregard for the Court justifies sanctioning Lobbin. Rules and orders matter, and Lobbin showed that regular admonitions are insufficient.

Violation of pretrial rulings regarding the Contempt Hearing. The Court told Lobbin that the "word 'contempt' should not be used in this case with regard to anything that's presented to the jury." Ex. 6, 11:19-20. He ignored this instruction. In his opening statement, Lobbin tried to overcome this ruling by referencing the outcome of the Contempt Hearing (borne of Lobbin's and Iconic's blatant misrepresentations) without actually saying the word "contempt": "The second time,

they came rushing back into court and said, 'This Version 2 is violating, breaching the settlement agreement, where they agreed not to sell version 1.' Well, Version 1. Version 2. Different color. A little bigger. Ridges on the inside. Different angles. Different size of the planes on the bottom. Different product. Second time we came to court, the Court said no."[15] TT 124:12-18.

Continuing the pattern of repeatedly ignoring this Court, Lobbin tried again. This time, during cross-examination of Zukowski, Osborn asked him whether it was "true that in 2022, you approved a motion to hold Iconic in contempt of Court?" TT 374:17-18. The Court showed restraint when sustaining Kaotica's objection, cautioning Osborn that "I don't want to hear that again. I have already discussed that with you, your side." TT 374:22-25.

Violation of pretrial ruling using improper ENE evidence. Lobbin represented Iconic during the ENE that led to the Stipulated Judgment. Osborn tried to use an attorney-only email from that period to "refresh[]" Zukowski's recollection. TT 490:17-23. That email did not include Zukowski and, as the Court reminded Iconic's lawyers, "ENE proceedings are not actually admissible and usable." TT 491:12-14.

Lobbin, however, tried again. When cross-examining Billick, Lobbin asked if Kaotica's prior litigation counsel informed him "about a design around that Iconic Mars was pursuing." TT 543: 15-17. Kaotica pointed out that Lobbin was "trying to inject ENE privileged conversations into this trial … This is the second time they've done it." TT 543:21-544:1. Lobbin, however, would not simply agree to stop bringing up privileged, confidential ENE communications. TT 544:13-545:2.[16]

---

[15] This Court ruled against Kaotica during the Contempt Hearing partly (and perhaps entirely) because of Lobbin's and Olaleye's false statements about Iconic's compliance with the Stipulated Judgment. It is another example of bad faith that Lobbin brought up his victory-through-deceit to improve his case during this trial.
[16] Lobbin's unseemly behavior also encompassed petty matters that, unfortunately, led to trial being more complicated than necessary. For instance, Rule 30 is clear that each party pays the court reporter for their own deposition transcript. Lobbin, however, never obtained a copy of the transcript of his client's deposition. Days

Iconic's refusal to answer the question. Kaotica moved *in limine* and asked the Court to ensure that Iconic's president, Olaleye, would actually answer questions asked of him at trial. Dkt. 87, at 23-25. Kaotica brought this motion because, during its deposition of Iconic, Olaleye frequently answered simple questions with non-responsive, advocacy-filled speeches. *Id.*, at 24-25. The Court told Lobbin: "you are going to consider yourself cautioned that your witness needs to answer questions directly …" Ex. 8, 35:23-36:4. Lobbin assured the Court that he was "confident that it can be managed." Ex. 8, 36:14-15. He was wrong.

During cross, Olaleye repeatedly refused to confine his answers to the specific question he was asked. *See, e.g.*, TT 245:16-21, 246:1-15, 246:17-247:14, 249:9-251:2, 257:12-259:7, 260:3-15, 268:6-269:17, 270:4-18, 273:3-274:9. As an example, Kaotica's counsel asked the simple question, "[s]ticking with the old Comet or the Version 1 Comet, Iconic Mars admitted that the old Comet infringes Kaotica's trade dress?" TT 249:9-11. Rather than answer the question, Olaleye injected Iconic's anti-Stipulated Judgment theme that, for "the old Comet, I had to settle, I had no choice … even though the product is different." TT 249:12-15.

