KILPATRICK TOWNSEND & STOCKTON LLP
X. Diego Wu Min (State Bar No. 317488)
dwu@ktslaw.com
12255 El Camino Real, Suite 250
San Diego, CA  92130
Telephone:(858) 350-6154
Facsimile: (858) 350-6111

Dario A. Machleidt (Admitted *Pro Hac Vice*)
dmachleidt@ktslaw.com
Kathleen R. Geyer (Admitted *Pro Hac Vice*)
kgeyer@ktslaw.com
1420 Fifth Avenue
Seattle, WA  98101
Telephone: (206) 224-2857
Facsimile: (206) 374-2199

Kristin M. Adams (Admitted *Pro Hac Vice*)
kmadams@ktslaw.com
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6138

Attorneys for Defendant
KAOTICA CORPORATION

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ICONIC MARS CORPORATION, a California corporation<br><br>Plaintiff,<br><br>v.<br><br>KAOTICA CORPORATION, a Canadian corporation<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 3:22-cv-00092-CAB-DEB<br><br>**DEFENDANT KAOTICA CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR RESOLUTION OF EQUITABLE ISSUES**<br><br>Complaint Filed:   January 23, 2022<br><br>Date:   September 18, 2024<br>Courtroom:   15A<br><br>The Honorable Judge Bencivengo<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

KAOTICA'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR EQUITABLE RELIEF
CASE NO.: 3:22-cv-00092-CAB-DEB

# TABLE OF CONTENTS

**I.**     INTRODUCTION ................................................................................1

**II.**    BACKGROUND ................................................................................1

**III.**   LEGAL FRAMEWORK ......................................................................5

    A.    Disgorgement of Profits ..........................................................5

    B.    Unfair Competition Under California Bus. & Prof. Code § 17200 ...........................................................................5

    C.    Enhancement of Damages for Willfulness ...............................7

    D.    Permanent Injunction .............................................................7

**IV.**    ARGUMENT .....................................................................................8

    A.    The Court should adopt the jury's advisory verdict regarding disgorgement of Iconic's profits..........................8

        1.    Kaotica is entitled to disgorgement of profits. .............8

        2.    The Court should adopt the jury's assessment of Iconic's profits...........................................................13

    B.    The Court should find against Iconic and for Kaotica on Iconic's unfair competition claim. ...................................13

        1.    Iconic cannot show that Kaotica engaged in any actions that are fraudulent, unlawful, or unfair.................................................................................13

        2.    Iconic cannot show that Kaotica acted in bad faith. ...............................................................................15

        3.    Iconic has not claimed any damages available under California's Bus. & Prof. Code, § 17200 ...................16

    C.    The Court should enhance Kaotica's damages based on Iconic's willful infringement. ...............................................17

    D.    The Court should grant Kaotica a permanent injunction. ............................................................................21

**V.**     CONCLUSION ................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*800 Adept, Inc. v. Murex Sec., Ltd.*,
  539 F.3d 1354 (Fed. Cir. 2008)..................................................................... 6

*Anhing Corp. v. Thuan Phong Co. Ltd.*,
  No. CV1305167BROMANX, 2016 WL 6661178 (C.D. Cal. Jan. 25, 2016) ........................ 20

*AT&T Corp. v. Vision One Sec. Sys.*,
  No. 95-cv-0565-IEG-BTM, 1995 WL 476251 (S.D. Cal. July 27, 1995) ............................ 12

*Binder v. Disability Grp., Inc.*,
  772 F. Supp. 2d 1172 (C.D. Cal. 2011) ................................................................. 19

*BMW of N. Am., LLC v. Rocco*,
  No. CV199285DSFPLAX, 2020 WL 7047318 (C.D. Cal. Nov. 18, 2020), aff'd,
  No. 20-56272, 2021 WL 5401709 (9th Cir. Nov. 18, 2021) .................................................. 23

*Century 21 Real Estate Corp. v. Sandlin*,
  846 F.2d 1175 (9th Cir. 1988)................................................................................ 8, 22

*Chanel Inc. v. Lin*,
  No. C-09-04996-JCS, 2010 WL 2557503 (N.D. Cal. May 7, 2010) ...................................... 22

*Choice Hotels Int'l, Inc. v. Patel*,
  2013 WL 12114787 (S.D. Cal. June 11, 2013)........................................................... 19

*Computer Memory Sols., Inc. v. Lifetime Memory Prod., Inc.*,
  No. SACV160719DOCJEMX, 2016 WL 10586283 (C.D. Cal. Aug. 17, 2016) .................... 7

*Conopco, Inc. v. May Dep't Stores Co.*,
  784 F. Supp. 648 (E.D. Mo.), amended, 797 F. Supp. 740 (E.D. Mo. 1992) .......................... 7

*Cook Cnty., Ill. v. U.S. ex rel. Chandler*,
  538 U.S. 119 (2003)................................................................................................ 19

*Davenport v. Litton Loan Servicing, LP*,
  725 F. Supp. 2d 862 (N.D. Cal. 2010) ................................................................... 13

*De La Torre v. CashCall, Inc.*,
  5 Cal. 5th 966 (2018) ...................................................................................... 6, 14

*Dimension One Spas, Inc. v. Coverplay, Inc.*,
  No. 03CV1099, 2008 WL 4165034 (S.D. Cal. Sept. 5, 2008)...................................... 6, 7, 15

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ............................................................................................................. 8

*Epson Am., Inc. v. Sunvalleytek Int'l, Inc.*,
    No. 823CV00735JVSADS, 2024 WL 2104600 (C.D. Cal. Apr. 22, 2024) ........................... 12

*Gaboratory, Inc. v. Gaboratory Int'l, Inc.*,
    No. CV 07-04725 MMM (EX), 2008 WL 11406056 (C.D. Cal. June 10, 2008) ................... 20

*Globefill Inc. v. Elements Spirits, Inc.*,
    No. 2:10-cv-02034-CBM-PLAx, 2017 WL 6520589 (C.D. Cal. Sept. 8, 2017),
    *aff'd*, 756 F. App'x 764 (9th Cir. 2019) .............................................................................. 5, 11

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*,
    362 F.3d 1367 (Fed. Cir. 2004) ................................................................................... 6, 7, 15

*Golan v. Pingel Enter., Inc.*,
    310 F.3d 1360 (Fed. Cir. 2002) ........................................................................................... 6

*Hsiao & Montano, Inc. v. Xstatic Pro Inc.*,
    No. CV 21-5430-MWF (EX), 2023 WL 4205811 (C.D. Cal. May 18, 2023) ....................... 10

*Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*,
    559 F.3d. 985 (9th Cir. 2009) ......................................................................................... 12, 23

*Ixchel Pharma, LLC v. Biogen, Inc.*,
    9 Cal. 5th 1130 (2020) ....................................................................................................... 14

*K&N Eng'g, Inc. v. Spectre Performance*,
    No. EDCV 09-01900-VAP, 2012 WL 12893796 (C.D. Cal. May 1, 2012) .......................... 19