The Court struck the response, Kaotica asked again, and this time, Lobbin objected: "Vague as to time. Evidence, as part of a document, it's already in

_____

before trial, Lobbin requested a copy from Kaotica's counsel and refused to meet and confer unless they complied. Ex. 9 at 1 (Lobbin stating, "Just to be clear, if you don't send us what we asked for, we're not having a call today."); Ex. 10 at 1 (Lobbin asking for a copy of the transcript taken of his client). Lobbin even attempted to use this tactic to prevent Kaotica from using that transcript during trial. TT 27:2-3. The Court pointed out what Lobbin seemed unable to understand: "If [Iconic] doesn't have a copy, that's their problem." TT 27:18-20. As another, more-recent example, Kaotica told Iconic it planned to file its attorney fee and sanctions request in a single brief due to the factual overlap in issues. Kaotica sought an extra 10 pages for filing a single, combined brief, and asked whether Iconic/Lobbin would oppose. Ex. 11 at 1. To avoid any doubt, Kaotica's offer meant it was giving up 15 pages to which it was entitled. Indeed, had Kaotica filed two motions—one under the Lanham Act, another under § 1927 and the Court's inherent authority—it would have received 25 pages *per* motion. Lobbin, however, opposed. *Id.*

evidence." TT 249:21-22. The Court overruled all objections and asked the question itself. Even then, Iconic's witness refused to cabin his answer to a 'yes' until admonished once more. TT 250:1-11. This was part of a much-broader effort to thwart an otherwise simple trial. As the Court told Iconic and Lobbin, "you have to follow the rules of court." TT 274:5. Despite Kaotica's efforts by bringing a pretrial motion to ensure this happened, in the end, Lobbin yet again "multiplie[d] the proceedings … unreasonably and vexatiously." 28 U.S.C. § 1927

Lobbin's attempt to blame Kaotica's lawyers for Iconic's president's surprising admission at trial. Lobbin saved his most-egregious bad faith conduct for the last day of trial. Iconic's president made a surprising (and factually incorrect) admission during trial. *On direct exam*, his lawyer asked which Comet is shown in an attachment to the Stipulated Judgment. TT 175:18-176:5. Olaleye emphatically said, "I know straight up, it's Version 2." TT 176:1. Even the Court was unable to help Iconic and Lobbin fix this error. TT 176:6-12.

Lobbin, however, willfully ignored the fact that Olaleye's error came in response to direct, and not cross, examination. Lobbin first tried to pin the error on Kaotica's counsel while the parties argued over Kaotica's motion for JMOL. Lobbin told the Court, "I don't know what they think they are going to establish with confusing a witness on the stand." TT 382:17-19. The Court corrected Lobbin's false allegation: "They didn't confuse him. He testified all by himself when you showed him the picture and it was the Version 2." TT 382:20-22.

This should have ended Lobbin's attempt to pin his client's error on Kaotica. It did not. During Kaotica's closing, its lawyer referenced Iconic's slipup:

> Trial, in many ways, is a unique experience because you actually don't know what is going to happen, despite all the work that you do leading up to getting to this point.
>
> When Iconic's CEO was testifying in response to his own lawyer's questions, his lawyer asked him, "Let's look at the stipulated judgment." At the back of that document there's a photo, there's an image of what is supposed to be the Old Comet, Version 1, because the stipulated

judgment was signed at the end of October 2021. Version 2 was not supposed to exist. Throughout the entire course of the case, the stipulated judgment was entirely about the Old Comet, the Version 1.

On the stand, in response to his own lawyer's questions, Iconic's CEO said, "Nope. The picture in the stipulated judgment from 2021, that's Version 2. No doubt about that. Even just by looking at it, I know, straight up, it's Version 2."

That was not me extracting some sort of sneaky concession from him on cross-examination. That was him testifying in response to a very basic question from his own lawyer.

The Judge got involved. She even said, "Sir, I think you might want to reconsider your response. We are talking about the stipulated judgment."

They didn't fix it. There was no follow-up, not from the witness, not from his lawyers.