*Lee v. Luxottica Retail N. Am., Inc.*,
    65 Cal. App. 5th 793 (2021) .............................................................................. 5, 6, 16, 17

*Luxottica Grp. S.p.A. v. Thornton*,
    No. 2:19-CV-05772-CAS, 2022 WL 2167685 (C.D. Cal. May 2, 2022) .............................. 20

*Merck Eprova AG v. Gnosis S.p.A.*,
    760 F.3d 247 (2d Cir. 2014) ............................................................................................... 19

*Monster Energy Co. v. Integrated Supply Network, LLC*,
    533 F. Supp. 3d 928 (C.D. Cal. 2021) .............................................................................. 5, 11

*Moscow Distillery Cristall v. Pepsico, Inc.*,
    141 F.3d 1177 (9th Cir. 1998) ............................................................................................. 20

*Multiple Energy Techs., LLC v. Casden*,
    No. 2:21-CV-01149-ODW, 2023 WL 11891305 (C.D. Cal. Sept. 21, 2023) ....................... 20

KAOTICA'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR EQUITABLE RELIEF
CASE NO.: 3:22-CV-00092-CAB-DEB                                                                      - iii -

*Neo4j, Inc. v. PureThink, LLC,*
   No. 5:18-cv-07182-EJD, 2024 WL 3508498 (N.D. Cal. July 22, 2024) ................................ 5

*Paige LLC v. Shop Paige LLC,*
   No. 2:22-cv-07800-HDV, 2024 WL 3594450 (C.D. Cal. July 10, 2024)........................ *passim*

*Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.,*
   692 F.2d 1272 (9th Cir. 1982)......................................................................................... 10

*Protiviti Inc. v. Protiviti LLC,*
   No. 2:23-CV-08442-ODW (PDX), 2024 WL 2967321 (C.D. Cal. June 12, 2024)............... 22

*Skydive Ariz., Inc. v. Quattrocchi,*
   673 F.3d 1105 (9th Cir. 2012)........................................................................................... 7

*Tibrio, LLC v. Flex Mktg., LLC,*
   No. 23CV1167-LL-BGS, 2023 WL 8358551 (S.D. Cal. Dec. 1, 2023)................................. 6

*Toyo Tire & Rubber Co. v. CIA Wheel Grp.,*
   No. SACV150246DOCDFMX, 2016 WL 11383227 (C.D. Cal. Nov. 9, 2016) ..................... 7

*Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.,*
   No. 2:16-CV-04502-MLH-MRWX, 2018 WL 6038277 (C.D. Cal. Apr. 24,
   2018) ............................................................................................................................... 16

*Visto Corp. v. Sproqit Techs., Inc.,*
   360 F. Supp. 2d 1064 (N.D. Cal. 2005) ........................................................................... 14

*Vital Pharms. v. PhD Mktg., Inc.,*
   No. CV 20-06745-RSWL-JCX, 2022 WL 2952495 (C.D. Cal. July 26, 2022) ...................... 8

*Yuga Labs, Inc. v. Ripps,*
   No. CV 22-4355-JFW-(JEMx), 2023 WL 7089922 (C.D. Cal. Oct. 25, 2023).............. 5, 9, 11

**Statutes**

15 U.S.C. § 1116(a) ........................................................................................................ 7, 8, 22

15 U.S.C. § 1117(a) ........................................................................................................ 5, 7, 19

15 U.S.C. § 1117(b) ................................................................................................................ 20

17 U.S.C. § 512(f) .................................................................................................................... 4

17 U.S.C § 512(g)(2)(c) ..................................................................................................... 3, 14

California Bus. & Prof. Code § 17200 .............................................................................. *passim*

## TABLE OF ABBREVIATIONS & ACRONYMS

| Kaotica | Defendant Kaotica Corporation |
|---|---|
| Iconic | Plaintiff Iconic Mars Corporation |
| Olaleye | Oluseyi Olaleye |
| Zukowski | Konrad Zukowski |
| Billick | Tim Billick |
| Roberts | Jack Roberts |
| Old Comet or Version 1 | *See* Dkt. 96 at 2. |
| New Comet or Version 2 | *See* Dkt. 96 at 2. |
| Trade Dress | *See* Dkt. 111 at 17 (Instruction No. 16) |
| Stipulated Judgment | Dkt. 1-2 |
| First Lawsuit | The case captioned *Kaotica IP Corp v. Iconic Mars Corp.*, No. 21-CV-433-CAB-DEB (S.D. Cal. 2021) |
| TT | Trial Transcript (Ex. 1) |
| MSJ | Motion for Summary Judgment |

## I.   INTRODUCTION

Four equitable issues remain after the jury's verdict: (1) the amount of Iconic's profits Kaotica is entitled to receive; (2) Iconic's claim for unfair competition; (3) enhancement based on jury's finding of willfulness; and (4) Kaotica's request for a permanent injunction. The Court should: award Kaotica the amount of Iconic profits the jury identified in the verdict form; reject Iconic's unfair competition claim; treble the jury's damages figure of $275,000; and issue a permanent injunction.

## II.   BACKGROUND

Kaotica and Iconic are competitors in the microphone attachment market. Kaotica's flagship product is called the Eyeball, while Iconic sells the Comet. In 2017, shortly before Olaleye started Iconic, he asked Kaotica whether he could promote and sell the Eyeball. TT at 429:1-432:21. Olaleye received a discount code to sell the Eyeball and received a commission for any sales of the Eyeball. TT at 431:9-432:9. Olaleye stated that he was "very grateful to have this opportunity" and "look[ed] forward to many years of working and also providing my loyalty and commitment to the Kaotica family." TT at 432:16-21. Unhappy with Olaleye's actions, Kaotica ended the relationship in 2019. TT at 434:18-435:20. Iconic began developing the Old Comet in 2018 when Olaleye was still selling the Eyeball, and by 2020, Iconic began selling its own product, the Old Comet. TT T 150:11-15, 249:6-8.

Kaotica filed the First Lawsuit against Iconic in early 2021. It saw Iconic's Old Comet, determined it infringed various intellectual property rights (including the Trade Dress), and sued. That suit ended in Kaotica's favor in October 2021 with the parties signing the Stipulated Judgment. The Court entered judgment against Iconic and in favor of Kaotica. Dkt. 1-2, ¶ 14. The Stipulated Judgment depicts the Trade Dress as the Kaotica "Eyeball," including its "pop filter." Dkt. 1-2 at 3, 8-18. The Stipulated Judgement also states the following:

3. The parties have agreed to the following factual findings: …

i. Kaotica owns all right, title and interest in and to, including all rights to sue and recover for past and future infringement, the trade dress employed on the KAOTICA EYEBALL noise mitigating microphone attachment (the "Kaotica Trade Dress"). Photographs showing the Kaotica Trade Dress are attached hereto as Exhibit 1.

j. The Kaotica Trade Dress is valid and subsisting.

7. Iconic Mars acknowledges and agrees that Kaotica has suffered and will continue to suffer irreparable harm and injury from Iconic Mars' continued importation, offering for sale and sale of the Accused Products in the United States.