TT 732:11-733:10. Having failed to fix a simple error during his own witness's examination, Lobbin resorted to another "knowingly … frivolous argument" in his rebuttal. *Winkler*, 792 F.2d at 860. He blamed Kaotica and its lawyer for doing something sinister. Lobbin brought up "[w]hen counsel asked you about the … stipulated judgment, he makes a big deal about Mr. Olaleye saying on the stand, 'Oh, that looks like the Version 2,' but the agreement was about Version 1. They wrote the agreement,[17] *so if they attached the wrong product to the agreement, who is doing the shenanigans?*" TT 762:21-763:3 (emphasis added).

The Court sustained Kaotica's objection. And the Court stressed that "is an improper argument for which there's absolutely no basis." TT 763:6-7. During sidebar, the Court reprimanded Lobbin who, through it all, doubled down on his shockingly improper and baseless argument:

THE COURT: Where do you get off in good faith to argue that the exhibit that's attached to the stipulated judgment was the Version 2? The Version 2 wasn't even available.

ATTORNEY LOBBIN: [Kaotica's counsel] said it was.

THE COURT: No. The stipulated judgment attaches a picture of the

---

[17] Lobbin regularly alleged that Kaotica wrote the Stipulated Judgment. *E.g.*, TT 763:2. This is false as it was a joint effort with both parties and this Court signing it.

Version 1 of the Comet that was available at the time that it was the accused product.

ATTORNEY LOBBIN: That was the intent of the agreement, yes.

THE COURT: And are you telling me it is not?

ATTORNEY LOBBIN: He said it was not.

THE COURT: No. Your client said it wasn't. Your client testified it was the Version 2. [Kaotica's counsel] never said that.

ATTORNEY LOBBIN: He argued it. He just argued it.

THE COURT: I am going to direct the jury that there's no evidence whatsoever that the stipulated – you know, you are bordering on getting a contempt issued from me. Go back.

THE COURT: The stipulated judgment – you will look at it. It attaches, as a picture, an exhibit, a photograph of the Comet Version 1 that was the accused product that the parties agreed infringed the trade dress. The argument being made here is that somehow that was the Version 2. The Version 2 didn't exist at the time. It was a judgment that ended the case over the Version 1. The only testimony at issue regarding that was, on the stand, Mr. Olaleye mistakenly thought that that picture was – was rather adamant that that was a picture of the Version 2. It couldn't have been. It wasn't. I tried to help them clean it up. They didn't. This argument that somehow defense counsel is misleading you is inappropriate, and you are to disregard it. It is not evidence anyway, but it is an inappropriate argument.

TT 763:10-764:19. This is how Lobbin ended the trial. Attempting to blame Kaotica's counsel for misleading the jury when the fault was Iconic's and Lobbin's. It might not have merited contempt, but it certainly was bad faith on Lobbin's part.

**B. The Court should find this to be an "exceptional case" and order Iconic to pay Kaotica its attorney fees because Iconic litigated in an exceptionally improper fashion, in line with the jury's willful trade dress infringement verdict.**

An "exceptional case" is not the unascertainable standard its nomenclature may suggest: rather, it is nothing more than a case that "simply 'stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *San Diego Comic Convention v. Dan Farr Productions*, No. 14-cv-1865, 2019 WL 1599188, at *3 (S.D. Cal. Apr. 15, 2019),

*aff'd in relevant part,* 807 F. App'x 674 (9th Cir. 2020) (quoting *SunEarth*, 839 F.3d at 1180). Courts consider the "'totality of the circumstances' using a 'nonexclusive list' of factors, including 'frivolousness, motivation, objective unreasonableness (both in factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Jason Scott*, 68 F.4th at 1223 n.13. That is certainly the case here.

As preliminary issue, Kaotica is plainly the prevailing party. There is no "split verdict" here; Kaotica prevailed on every single claim, while Iconic prevailed on none. Dkt. 113. Despite that less than a month before trial and after more than two years of litigation, Iconic sought upwards of $784,000 from Kaotica (Dkt. 88, at 5), by the end of trial, Iconic walked away with nothing. Instead, the jury awarded *Kaotica* over $686,000 for Iconic's willful infringement, making Kaotica the clear prevailing party "because there was a material alteration in the legal relationship of the parties …." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, No. 18-cv-967, 2023 WL 7597630, at *2 (S.D. Cal. Nov. 14, 2023).