8. Effective on January 1, 2022 … Iconic Mars … [is] permanently enjoined from any and all acts of direct, contributory or induced infringement of the … Kaotica Trade Dress, including, without limitation, (a) the manufacture, use, sale, offer for sale, advertising, promotion, distribution and importation of the Accused Products in and to the United States …

Dkt. 1-2, ¶¶ 3, 7, 8, 12.

Iconic began selling its New Comet within two months of the Stipulated Judgment. TT at 251:4-7 ("[W]e started selling the Version 2 Comet, December 30, 2021.").

There are no external visible differences between the Old Comet—subject to the Stipulated Judgment—and the New Comet. Rather, according to Iconic, it changed the inner cavity of its New Comet to avoid patent infringement claims that arose in the First Lawsuit. Dkt. 54-5, at 22:19-20 (Contempt Hr'g Tr.) (Iconic's counsel stating "the focus of version 2 was no patent infringement, no design patent infringement, no copyright infringement"). Iconic chose not to change the external appearance of the Comet because it "never thought there was any trade dress infringement because we never thought that there was any trade dress." *Id.*, at 22:21-22.

Iconic continued to use images of the Old Comet on its website and social media pages after January 1, 2022 in violation of the Stipulated Judgment. Dkt. 111

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR EQUITABLE RELIEF
CASE NO.: 3:22-CV-00092-CAB-DEB                                                              - 2 -

at 13 ("The Court has already found that Iconic breached this contract by continuing to at least advertise and promote the Comet Version 1 after January 1, 2022."). After seeing those images of the Old Comet, Kaotica (through Billick) sent takedown notices to Instagram, Facebook, and eBay in January 2022. *See, e.g.*, Dkt. 54-11; Dkt. 54-12; TT at 519:22-521:12; 565:17-568:6.

On January 11, 2022, Iconic contacted Kaotica through Billick and informed Kaotica that Iconic was offering the New Comet product. Dkt. 54-10 at 1; TT at 529:14-531:1. Billick responded the next day and explained that use of images of the Old Comet "to convince, trick, coerce [customers] into buying something that doesn't infringe" is still unlawful. TT at 531:17-533:4. Billick relayed this same understanding to Instagram. TT at 534:1-535:12.

Iconic filed this lawsuit on January 23, 2022. Iconic asserted several claims against Kaotica, including unfair competition under California Business and Professional Code § 17200. Dkt. 1, ¶¶ 58-62. Iconic alleged that Kaotica "ma[de] misrepresentations about Plaintiff and its products," and specifically stated "misrepresentations (a) to Shopify that an action under 17 U.S.C § 512(g)(2)(c) was pending on January 6, 2022, in order to keep IMC's store web page disabled, and (b) to eBay, Instagram and Facebook that the New Comet product infringed patents and trade dress rights." *Id.* ¶¶ 59-60. During discovery, Iconic set forth the complete factual basis for its unfair competition claim in an interrogatory response:

> Plaintiff responds that the Comet 2.0 was excluded from the stipulated judgement as it was a redesigned product which was more than colorably different from the accused version 1.0 comet. Kaotica would know that IMC's customers interact with them and driven to IMC through its social media presence and advertisements because Kaotica engages in similar relationships, and Kaotica would know that IMC uses Shopify in order to sell its products. Kaotica stated misrepresentations to Shopify that an action under 17 U.S.C § 512(g)(2)(c) was pending on January 6, 2022, in order to keep IMC's store web page disabled, and stated to eBay, Instagram and Facebook that the New Comet product infringed patents and trade dress rights despite being a redesigned product that was excluded from the stipulated judgment. These acts have resulted in a loss of sales, including from the loss of IMC's initial presence on Instagram.

> Dkt. 54-17 (Iconic's Verified Responses to Kaotica's Third Set of Interrogs.)

at 4-5.

On January 28, after the complaint was filed, Kaotica withdrew its notices to Shopify and Facebook, explaining that the parties were trying to resolve their disputes. Dkt. 54-13, at -1404 (To Shopify; "We are retracting this complaint for now. The parties are in discussions."); Dkt. 54-14, at -0023 (To Facebook; "Please retract Kaotica's complaints against Iconic Mars for the time being while the parties discuss resolution of this dispute.").

Kaotica answered the complaint on May 6, 2022. Dkt. 12. As part of its counterclaims, Kaotica alleged—and attached supporting evidence—that numerous contentions in Iconic's complaint were wrong and that the allegations of Kaotica's takedown notices were accurate. For example, already at this early stage of the case, Kaotica pointed to Iconic's use of the Purple Comet Video in which Iconic continued to use images of the Old Comet on its website and social media. *See, e.g.*, Dkt. 12, at 11-13, ¶¶ 10-11; *id.*, ¶ 11. Iconic denied these factually supported averments. Dkt. 19, ¶¶ 10-11.

At summary judgment, the Court found that Iconic breached the Stipulated Judgment by continuing to at least advertise and promote the Old Comet after January 1, 2022. Dkt. 111 at 13. The Court also granted summary judgment against Iconic and for Kaotica on Iconic's claim of statutory misrepresentation under 17 U.S.C. § 512(f) as well as the Iconic's claims of intentional interference and unfair competition based on statutory misrepresentation.[1] Dkt. 77.

The Court held a jury trial from June 10-13, 2024. It granted Kaotica's JMOL on Iconic's breach of contract claim. It let Iconic's remaining interference claim go to the jury. The jury ruled against Iconic on its single claim of intentional interference, found in favor of Kaotica on its counterclaims, and awarded it over $686,000 due to Iconic's willful trade dress infringement. Dkt. 113. The Court

---

[1] Iconic's intentional interference and unfair competition claims proceeded based on common law misrepresentation.

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR EQUITABLE RELIEF
CASE NO.: 3:22-CV-00092-CAB-DEB                                                    - 4 -

entered judgment in favor of Kaotica on July 17, 2024. Dkt. 116.

## III.   LEGAL FRAMEWORK

### A.   Disgorgement of Profits

Kaotica "may recover an infringing defendant's profits." *Neo4j, Inc. v. PureThink, LLC*, No. 5:18-cv-07182-EJD, 2024 WL 3508498, at *8 (N.D. Cal. July 22, 2024). Disgorgement of profits under the Lanham Act is "subject to the principles of equity." 15 U.S.C. § 1117(a). In awarding disgorgement of profits, courts consider equitable factors which may include "(1) defendant's mental state, such as whether the [defendant had the intention to confuse or deceive]; (2) whether sales have been diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting [the plaintiff's] rights; (5) the public interest in making the misconduct unprofitable; and (6) whether it is a case of palming off." *Yuga Labs, Inc. v. Ripps*, No. CV 22-4355-JFW-(JEMx), 2023 WL 7089922 *10 (C.D. Cal. Oct. 25, 2023) (quoting *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, No. SACV-17-01613-CJC-(DFMx), 2023 WL 2652855 at *4 (C.D. Cal Mar. 13, 2023)) (quotations omitted) (alternation in original).[2] In assessing the amount of profits to be disgorged, under the Lanham Act, "the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C.§ 1117(a).