On its own, a "case of willful infringement would satisfy" the Ninth Circuit's test for proving that a case is exceptional under the Lanham Act. *Jason Scott*, 68 F.4th at 1223 n.13. Here, not only did the jury find that Iconic infringed Kaotica's Trade Dress, but that it did so intentionally, willfully, or with bad faith.[18] Dkt. 113 at 2. The jury had ample grounds to reach its willful infringement verdict, and the Court should find this to be an exceptional case for the same reasons. This included the prior history between the parties, including: Olaleye's decision to sell (and praise) the Kaotica Eyeball for a commission while secretly working on the Old Comet;

---

[18] While certainly persuasive of a litigant's bad faith infringement, a jury's finding of willful infringement is not required to establish an "exceptional case" under the Lanham Act. *San Diego Comic Convention*, 2019 WL 1599188, at *3 (awarding attorney fees for entire case despite jury finding no willful infringement verdict because the case "stands out from others based on the unreasonable manner it was litigated and thus an award of attorneys' fees and costs … is justified").

Iconic entering into the Stipulated Judgment admitting that the Trade Dress is valid and that the Old Comet infringed; and Iconic then selling an externally identical product (New Comet) to the enjoined Old Comet within two months of signing the agreement, while misrepresenting that it simultaneously continued to advertise the Old Comet in breach of the Stipulated Judgment. These facts alone, buttressed by the jury's conclusion, are sufficient for the Court to find this case exceptional and to justify a fee award.[19] *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1166 (N.D. Cal. 2015) (explaining that "there is nothing in the legislative history or applicable case law to suggest that—once a determination that a case is 'exceptional' has been made—courts should balk at awarding full fees").

Moreover, this is precisely the type of case that merits an award of attorney fees for deterrent purposes. Not only did Iconic opportunistically happen to develop the infringing Old Comet while it was working for Kaotica with knowledge of its Trade Dress, but Iconic set about infringing Kaotica's Trade Dress a second time immediately after the Stipulated Judgment went into effect. *Idle Media Inc. v. Wisdom*, No. LA CV180-3817, 2019 WL 13039655, at *14 (C.D. Cal. June 25, 2019) (that "defendant is a willful, repeat infringer" "weigh[s] in favor of granting an award of attorney's fees). Despite a clear verdict that Iconic's New Comet is infringing,

---

[19] While on paper the parties litigated more than just Iconic's declaratory judgment action and Kaotica's corresponding counterclaim, Kaotica's fees spent on the entire case relate to its successful Lanham Act counterclaim. *See, e.g.*, Ex. 6, 8:22-9-5 ("[THE COURT:] With regard to the 2.0, everything is pretty much going to flow from whether or not the jury would find that the Comet 2.0, whether or not it falls within the scope of the trade dress that Iconic stipulated to in the contract, that the Comet 1.0 is covered by the trade dress."); *see, e.g.*, *World Triathalon Corp. v. Dunbar*, 539 F. Supp. 2d 1270, 1282 (D. Haw. 2008), *aff'd in part, appeal dismissed in part sub nom. World Triathlon Corp. v. Hapai*, 320 F. App'x 778 (9th Cir. 2009) (awarding attorney fees for all claims, including interference, unfair competition, and declaratory relief, because the "claims are inseparable for the purposes of apportioning fees between the Lanham Act and non-Lanham Act claims … because the claims all arise out of the same facts and occurrences" as they do here).

Iconic continues to offer its New Comet for sale as of the date of this filing.[20] *See, e.g.*, *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1113 (S.D. Cal. 2012) (violation of Lanham Act does not "comply with the law"); *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986).

Iconic repeatedly disregarded basic tenets of trade dress law and this Court's orders in attempting to redefine the Trade Dress to include the inner cavity. But Kaotica defined its Trade Dress in its Counterclaims consistent with its depiction in the Stipulated Judgment to be comprised of only external elements (Dkt. 12, at 17 ¶ 28; Dkt. 12-8 (Ex. H)). The law is clear that the right to define the trade dress at issue belongs exclusively to Kaotica. *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 865-66 (9th Cir. 2020) ("A plaintiff may define its claimed trade dress[.]"); *Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*, 251 F. Supp. 3d 1288, 1301 (N.D. Cal. 2017), *aff'd,* 786 F. App'x 662 (9th Cir. 2019). This Court agreed at the Pretrial Conference. Ex. 8, 45:21-22 ("You get to define your trade dress. They don't get to define your trade dress, so that's fine.").