### B.   Unfair Competition Under California Bus. & Prof. Code § 17200

"The [unfair competition law] proscribes 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising," and any act prohibited by California's false advertising law." *Lee v. Luxottica Retail N.*

---

[2] While there are no allegations of "palming off" in this case, it is not a perquisite for granting disgorgement of profits. Numerous courts have granted disgorgement without finding of "palming off." *See, e.g.*, *Monster Energy Co. v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928, 933 (C.D. Cal. 2021); *Paige LLC v. Shop Paige LLC*, No. 2:22-cv-07800-HDV (SKx), 2024 WL 3594450, at *5 (C.D. Cal. July 10, 2024); *Globefill Inc. v. Elements Spirits, Inc.*, No. 2:10-cv-02034-CBM-PLAx, 2017 WL 6520589, at *2 (C.D. Cal. Sept. 8, 2017), *aff'd*, 756 F. App'x 764 (9th Cir. 2019).

*Am., Inc.*, 65 Cal. App. 5th 793, 799 (2021) (quoting Bus. & Prof. Code, § 17200). "By prohibiting unlawful business practices, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *De La Torre v. CashCall, Inc.*, 5 Cal. 5th 966, 980 (2018) (internal quotations omitted).

"California law is clear" that damages are not recoverable under the unfair competition law, Bus. & Prof. Code, § 17200. *Lee*, 65 Cal. App. 5th at 806. "While the scope of conduct covered by [section 17200] is broad, its remedies are limited." *Id.* at 800. "Injunctive relief is the primary form of relief available," and "in a private action, [t]he only monetary remedy available ... is restitution." *Id.* (citations and quotations omitted). To avoid any doubt, "[d]amages are not recoverable." *Id.*; *see also Tibrio, LLC v. Flex Mktg., LLC*, No. 23CV1167-LL-BGS, 2023 WL 8358551, at *2 (S.D. Cal. Dec. 1, 2023).

Federal patent law preempts liability for unfair competition for good faith conduct in communications asserting patent infringement. *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004). Thus, unfair competition claims survive only if based on "a showing of 'bad faith' action in asserting infringement[.]" *Id.* The law "recognizes a presumption that the assertion of a duly granted patent is made in good faith ...; this presumption is overcome only by affirmative evidence of bad faith." *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002). "[A] party attempting to prove bad faith on the part of a patentee enforcing its patent rights has a heavy burden to carry." *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008).

"'[B]ad faith' may include subjective and objective considerations; however, a bad faith standard cannot be satisfied in the absence of a showing that the claims asserted were objectively baseless." *Dimension One Spas, Inc. v. Coverplay, Inc.*, No. 03CV1099, 2008 WL 4165034, at *17 (S.D. Cal. Sept. 5, 2008). "Subjective considerations of bad faith are irrelevant if the assertions are not objectively

baseless." *Id.*; *see also Globetrotter Software*, 362 F.3d at 1375. The "objectively baseless" standard can be satisfied by showing that the defendant's patent rights at issue in the communication "were obviously invalid or plainly not infringed." *Id.*

"[O]bjective baselessness requires a determination based on the record ultimately made in the infringement proceedings and the record of the state tort action, and not on the basis of information available to the patentee at the time the allegations were made." *Dominant*, 524 F.3d at 1264.

### C. Enhancement of Damages

The Lanham Act allows the court to "enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."[3] 15 U.S.C. § 1117(a). Enhancement is "available to ensure that the plaintiff receives compensation" for the defendant's misconduct. *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1114 (9th Cir. 2012). The Court "may award enhanced damages, not exceeding three times the amount found as actual damages…." *Computer Memory Sols., Inc. v. Lifetime Memory Prod., Inc.*, No. SACV160719DOCJEMX, 2016 WL 10586283, at *3 (C.D. Cal. Aug. 17, 2016).

### D. Permanent Injunction

The Lanham Act gives courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation" of an owner's rights. 15 U.S.C. § 1116(a). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing

---

[3] Courts have trebled jury awards consisting of both lost profits *and* infringer profits. *See, e.g., Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SACV150246DOCDFMX, 2016 WL 11383227, at *9 (C.D. Cal. Nov. 9, 2016); *Conopco, Inc. v. May Dep't Stores Co.*, 784 F. Supp. 648, 681 (E.D. Mo.), amended, 797 F. Supp. 740 (E.D. Mo. 1992), and rev'd on other grounds, 46 F.3d 1556 (Fed. Cir. 1994).

infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). "In cases where the infringing use is for a similar service, broad injunctions are especially appropriate." *Id.* To obtain a permanent injunction, Kaotica must show that (1) "it has suffered an irreparable injury;" (2) "remedies available at law, such as monetary damages, are inadequate to compensate for that injury;" (3) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted;" and (4) "the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Under Section 1116(a), Kaotica is entitled to "a rebuttable presumption of irreparable harm upon a finding of" trade dress infringement.

## IV.   ARGUMENT

### A.   The Court should adopt the jury's advisory verdict regarding disgorgement of Iconic's profits.

1. Kaotica is entitled to disgorgement of profits.

Iconic's willful infringement of the Trade Dress, beginning January 1, 2022 and continuing even after the jury's verdict, together with the principles of deterrence and equity support the Court's award of disgorgement of Iconic's profits to Kaotica.

Iconic's infringement was and continues to be willful. The jury found that Iconic's infringement was intentional, willful, and in bad faith. Dkt. 113. A finding of willfulness "is an important consideration in determining whether disgorgement of profits is appropriate." *Paige*, 2024 WL 3594450, at *4. Indeed, courts in the Ninth Circuit have granted disgorgement of profits based solely on a finding of willful infringement. *See, e.g.*, *Vital Pharms. v. PhD Mktg., Inc.*, No. CV 20-06745-RSWL-JCX, 2022 WL 2952495, at *4 (C.D. Cal. July 26, 2022).

The evidence presented at trial confirms that Iconic acted in bad faith in dealing with Kaotica since the inception of their relationship, and Iconic's infringement was and continues to be willful. In 2017, shortly before Olaleye started

Iconic, he asked Kaotica whether he could promote and sell the Eyeball. TT at 429:1-432:21. Kaotica agreed but ended the relationship in 2019. TT at 434:18-435:20. Iconic began developing the Old Comet in 2018 when Olaleye was still selling the Eyeball, and by 2020, Iconic came out with the Old Comet. TT at 150:11-15, 249:6-8.

Iconic admitted that the Old Comet infringed the Trade Dress, that the Trade Dress was valid, and that continued sales of that product would irreparably harm Kaotica. Dkt. 1-2, ¶¶ 3(j), 7, 8. Just two months after agreeing the Old Comet infringed the Trade Dress covering the external appearance of the parties' microphone isolation devices, Iconic began selling the New Comet that is externally identical to the Old Comet despite knowing that only the external elements of the Eyeball design were claimed as the Trade Dress. *See* Dkt. 1-2; TT at 251:4-7, 499:17-500:15. The only change Iconic made was to the *inside* of the New Comet, which is irrelevant to the use of the Trade Dress. Iconic's prior relationship with Kaotica, knowing use of the Trade Dress, and prior litigation history regarding the Trade Dress show Iconic "inten[ded] to deceive the public as to the source of its Comet Version 2 product." Dkt. 111 at 23.