Yet Iconic repeatedly persisted in ignoring this Court's clear and repeated admonitions to limit the trade dress to the outside of the product. TT 325:2-326:4 ("Do not talk over me and do not yell. Calm down. The trade dress is this, the outside with the pop filter. This is not part of the trade dress. All your questions about how this functions are irrelevant to the trade dress … You will not ask any more questions about the cylindrical shape of the interior because it is not relevant to this case."). Throughout trial and into closing, Iconic kept highlighting irrelevant internal components. *E.g.*, TT 353:16-17 (Q: "… so the inner cavity of this product, here, is it smooth?"), 696:19 ("Ridges on the inside.").

"Bad faith may be inferred from a totally baseless course of conduct," such as

---

[20] A true and correct copy of the website available at https://www.iconicmars.com/products/comet as of July 31, 2024 is attached as Exhibit 12.

here where Iconic repeatedly ignored the law and the Court in continuing to push its baseless trade dress defensive theory. *Kimble*, 2018 WL 1898556, at \*5. Evidence of bad faith is everywhere in this case. Iconic repeatedly attempted to back-door evidence of the utility patent the Court had excluded *in limine* (*supra* § IV(A)(4)). Iconic knowingly misrepresented that Kaotica's counsel was up to "shenanigans" by attaching the wrong product to the Stipulated Judgment when it was Olaleye who confused his Old and New Comet products on the stand (*supra id.*). And Iconic shifted its sworn representations as to the differences between the Old and New Comets, including bringing a *new* version of the New Comet with different dimensions to trial (*supra* § *id.*). These representative facts show that Iconic knowingly and intentionally litigated the case in an unreasonable manner sufficient to make this case "stand[] out from other[]" ordinary trade dress cases. *SunEarth*, 839 F.3d at 1180.

This is particularly true because of Lobbin's repeated material misrepresentations to the Court and jury. *Supra, e.g.*, §§ II(C), II(F), II(H), IV(A)(2), IV(A)(3). It is also true due to Lobbin's failures to prepare for trial, know basic facts about the case, the operative case law, or even the Federal Rules of Evidence or Civil procedure, noncompliance with those rules, his and Olaleye's disparaging comments about Kaotica and its counsel, and his failure to comply with court orders and requests for briefings. *E.g.*, TT 236:5-10 (COURT: "And the disparaging sort of comments about them applying the rules are not appreciated. They have called you out on a number of occasions for not complying with the Federal Rules of Civil Procedure, the Rules of Evidence, and this Court's rulings."), 236:21-237:1 (COURT: "[T]he Court does not appreciate this sort of shuffling around here with the facts and the law. So don't try and disparage them for … calling you to task when your side [h]as been less than prepared [in] following the rules."), 161:21-25 (ATTORNEY LOBBIN: "[discussing Federal Rule of Civil Procedure 26,] I don't know what the rules are. THE COURT: What do you mean you don't know what the rules are? You

are a lawyer practicing in Federal Court."), 638:25-639:1 (THE COURT: "I know, you [Lobbin] know nothing about the discovery in this case. You demonstrated that repeatedly.")

Taking into account the totality of the circumstances, this level of unprofessionalism, weak and baseless litigation positions, and unreasonable manner of litigation rises to gamesmanship that is worthy of an exceptional case finding. *San Diego Comic Convention*, 2019 WL 1599188, at *6 ($3.7 million in attorney's fees awarded to prevailing trademark owner where "at certain points [defendant's] zealous advocacy has turned into gamesmanship"); *Kilopass*, No. C 10-02066 SI, 2014 WL 3956703, at *10-14 (concluding that the case was exceptional based on the defendant's "exceptionally meritless" claims, the unreasonable manner in which the case was litigated, the defendant's shifting theories of infringement, and conduct that amounted to gamesmanship); *id*. at *7 (citing *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1366 (Fed. Cir. 2013) ("[L]itigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional …")).