Iconic's willful infringement is further shown by Iconic's continued infringement of the Trade Dress through advertising, offering for sale, and selling the New Comet—even after the jury found them to be willfully infringing. Ex. 2 (Iconic Mars' website product page for the New Comet as of August 13, 2024). *See Yuga Labs*, 2023 WL 7089922, at *12 ("Defendant's continued marketing and promotion despite its knowledge of consumer confusion with Yuga's identical BAYC Marks constitutes strong evidence of an improper motive."). Moreover, Iconic continues to have images of the Old Comet—which Iconic admits infringes the Trade Dress—on its social media. Dkt. 119-6.

Iconic's bad faith motive for its infringement of the Trade Dress weighs in favor of disgorgement.

<u>Kaotica's actual damages from price erosion alone are inadequate remedy and will not deter Iconic's bad faith behavior.</u> As described below in Section IV.C, Kaotica's request for actual damages in the form of price erosion are an inadequate remedy. Kaotica's price erosion damages capture a separate and distinct harm from disgorgement of Iconic's profits. Price erosion merely captures the damage Kaotica suffered from sales that it kept because it lowered its price in light of Iconic's infringement. Disgorgement of Iconic's profits, however, captures the harm from sales Kaotica lost to Iconic and to "prevent [Iconic] from retaining gains made possible by its" willful wrongdoing. *Hsiao & Montano, Inc. v. Xstatic Pro Inc.*, No. CV 21-5430-MWF (EX), 2023 WL 4205811, at *8 (C.D. Cal. May 18, 2023); *see also* TT at 610:23-611:2. In addition, (1) Kaotica's price erosion damages are a conservative estimate; (2) Kaotica's price erosion damages do not capture damage from Kaotica's need to increase advertising cost to compete with an infringing product; (3) Kaotica will not be compensated for the time between trial and any permanent injunction; and (4) Kaotica cannot seek prejudgment interest. *Infra* § IV.C. Therefore, an award of actual damages based solely on price erosion is inadequate to compensate Kaotica for the total harm it suffered from Iconic's willful infringement.

Further, disgorgement of Iconic's profits is necessary to deter Iconic's "deliberate and willful" misconduct. *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274 (9th Cir. 1982). The Ninth Circuit emphasized that "the trial court's primary function should center on making any violations of the Lanham Act unprofitable to the infringing party." *Id.* The Ninth Circuit went further and held that it was an abuse of discretion to deny disgorgement of profits when the damages amount was less than the infringers' profits such that the infringers "yielded great financial reward." *Id.* at 1275. Because Kaotica's actual damages from price erosion cover a distinct set of harms, and because Iconic's profits from its infringing activity exceed the jury's award of actual damages from price erosion, "[f]airness also

supports disgorgement of profits so that [Iconic] does not profit from its unlawful infringement." *Monster Energy*, 533 F. Supp. 3d at 933.

Indeed, a jury verdict and award of price erosion damages of $275,000 has done nothing to deter Iconic's willfully infringing conduct. Iconic continues to infringe of the Trade Dress through advertising, offering for sale, and selling the New Comet—even after the jury found them to be willfully infringing. Ex. 2 (Iconic Mars' website product page for the New Comet as of August 13, 2024). Iconic has failed to remove images of *both* the Old Comet and the New Comet from its website and social media pages. Ex. 2; Dkt. 119-6 (Iconic's social media pages showing images of the Comet 1.0).

This factor also "strongly supports disgorgement of profits" when the infringer "failed to change any of its infringing marks even in the time since" the jury's verdict. *Paige*, 2024 WL 3594450, at *5.

Kaotica lost sales to Iconic. Iconic's actions diverted sales away from Kaotica by using Kaotica's Trade Dress. Evidence at trial showed that Iconic used the word "Eyeball" in its Google Ads without permission to divert potential customers of the Kaotica Eyeball to the Iconic Mars' webpage. TT at 411:16-414:16; Trial Exs. 575 & 576. Iconic admits that it "writes the text that is contained in its Google Ads" and thus knowingly misused "Eyeball" to sell its infringing Comet products and confuse customers. TT at 259:14-16; *see Yuga Labs*, 2023 WL 7089922, at *6 (finding that use of domain name with plaintiff's mark was "for commercial gain to divert customers from purchasing" plaintiff's product). In addition, Kaotica's CEO, Zukowski, explained that Kaotica saw revenues drop starting in early 2022 while marketing costs increased. TT at 376:14-16. Therefore, there was likely diversion or lost sales to Iconic based on Iconic's infringement. In any event, numerous courts have granted disgorgement of profits without finding of diversion or lost sales. *See, e.g.*, *Monster Energy*, 533 F. Supp. 3d at 933; *Paige*, 2024 WL 3594450, at *5; *Globefill*, 2017 WL 6520589, at *2. This factor weighs in favor of disgorgement.

<u>Kaotica did not unreasonably delay in asserting its rights.</u> Kaotica became aware of Iconic's infringement of the Trade Dress in January 2022. That same month, Kaotica asserted its Trade Dress rights against Iconic Mars through takedown notices. When Iconic brought this lawsuit on January 23, Kaotica only withdrew its takedown requests in an attempt to reach resolution without the need for litigation. When that was unsuccessful, Kaotica counterclaimed for infringement of the Trade Dress. Dkt. 12. Kaotica did not unreasonably delay in asserting the Trade Dress and seeking to stop Iconic's infringement. This factor thus favors an award of disgorgement. *Paige*, 2024 WL 3594450, at *5 (finding no undue delay when plaintiff "sent a cease and desist letter almost immediately" upon becoming aware of infringement and filing the "lawsuit less than two months later").

<u>There is public interest in making Iconic's willful misconduct unprofitable.</u> Courts consistently find that "the public interest is served by avoiding the strong likelihood of confusion in the marketplace caused by [Iconic's] continued use of the [Trade Dress]." *Paige*, 2024 WL 3594450, at *3; *see also Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d. 985, 993 n.5 (9th Cir. 2009) ("The public has an interest in avoiding confusion between two companies' products."); *AT&T Corp. v. Vision One Sec. Sys.*, No. 95-cv-0565-IEG-BTM, 1995 WL 476251, at *7 (S.D. Cal. July 27, 1995) ("Where defendant's concurrent use of plaintiff's trademark without authorization is likely to cause confusion, the public interest is damaged by the defendant's use."); *Epson Am., Inc. v. Sunvalleytek Int'l, Inc.*, No. 823CV00735JVSADS, 2024 WL 2104600, at *8 (C.D. Cal. Apr. 22, 2024) ("Finally, the public interest would be served because the public is entitled to the accurate specifications of the products they purchase."). This factor weighs in favor of disgorgement.

\* \* \*

Each of the relevant factors weigh heavily in favor of granting disgorgement of profits to ensure that Kaotica is adequately compensated for Iconic's

infringement, to ensure that Iconic is not unjustly enriched from its infringement, and to deter Iconic's continued willful infringement.