### C. The Court should sanction Iconic, Lobbin, and SML Avvocati under its inherent authority for Kaotica's attorney and expert fees.

This Court can also award Kaotica its attorney *and expert fees* under the Court's inherent authority. *See, e.g.*, *Chambers*, 501 U.S. at 45-46 ("a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'") (citation omitted); *Takeda Chem. Indus., Ltd. v. Mylan Lab'ys, Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008) (citing *Chambers*, 501 U.S. at 50) (A "district court may invoke its inherent power to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute.").

The Court should exercise authority and award Kaotica its attorney and expert fees using its inherent authority to do so. First, regarding attorney fees, a court may award fees if it finds the losing party "acted in bad faith, vexatiously, wantonly, or

for oppressive reasons." *Chambers*, 501 U.S. at 42-47. The underlying rationale for this type of "fee shifting" is punitive and "satisfies a dual purpose-deterrence and compensation." *Fitness IQ*, 2012 WL 13175920, at *4, *7.

These twin-goals apply here. The Court should do everything in its power to deter Iconic, Lobbin, and his firm from engaging in conduct similar to what they did here. No amount of reprimand or warning from the Court—whether in front of the jury or not—caused Iconic or Lobbin to change their bad faith litigation strategy. *See supra*. Ideally, fee shifting in a case that Lobbin should not have brought—and certainly not have tried as he did—will make him more receptive to this Court's admonishments while compensating Kaotica for the great cost it spent to vindicate its rights.

Second, in terms of the amount Kaotica spent on its expert (Roberts), Kaotica retained him both to quantify Iconic's ongoing infringement and, separately, to rebut its demand of hundreds of thousands of dollars. Without Iconic's bad faith lawsuit, Kaotica avoids such expert fees.

While Iconic's interference claim (upon which it based the majority of its damages) had not merit, the risk to Kaotica was simply too great to place its entire hope on winning on liability. It needed an expert to rebut Iconic's damages claims. The Court ruled *in limine* that Iconic's deficient discovery responses meant it could not bring its interference-damages case to the jury. But by then, Kaotica had already incurred its expert costs.

### D. The Court should hold Iconic, Lobbin, and SML Avvocati jointly and severally liable.

Lobbin, his firm, and Iconic have litigated against Kaotica since 2021. Their misconduct against Kaotica goes hand-in-hand, and it would be inadequate justice to order one to pay Kaotica's fees instead of the other. Instead, the Court should hold them jointly and severally liable to Kaotica for its attorney fees and costs, making clear that: Iconic is liable under §1117(a) and the Court's inherent authority; Lobbin

is liable under § 1927 and this Court's inherent authority; and that SML Avvocati is also liable to Kaotica under the Court's inherent authority. *See, e.g.*, *Phonometrics, Inc. v. Westin Hotel Co*, 350 F.3d 1242, 1249 n.9 (Fed. Cir. 2003) (In *Sheraton III,* we vacated the district court's holding that Phonometrics and its counsel were jointly and severally liable for the aggregate award … Here, however, the district court clearly specified that Phonometrics 'is responsible for [the awarded] fees and costs pursuant to 35 U.S.C. § 285 [and its] counsel is responsible for [the awarded] fees and costs pursuant to 28 U.S.C. § 1927.' … We therefore uphold the district court's ruling that Phonometrics and its counsel are jointly and severally liable for the award." (citation omitted)).

## V.   CONCLUSION

Victory at trial is neither enough to compensate Kaotica nor address what happened in this case. Sanctions are necessary to fix the mess Iconic, Lobbin, and his firm created and deter similar conduct in the future. Had they simply honored the Stipulated Judgment, this case likely would not have been filed. Had they simply followed the rules and orders of this Court, this case could have been litigated quicker and for less. Their bad faith strategy backfired. Now they need to be held accountable, jointly and severally, for the unnecessary burden they have imposed on Kaotica.

DATED: July 31, 2024       KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Dario A. Machleidt*
      DARIO A. MACHLEIDT

Attorneys for Defendant
Kaotica Corporation