2. <u>The Court should adopt the jury's assessment of Iconic's profits.</u>

The Court should assess disgorgement in the same amount found by the jury. The jury adopted Kaotica's accounting of disgorgement of Iconic's profits of $411,758. Dkt. 113. Kaotica met its burden of proving Iconic's sales. At trial, Roberts, Kaotica's damages expert, explained in detail how he calculated Iconic's sales of the New Comet. TT at 613:9-618:3. Iconic never challenged Kaotica's accounting of Iconic's sales nor presented any alternative amount. The jury also credited all of the available deductions that Roberts explained could apply to lower Iconic's exposure. TT at 618:11-624:19. Again, Iconic did not challenge Kaotica's accounting of these deductions nor carry its burden in demonstrating that any additional deductions should be included.

Therefore, the Court should adopt the jury's award of $411,758 in disgorgement of profits.

**B.     The Court should find against Iconic and for Kaotica on Iconic's unfair competition claim.**

Iconic's claim for unfair competition under California Business and Professional Code § 17200 suffers from multiple fatal deficiencies. The Court should find that Kaotica has not engaged in unfair competition and deny any remedies therefrom.

1. <u>Iconic cannot show that Kaotica engaged in any actions that are fraudulent, unlawful, or unfair.</u>

Iconic failed to prove that Kaotica engaged in any business acts or practices that are (1) fraudulent, (2) unlawful, or (3) unfair. *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 878 (N.D. Cal. 2010). Indeed, Iconic's claim for unfair competition relies on the exact same facts as its claim for intentional interference—claims the jury already rejected.

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR EQUITABLE RELIEF
CASE NO.: 3:22-CV-00092-CAB-DEB                                                                 - 13 -

Iconic's remaining[4] allegations for unfair competition are premised on Kaotica's alleged statements "to eBay, Instagram and Facebook that the New Comet product infringed patents and trade dress rights despite being redesigned product that was excluded from the stipulated judgment." Dkt. 54-17 (Iconic's Verified Responses to Kaotica's Third Set of Interrogs.) at 4-5. Iconic relied on identical allegations for its intentional interference claims. *Id.* at 4.

First, the jury already found that the New Comet infringed the Trade Dress. Dkt. 113. Therefore, Kaotica's allegations in the take down notices based on the Trade Dress cannot be fraudulent, unlawful, or unfair—they were in fact true.

Second, the jury already rejected Iconic's claim of intentional interference based on the same underlying allegations of infringement. Intentional interference requires a finding of wrongful conduct that is independently actionably—i.e., unlawful. *See Visto Corp. v. Sproqit Techs., Inc.*, 360 F. Supp. 2d 1064, 1066-67 (N.D. Cal. 2005) (finding that plaintiff must prove that defendant "engaged in conduct that was wrongful by some legal measure other than the fact of interference itself"); *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1142 (2020) ("[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." (citation omitted)). Section 17200 is nearly identical: it "borrows *violations of other laws* and treats them as unlawful practices that the unfair competition law makes *independently actionable*." *De La Torre*, 5 Cal. 5th at 980 (internal quotations omitted) (emphasis added). For the same reasons that the conduct underlying Iconic's claim of intentional interference was not unlawful, the identical conduct underlying Iconic's unfair competition claims is not unlawful.

Therefore, Court should accept the jury's findings on these issues and find

---

[4] The Court found on summary judgment that Kaotica was not liable for any claim arising out of Iconic's allegations that Kaotica made misrepresentations to Shopify that an action under 17 U.S.C. § 512(g)(2)(c) was pending on January 6, 2022. Dkt. 77.

that Iconic has failed to prove its claim for unfair competition.

### 2. Iconic cannot show that Kaotica acted in bad faith.

Iconic failed to develop, obtain, or offer any evidence that Kaotica's takedown notices to eBay, Instagram, and Facebook alleging that the Comet 2.0 infringed Kaotica's patent rights were in bad faith.[5] Bad faith requires a showing of objective baselessness. *Dimension One*, 2008 WL 4165034, at *17. Objective baselessness requires showing that the Trade Dress and patents "were obviously invalid or plainly not infringed." *Globetrotter*, 362 F.3d at 1375.

Iconic did not develop during discovery or introduce any evidence at trial of either subjective or objective bad faith of Kaotica's patent assertions in the takedown letters. Indeed, throughout discovery, Iconic failed to develop any evidence relating to bad faith, including failing to develop any evidence of invalidity, non-infringement, and witnesses who could explain these concepts to the jury—Iconic had no evidence to present. *Dominant*, 524 F.3d at 1264 ("[O]bjective baselessness requires a determination *based on the record ultimately made* in the infringement proceedings and the record of the state tort action, and not on the basis of information available to the patentee at the time the allegations were made." (emphasis added)).

Iconic's examination of Billick, Kaotica's counsel who drafted the takedown notices, was similarly unfruitful. Billick confirmed that when sending the takedown notices, he relied on the Stipulated Judgment and the fact that the same images and product descriptions were being used in 2021 as in 2022—i.e., that Iconic was still advertising and offering for sale Old Comet. *See, e.g.*, TT at 519:22-521:12; 565:17-568:6. Billick's conclusion is exactly what the Court already found—that Iconic continued to "at least advertise and promote the Comet Version 1 after January 1, 2022." Dkt. 111 at 13.

It was only on January 11, 2022, after those initial takedown notices were

---

[5] The bad faith requirement does not apply to the Trade Dress.

sent, that Billick became aware of the fact that Iconic was selling the New Comet. TT at 529:14-531:1. Billick reaffirmed his understanding of the law that even if Iconic was selling the New Comet, "you can't bait somebody into buying something by showing them something that infringes someone's rights … in order to convince, trick, coerce them into buying something that doesn't infringe." TT at 531:17-533:4. Billick relayed this same understanding to Instagram the next day. TT at 534:1-535:12.

Thus, there is simply no evidence that Billick or Kaotica acted with either objective or subjective bad faith in sending the original takedown notices in January 2022 when Iconic was continuing to advertise and promote the Old Comet, nor in any continued conversations regarding Iconic's infringement. *Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.*, No. 2:16-CV-04502-MLH-MRWX, 2018 WL 6038277, at *18 (C.D. Cal. Apr. 24, 2018) (granting summary judgment for defendant on plaintiff's unfair competition claim where the takedown "letter was drafted by [defendant] Fieldpiece's counsel, and there is no extrinsic evidence in the record showing that the letter was drafted in bad faith").

The Court should also find that Iconic failed to show that the takedown notices were sent in bad faith.

3.    Iconic has not claimed any damages available under California's Bus. & Prof. Code, § 17200

Iconic has only sought monetary damages for Kaotica's alleged unfair competition, which California law forecloses. California law is clear that damages are not recoverable under the unfair competition law, Bus. & Prof. Code, § 17200. *See Lee*, 65 Cal. App. 5th at 806; *see also id.* at 800 ("Damages are not recoverable."). "The only monetary remedy available ... is restitution." *Id.* Restitution, however, seeks to "restore the status quo by returning to the plaintiff funds *in which he or she has an ownership interest.*" *Id.* at 801 (emphasis in original) (quotations and citation omitted).

Iconic does not seek restitution.[6] Instead, Iconic's remedies are limited to actual damages, lost customers, lost sales revenue, and reputational harm. *See* Dkt. 1, at pp. 11-12 (Prayer for Relief, seeking only "[a]n accounting of damages adequate to compensate for Defendant's … unfair competition, including Plaintiff's actual damages, including lost profits, treble damages, pre-judgment and post-judgment interest, and costs"); Dkt. 87-2 (Iconic's Verified Responses to Kaotica's First Set of Interrogs.) at 4-5 (identifying "damages in the form of lost customers and sales revenue, and reputational harm") & Dkt. 54-17 (Iconic's Verified Responses to Kaotica's Third Set of Interrogs.) at 5-6 (seeking only damages from "drop in sales" and "costs involved with changes to the packaging and website"). Courts have held that these types of harms are not restitutionary. Specifically, "lost business is a form of damages—it is not restitutionary." *Lee*, 65 Cal. App. 5th at 806. And "damages for harm to goodwill is not a restitutionary remedy." *Id.* at 805.

Therefore, even if the Court found Kaotica liable for unfair competition, the Court should not award any measure of recovery for Iconic's unfair competition claim, because Iconic has not identified any form of restitutionary relief. Any award of undisclosed damages would be baseless. To the extent Iconic wants to shift theories and seek restitution, such a change in retrofitted recovery comes too late and would prejudice Kaotica.

**C.    The Court should enhance Kaotica's damages based on Iconic's willful infringement.**

The jury found that Iconic's infringement of the Trade Dress was "intentional, willful, or in bad faith." Dkt. 113. Enhancement of Kaotica's actual damages from

---

[6] While Iconic mentioned seeking injunctive relief in its complaint (Dkt. 1, ¶ 62), Iconic did not disclose in discovery that it continued to seek such relief for unfair competition. Dkt. 87-2 (Iconic's Verified Responses to Kaotica's First Set of Interrogs.) at 4-5 (identifying "damages in the form of lost customers and sales revenue, and reputational harm") & Dkt. 54-17 (Iconic's Verified Responses to Kaotica's Third Set of Interrogs.) at 5-6.

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR EQUITABLE RELIEF
CASE NO.: 3:22-CV-00092-CAB-DEB                                                                      - 17 -

price erosion[7] by three times is necessary to ensure that Kaotica is adequately compensated for Iconic's willful infringement and would not be punitive.

Kaotica's price erosion damages are likely far higher than what was presented at trial. To be conservative, Kaotica's price erosion damages assumed that Kaotica would have maintained a price of $198 from January 1, 2022 through trial in mid-2024. Yet Zukowski explained that if the New Comet was *not* on the market, Kaotica may in fact be charging a price higher than $198 due to the fact that "everything costs more" and "manufacturing is more expensive." TT at 454:17-455:1. Indeed, Kaotica's manufacturing costs increased since the New Comet was on the market, and while typically Kaotica would increase the price, it could not do so because of the impact it would have had on revenue and competitiveness in the market. TT at 453:1-24. During 2021 and before Iconic began selling the New Comet, when Kaotica did experience increased cost from supply chain constraints, it increased the price of the Eyeball to $228. TT at 450:19-451:9. Therefore, in a world without the New Comet, Kaotica would likely have raised its prices above $198 to account for the increase in cost to maintain its profit margin. Kaotica may have raised its price as much as $30 (to $228), which would result in up to $600,180[8] in additional price erosion damages. Trial Ex. 620.

In addition to dropping its price in response to Iconic's infringement, Kaotica also had to increase its advertising to compete with an infringing product. TT at 455:2-14; *see also* TT at 424:11-14 (explaining that Kaotica spends approximately $750,000 a year on advertising since the New Comet entered the market). Neither the jury's price erosion damages nor any award of disgorgement of Iconic's profits account for Kaotica's increased spend in advertising to compete with an infringing product.

---

[7] Courts have trebled jury awards consisting of both lost profits and infringer profits. *See, e.g.*, *supra* n. 2. Kaotica's request for trebling of only price erosion damages is thus conservative.

[8] 20,006 units (Trial Ex. 630) x $30.

Kaotica also continues to accrue price erosion damages after trial. In addition, as discussed above, Iconic continues to sell the infringing New Comet. Ex. 2. Therefore, while Kaotica is requesting a permanent injunction, Kaotica will not be compensated for any price erosion damages or disgorgement of Iconic's profits between trial and the issuance of any permanent injunction. For the year period prior to trial, Roberts calculated that Iconic made monthly revenue of $21,204.92[9] and had monthly costs of $4,622.25[10]—yielding $16,582.67 a month in profits. Trial Ex. 629. Iconic continues to be unjustly enriched by these profits post-trial. Therefore, enhancement is necessary to compensate Kaotica for this ongoing harm. *See K&N Eng'g, Inc. v. Spectre Performance*, No. EDCV 09-01900-VAP (DTBx), 2012 WL 12893796, at *9 (C.D. Cal. May 1, 2012) (enhancing damages for "five-month period" between the verdict and the permanent injunction).

Kaotica's price erosion damages also do not capture the injury that Kaotica has suffered due to intangible harms such as continued likelihood of customer confusion and loss of good will. *See, e.g., Choice Hotels Int'l, Inc. v. Patel*, 2013 WL 12114787, at *4 (S.D. Cal. June 11, 2013) (enhancing damages for damage to brand and loss of goodwill); *Binder v. Disability Grp., Inc.*, 772 F. Supp. 2d 1172, 1183 (C.D. Cal. 2011) (awarding enhancement for "potential harm from lingering misimpressions that is unlikely to be fully captured by the lost profits"); *see also Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 263 (2d Cir. 2014) (enhancing damages to compensate for "usurpation of [the plaintiff's] market share" and "loss of good will").

Enhancement is also necessary to ensure that Kaotica is fully compensated for Iconic's infringement because prejudgment interest is not available under Section 1117(a). *Accord Cook Cnty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 120 (2003) ("[L]iability beyond actual damages may be necessary for full recovery, since the

---

[9] $254,459 / 12 (*see* Trial Ex. 629).

[10] $55,467 / 12 (*see* Trial Ex. 629).

FCA has no separate provision for prejudgment interest or consequential damages."); *see also Moscow Distillery Cristall v. Pepsico, Inc.*, 141 F.3d 1177 (9th Cir. 1998) ("Prejudgment interest is available under the Lanham Act only for counterfeiting, see 15 U.S.C. § 1117(b), and this is not a counterfeiting case."); *see also Gaboratory, Inc. v. Gaboratory Int'l, Inc.*, No. CV 07-04725 MMM (EX), 2008 WL 11406056, at *15 (C.D. Cal. June 10, 2008) (denying prejudgment interest because no counterfeit claim), set aside on other grounds, No. CV 07-04725 MMM (EX), 2008 WL 11406072 (C.D. Cal. Nov. 10, 2008). Courts in this circuit recognize that failure to award prejudgment interest leads to "incomplete compensation." *Anhing Corp. v. Thuan Phong Co. Ltd.*, No. CV1305167BROMANX, 2016 WL 6661178, at *5 (C.D. Cal. Jan. 25, 2016) (awarding prejudgment interest "to avoid incomplete compensation" to plaintiff) (quoting *Twin City Sportsenice, Inc. v. Charles O. Finley & Co., Inc.*, 676 F.2d 1291, 1310 (9th Cir. 1982)) (alterations in original).

Finally, courts routinely treble damages based on a defendant's "deliberate and willful" infringement. *See, e.g.*, *Multiple Energy Techs., LLC v. Casden*, No. 2:21-CV-01149-ODW (RAOX), 2023 WL 11891305, at *6 (C.D. Cal. Sept. 21, 2023) (granting treble damages and attorneys' fees due to "the deliberate and willful nature of Casden's conduct"); *Luxottica Grp. S.p.A. v. Thornton*, No. 2:19-CV-05772-CAS (MRWX), 2022 WL 2167685, at *8 (C.D. Cal. May 2, 2022) ("[H]ere, defendants' conduct was intentional, and as such the Court finds it appropriate to treble the actual damages in accordance with the statute.").

The Court should treble damages because Iconic's willful infringement is almost surreal in its brashness. *Supra* Section IV.A.1. Iconic convinced Kaotica to accept a paltry $25,000 as part of the Stipulated Judgment while acknowledging it would stop selling the infringing, Old Comet by January 2022. Dkt. 1-2, ¶¶ 8, 13. Yet it turned around within two months and began selling an externally identical product, pretending as if the Stipulated Judgment—and Iconic's various admissions

within it—never happened.

Under the totality of the circumstances, and to ensure that Kaotica is fully compensated for the harm caused by Iconic's willful infringement, the Court should treble Kaotica's price erosion damages. To avoid any doubt, Kaotica requests that the Court treble the lost profits damages amount to $825,000.

**D.    The Court should grant Kaotica a permanent injunction.**

Kaotica is entitled to a permanent injunction:

- Barring Iconic's continued infringement of the Trade Dress and violation of the Stipulated Judgment. Even after trial, Iconic continued to infringe the Trade Dress by at least importing, offering for sale, selling, and distributing the New Comet product. *See, e.g.*, Ex. 2.

- Requiring Iconic to remove all images of the Old Comet from its social media pages. Iconic continues to be in breach of the Stipulated Judgment by using images of the Old Comet to advertise the New Comet, including on Instagram and Facebook. *See, e.g.*, Dkt. 119-6.

- Requiring Iconic to destroy any remaining inventory of the Old Comet and New Comet. Olaleye testified that he has around 3,000 Old Comets. TT at 168:10-14. Iconic's continued sales of the New Comet confirms Iconic still have inventory of the New Comet. Ex. 2. *See Paige*, 2024 WL 3594450, at *4 (directing plaintiff to "destroy all materials … bearing Defendant's Marks").

- If Iconic violates the permanent injunction, it should be liable for all attorneys' fees and costs incurred by Kaotica in enforcing the permanent injunction.

First, there is a presumption that Iconic's continued infringement of Kaotica's Trade Dress has irreparably harmed Kaotica. The jury found that Iconic violated the Trade Dress. Dkt. 113. Kaotica is thus "entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the

case of a motion for a permanent injunction." 15 U.S.C. § 1116(a); *see also, e.g., Protiviti Inc. v. Protiviti LLC*, No. 2:23-CV-08442-ODW (PDX), 2024 WL 2967321, at *8 (C.D. Cal. June 12, 2024) (granting permanent injunction and finding irreparable injury based on rebuttal presumption); *Chanel Inc. v. Lin*, No. C-09-04996-JCS, 2010 WL 2557503, at *11 (N.D. Cal. May 7, 2010) ("Plaintiff has ... established the likelihood of confusion by showing Defendants' use of counterfeit Chanel Marks, giving rise to a presumption that Plaintiff will suffer irreparable harm if injunctive relief is not granted").

Iconic cannot rebut any such presumption as Iconic already admitted in the Stipulated Judgment that "Kaotica has suffered and will continue to suffer irreparable harm and injury" from Iconic Mars' infringement of the Trade Dress. Dkt. 1-2, ¶ 7.

Second, monetary damages—while necessary—are nevertheless inadequate to compensate for Kaotica's irreparable injury because "there is no adequate remedy at law for the injury caused by [Iconic's] continuing infringement" of the Trade Dress. *Century 21 Real Est. Corp.*, 846 F.2d at 1180. Iconic's infringement of the Tade Dress continues to this day. Ex. 2. "Legal remedies, such as monetary damages, are not enough to compensate Plaintiff for Defendant's ongoing infringement. This necessary element is satisfied." *Paige*, 2024 WL 3594450, at *2. Iconic's years-long, willful infringement has essentially polluted a pool of consumers against Kaotica.

Third, the balance of hardships between Kaotica and Iconic weighs in favor of Kaotica because "there is no hardship to defendant when a permanent injunction would merely require defendant to comply with the law." *Protiviti*, 2024 WL 2967321, at *8 (quoting *Teddy's Red Tacos Corp. v. Theodoro Vazquez Solis*, No. 2:19-cv-03432-RSWL (ASx), 2021 WL 4517723, at *11 (C.D. Cal. Aug. 16, 2021)). Moreover, "[i]n the absence of injunctive relief, Defendant will undoubtedly continue to infringe on Paige's trademark, taking away sole control of the mark

from its legal owner and depriving Plaintiff of the ability to prevent any resulting harm to its brand." *Paige*, 2024 WL 3594450, at *2.

Finally, a permanent injunction against Iconic is in the public interest because "[t]he public has an interest in avoiding confusion between two companies' products." *Internet Specialties, Inc.*, 559 F.3d at 993 n.5; *see also BMW of N. Am., LLC v. Rocco*, No. CV199285DSFPLAX, 2020 WL 7047318, at *12 (C.D. Cal. Nov. 18, 2020), aff'd, No. 20-56272, 2021 WL 5401709 (9th Cir. Nov. 18, 2021) ("An injunction is in the interest of the public because '[w]here defendant's concurrent use of plaintiff's trademark without authorization is likely to cause confusion, the public interest is damaged by the defendant's use.'" (citation omitted) (alteration in original)).

Kaotica has satisfied all of the elements for injunctive relief and the Court should grant a permanent injunction.

## V.   CONCLUSION

Price erosion damages are neither enough to compensate Kaotica nor deter Iconic from its continued willful infringement. The Court should award damages in the form of disgorgement of profits, treble Kaotica's damages award, and grant a permanent injunction. The Court should also find that Kaotica has not engaged in any unfair competition under California Business & Professional Code § 17200.

DATED: August 15, 2024          KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Dario A. Machleidt*
      DARIO A. MACHLEIDT

Attorneys for Defendant
Kaotica Corporation