KILPATRICK TOWNSEND & STOCKTON LLP
X. Diego Wu Min (State Bar No. 317488)
dwu@ktslaw.com
12255 El Camino Real, Suite 250
San Diego, CA  92130
Telephone:(858) 350-6154
Facsimile: (858) 350-6111

Dario A. Machleidt (Admitted *Pro Hac Vice*)
dmachleidt@ktslaw.com
Kathleen R. Geyer (Admitted *Pro Hac Vice*)
kgeyer@ktslaw.com
1420 Fifth Avenue
Seattle, WA  98101
Telephone: (206) 224-2857
Facsimile: (206) 374-2199

Kristin M. Adams (Admitted *Pro Hac Vice*)
kmadams@ktslaw.com
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6138

Attorneys for Defendant
KAOTICA CORPORATION

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ICONIC MARS CORPORATION, a California corporation<br><br>Plaintiff,<br><br>v.<br><br>KAOTICA CORPORATION, a Canadian corporation<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 3:22-cv-00092-CAB-DEB<br><br>**DEFENDANT KAOTICA CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Complaint Filed:   January 23, 2022<br><br>Date:      September 4, 2024<br>Courtroom:  15A<br><br>The Honorable Judge Bencivengo<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

# **TABLE OF CONTENTS**

TABLE OF ABBREVIATIONS & ACRONYMS ................................................v

**I.**    INTRODUCTION ..............................................................1

**II.**    ARGUMENT ...................................................................1

    A.    Iconic's and Lobbin's attempt to blame Kaotica for defending itself from Iconic's bad faith case. ...................................1

    B.    Kaotica is the prevailing party in this case. .....................................3

    C.    None of Iconic's or Lobbin's arguments counsel against sanctioning them. ........................................4

        1.    Iconic and Lobbin ignore most of Kaotica's arguments and the cited facts supporting them. .....................4

        2.    The Court should not exclude SML Avvocati from any sanctions order based on the firm's alleged inability to pay. ..........................5

        3.    Lobbin's alleged *pro bono* representation of Iconic is irrelevant to whether the Court should sanction him and his firm. ...................7

        4.    Lobbin cannot hide behind his client to avoid the fact that both misrepresented facts during the Contempt Hearing and then litigated those false facts throughout this case. ..................8

        5.    Iconic and Lobbin repeat already rejected arguments to excuse their willful violations of this Court' orders. .................10

        6.    Lobbin doubles down on his sanctionable closing argument. ..................11

        7.    Iconic's failed breach-of-contract claim and its defense to Kaotica's successful contract counterclaim were not made in good faith. .................11

        8.    The Court should ignore Iconic's and Lobbin's arguments responding to allegations Kaotica did not raise. .................13

D.    Iconic ignores Kaotica's actual argument in support of an exceptional case finding and fee award under the Lanham Act. ..............................................14

**III.**    CONCLUSION ...........................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
   No. CIV. 09-1091 JNE/JSM, 2013 WL 3833065
   (D. Minn. July 23, 2013) ....................................................................................... 8, 9

*Cabrales v. BAE Sys. San Diego Ship Repair, Inc.*,
   No. 21-CV-02122, 2023 WL 5985517 (S.D. Cal. Sept. 13, 2023) ...................... 6

*Canon Bus. Sols., Inc. v. ASAP Copy & Print*,
   No. CV1210165, 2013 WL 12162442 (C.D. Cal. Apr. 24, 2013) ...................... 5

*Foster v. Mydas Assocs., Inc.*,
   943 F.2d 139 (1st Cir. 1991) .................................................................................7, 8

*Haynes v. City & Cnty. of San Francisco*,
   688 F.3d 984 (9th Cir. 2012) .................................................................................. 5

*LCS Grp., LLC v. Shire Dev. LLC*,
   No. 20-2319, 2022 WL 1217961 (2d Cir. Apr. 26, 2022) ...............................5, 6

*LCS Grp., LLC v. Shire LLC*,
   No. 18 CIV. 2688 (AT), 2019 WL 1234848 (S.D.N.Y. Mar. 8, 2019) ...........5, 6

*LCS Grp., LLC v. Shire LLC*,
   No. No. 18 CIV. 2688 (AT), 2020 WL 3412927
   (S.D.N.Y. June 22, 2020) ....................................................................................5, 6

*Lucas v. Jos. A. Bank Clothiers, Inc.*,
   217 F. Supp. 3d 1200 (S.D. Cal. 2016) ................................................................ 5

*Metz v. Unizan Bank*,
   655 F.3d 485 (6th Cir. 2011) ................................................................................ 2

*Nutrition Distribution LLC v. PEP Rsch., LLC*,
   No. 16-CV-2328-WQH-BLM, 2018 WL 6323082
   (S.D. Cal. Dec. 4, 2018) ........................................................................................ 8

*Offor v. Mercy Med. Ctr.*,
   No. 17 CIV. 1872, 2018 WL 3364389 (S.D.N.Y. July 10, 2018)....................... 7

*In re S. California Sunbelt Developer's Inc. v. S. California Sunbelt Devs., Inc.*,
No. SACV 06-00270, 2009 WL 2138490 (C.D. Cal. July 15, 2009) ..................8

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
No. 18-cv-967, 2023 WL 7597630 (S.D. Cal. Nov. 14, 2023) ........................3, 4

*San Diego Puppy, Inc. v. City of San Diego*,
No. 13-CV-2783-BTM-DHB, 2014 WL 4546390
(S.D. Cal. Sept. 11, 2014).........................................................................4, 5

**Other Authorities**

Fed. R. Civ. P. 11.................................................................................2, 5, 6

Fed. R. Civ. P. 11(b)(3) ............................................................................9

Fed. R. Civ. P. 12.....................................................................................13

Fed. R. Civ. P. 12(b)(6) .............................................................................3

## <u>TABLE OF ABBREVIATIONS & ACRONYMS</u>

| Kaotica | Defendant Kaotica Corporation |
|---|---|
| Iconic | Plaintiff Iconic Mars Corporation |
| Lobbin | Stephen Lobbin |
| Osborn | Joshua Osborn |
| SML Avvocati | SML Avvocati, P.C. |
| Olaleye | Oluseyi Olaleye |
| Zukowski | Konrad Zukowski |
| Billick | Tim Billick |
| Roberts | Jack Roberts |
| Old Comet or Version 1 | *See* Dkt. 96 at 2 |
| New Comet or Version 2 | *See* Dkt. 96 at 2 |
| Sanctions Letter | The letter Kaotica sent Lobbin on July 14, 2022 (Dkt. 119-7) |
| Trade Dress | *See* Dkt. 111 at 17 (Instruction No. 16) |
| Stipulated Judgment | Dkt. 1-2 |
| Contempt Hearing | Transcript of the hearing held in *Kaotica IP Corp v. Iconic Mars Corp.*, No. 21-CV-433-CAB-DEB (S.D. Cal.) on March 24, 2022 (Dkt. 119-8) |
| First Lawsuit | The case captioned *Kaotica IP Corp v. Iconic Mars Corp.*, No. 21-CV-433-CAB-DEB (S.D. Cal. 2021) |
| Purple Comet Video | The Video introduced as Ex. 264 during trial in this matter |
| TT | Trial Transcript (Dkts. 119-3 – 119-5) |
| JMOL | Judgment as a Matter of Law |
| MSJ | Motion for Summary Judgment |

## I.   INTRODUCTION

Iconic and Lobbin repeatedly violated court orders. Lobbin ignored or misrepresented harmful facts hoping to secure victory for his client. He tried to blame Kaotica and its counsel for misleading the jury based on his client's own mistake—an error Iconic and Lobbin defend in their Opposition brief. Their tactics failed, and the jury returned a willfulness finding against Iconic after a few short hours of deliberations, one of many facts they ignore in their brief.

Instead of focusing on Iconic's and Lobbin's actions in this case, their Opposition emphasizes irrelevant things like Lobbin's *pro bono* representation of Iconic, his firm's inability to pay, and Lobbin's family status as reasons to avoid sanctions. Lobbin has made these exact same arguments in past cases where he unsuccessfully sought to avoid sanctions. Those prior sanctions granted by other courts did nothing to deter the bad faith litigation Kaotica dealt with here.

When deciding whether to grant Kaotica's motion, including by sanctioning Iconic's counsel, the court must ask itself a simple question: In future cases, would the court want parties and lawyers to behave like Iconic and Lobbin did?

The answer must be "no." No one would review this lawsuit and conclude that Iconic and Lobbin behaved appropriately. The Court has the power to address and deter such conduct by granting Kaotica's motion.[1]

## II.   ARGUMENT

### A.   Iconic's and Lobbin's attempt to blame Kaotica for defending itself from Iconic's bad faith case.

Kaotica proved throughout this lawsuit that it was right and Iconic was wrong. Despite Iconic's demand of nearly a million dollars before trial, by the time the jury returned its verdict, Iconic suffered a complete loss. That loss included the Court's and jury's rejection of each of Iconic's affirmative claims[2] and a willful

---

[1] Kaotica does not oppose oral argument. Kaotica opposes the use of any "character witnesses" that have no personal knowledge of Lobbin's actions in this case.

[2] While the Court has not yet ruled on Iconic's unfair competition claim, the jury

infringement finding against Iconic. That loss was further punctuated by the fact that all but two Iconic claims based on the same underlying facts—Kaotica's alleged liability for intentional interference and unfair competition—were resolved by the Court on summary judgment, motions *in limine*, or JMOL. It is hard to imagine how this case could have turned out more favorably for Kaotica.

Iconic, however, stills sees itself as the victim. It contends "Kaotica's assertion that Iconic's lawsuit was frivolous is belied further by the fact that Kaotica did not make such assertions initially, nor did it file any motion to dismiss the Complaint. Instead, *Kaotica filed its Answer and Counterclaims, which did nothing but increase and exacerbate the dispute*." Dkt. 128, at 7 n.4 (emphasis added). This argument is wrong and farcical.

First, Kaotica did tell Iconic of the frivolousness of its claims at the start of this case. Kaotica's answer in May 2022 described many of the same facts that the Court and jury relied on to reject Iconic's claims and find in favor of Kaotica. Shortly after that, in its July 14, 2022 Sanctions Letter, Kaotica went into further detail about why Iconic's claims and Lobbin's arguments were baseless. Dkt. 119-7, at 1 ("Iconic's claims are based on allegations that are simply untrue. For example, contrary to your breach-of-contract accusations, Mr. Billick's November letter to Shopify did not cause Iconic any harm in 2021. You admitted this very fact in a January 2022 letter you sent Kaotica shortly before filing suit … Remarkably, you took the opposite—and false—position in the complaint."); *see also id.* at 1-4. Iconic and Lobbin ignored the Sanctions Letter when Kaotica sent it. And like other inconvenient facts, they ignored it in their Opposition to Kaotica's sanctions motion.

Second, while Iconic is correct that Kaotica did not move to dismiss, that fact is legally irrelevant.[3] Iconic's complaint contained statements and arguments proved

---

rejected Iconic's intentional interference claim based on the same allegations.

[3] So too is the fact that Kaotica did not file a Rule 11 motion. *See Metz v. Unizan Bank*, 655 F.3d 485, 491 (6th Cir. 2011) ("Rule 11 does not directly cover the disregard of court orders" or action that "needlessly delays the entire proceedings").

false by documents and letters outside the pleadings, thus being improper grounds for a Rule 12(b)(6) motion. Further, Kaotica's undersigned counsel was retained just before its response to the complaint was due on May 6, 2022. Dkt. 12, at 18 n. 2. On May 5, Kaotica's counsel sought an extension from Iconic to get up to speed and, ideally, resolve this and any appeal of the First Lawsuit. Ex. 13.[4] Specifically, Kaotica's counsel wrote to Lobbin:

> Kilpatrick Townsend will be substituting in as counsel for Kaotica in the two lawsuits involving Iconic. While I'm still getting up to speed, it seems like both parties are interested in resolving the disputes …
> We intend to seek a 30-day extension … to respond to the complaint in the -00092 case based on our recent addition and ongoing settlement talks.  Please let me know if Iconic will oppose the motion.

Ex. 13 at 2. Lobbin refused to grant the extension: "another extension is not workable… The judge already is familiar with the issues raised in the new action, so the outcome is fairly predictable." *Id.* at 1. It is unremarkable that Kaotica did not move to dismiss after its counsel was on the case for only two days.

Third, Iconic's and Lobbin's characterization of Kaotica's decision to answer and counterclaim (including filing mandatory counterclaims) as doing "nothing but increase and exacerbate the dispute" is untenable. Dkt. 128, at 7 n.4. Kaotica prevailed at summary judgment, JMOL, and trial on the defenses and counterclaims it filed after its counsel had only days to learn the case. Iconic's view that Kaotica should have succumbed and paid an amount it did not owe shows that neither Iconic nor its counsel appreciate the actual purpose of federal courts.

### B.    Kaotica is the prevailing party in this case.

"Prevailing party" status occurs when "there was a material alteration in the legal relationship of the parties … that is 'judicially sanctioned.'" *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, No. 18-cv-967, 2023 WL 7597630, at *2 (S.D. Cal. Nov. 14, 2023). That is what happened here. Kaotica prevailed on its claims against Iconic, and the jury rejected Iconic's claim for

---

[4] All Exhibits are attached to the Declaration of Dario Machleidt to this Reply.

intentional interference. Dkt. 113. The court entered judgment consistent with the jury verdict. Dkt. 116. This is sufficient to deem Kaotica the prevailing party. *San Diego Cnty. Credit Union*, 2023 WL 7597630, at *2 ("[A] 'material alteration in the legal relationship' is prevailing in *some* of the relief, whatever its form, that the prevailing party sought." (citation omitted) (emphasis in original)). Even if the Court were to reduce the jury's advisory disgorgement figure and grant Iconic's claim of unfair competition, Iconic still owes Kaotica at least $275,000 for its willful infringement of the Trade Dress and was found to be in breach of the Stipulated Judgment. Iconic cites no support for its request that the Court delay a "prevailing party" determination until it resolves all equitable issues as well.

### C. None of Iconic's or Lobbin's arguments counsel against sanctioning them.

#### 1. Iconic and Lobbin ignore most of Kaotica's arguments and the cited facts supporting them.

Iconic's and Lobbin's Opposition ignores numerous facts and arguments Kaotica raised. The Court should deem these facts and arguments conceded as it decides whether to grant Kaotica's motion. *See, e.g.*, *San Diego Puppy, Inc. v. City of San Diego*, No. 13-CV-2783-BTM-DHB, 2014 WL 4546390, at *4 (S.D. Cal. Sept. 11, 2014) ("Plaintiff fails to respond to this argument and therefore concedes it through silence." (quotation omitted)).

The Opposition does not reference any of the following facts, or related arguments, that Kaotica raised in its motion:

1. The Sanctions Letter;
2. The Purple Comet Video;
3. Lobbin's pre-suit letters (including the January 11, 2022 letter);
4. Lobbin's misrepresentation of Roberts' damages opinions;
5. Lobbin's repeated mischaracterizations of his client's positions during several hearings;
6. The Court's resolution against Iconic on its "misrepresentation" claim and use of that allegation as a basis to support Iconic's arguments regarding interference and unfair competition;
7. Iconic's failure to develop any facts supporting the required "objective baselessness" prong of its interference claim;
8. The continued presence of the Old Comet on Iconic's websites; and

KAOTICA'S REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO.: 3:22-CV-00092-CAB-DEB                                                    - 4 -

9.  Iconic's continued sales of the infringing New Comet.

Iconic's and Lobbin's failure to respond was not based on any briefing limits. Despite having 35 pages in which to respond to Kaotica's motion, they only used 12 pages. Their decision not to respond to these facts and arguments means they have conceded them. *San Diego Puppy*, 2014 WL 4546390, at *4.

2.      The Court should not exclude SML Avvocati from any sanctions order based on the firm's alleged inability to pay.

Lobbin argues that his "firm could not reasonably absorb any fee shifting or sanctions." Dkt. 128, at 2 n.2,[5] but does not say the same thing about himself or Iconic. This Court should not rely on this unsupported assertion when deciding whether to sanction SML Avvocati. *See Lucas v. Jos. A. Bank Clothiers, Inc.*, 217 F. Supp. 3d 1200, 1208 (S.D. Cal. 2016) (declining to reduce the amount because of inability to pay); *Canon Bus. Sols., Inc. v. ASAP Copy & Print*, No. CV1210165, 2013 WL 12162442 (C.D. Cal. Apr. 24, 2013) (declining to reduce sanctions award). In the Ninth Circuit, "it is within the discretion of the district court to decide whether to reduce the amount at all" that it awards under Section 1927. *Haynes v. City & Cnty. of San Francisco*, 688 F.3d 984, 987–88 (9th Cir. 2012) (noting that "[t]he purpose of § 1927 may be to deter attorney misconduct, or to compensate the

[5] Lobbin also mentions he "solely support[s] [his] family, including two school-aged children." Dkt. 128, at 2 n.2; Dkt. 128-1, ¶ 4. Lobbin previously raised having children as an excuse to avoid sanctions where another court imposed Rule 11 sanctions on him. Ex. 14 at 1-2 ("Mr. Lobbin [and his client] has great financial obligations in caring for their families, each including two minor children"). In that case, the court found that "the appropriate sanction is requiring LCS and Lobbin, jointly and severally" to reimburse opposing counsel for their reasonable attorney fees and expenses. *LCS Grp., LLC v. Shire LLC*, No. 18 CIV. 2688 (AT), 2019 WL 1234848, at *18 (S.D.N.Y. Mar. 8, 2019), judgment aff'd, appeal dismissed in part sub nom. *LCS Grp., LLC v. Shire Dev. LLC*, No. 20-2319, 2022 WL 1217961 (2d Cir. Apr. 26, 2022). Despite Lobbin's arguments regarding having a family to take care of, that court ordered "Stephen Lobbin," his firm, and his client "jointly and severally, … to pay $133,803.75 to Defendants." *LCS Grp., LLC v. Shire LLC*, No. No. 18 CIV. 2688 (AT), 2020 WL 3412927, at *5 (S.D.N.Y. June 22, 2020).

victims of an attorney's malfeasance, or to both compensate and deter"). This Court has the discretion whether to reduce any awarded amount. Should it grant Kaotica's motion, in the dual interests of deterrence *and compensation*, it should not reduce any fee award based on SML Avvocati's alleged inability to pay.

First, it would be perverse for this Court to excuse Lobbin's and his firm's sanctionable conduct because the blameworthy law firm was financially unsuccessful. Such an outcome would give financially unsuccessful firms a free pass to litigate in bad faith, while holding well-off firms to a higher standard. That should not be the result this Court adopts.

Second, Lobbin has litigated for decades, and his firm has been around for years. Lobbin knows that litigating in bad faith is sanctionable. In fact, several courts have imposed monetary sanctions against him. This knowledge and experience combined with Kaotica's early notice about the baselessness of Iconic's case (in the form of the Sanctions Letter) mean that any alleged financial hardship SML Avvocati now faces due to sanctions "was avoidable." *Cabrales v. BAE Sys. San Diego Ship Repair, Inc.*, No. 21-CV-02122, 2023 WL 5985517, at *3 (S.D. Cal. Sept. 13, 2023) (granting motion for attorney fees against plaintiff despite his protestations that "he is 'the sole breadwinner of [his] family'" because the alleged hardship was avoidable by plaintiff stopping his sanctionable conduct).

Third, this is at least the second time that Lobbin has attempted to use an alleged inability to pay to defend against sanctions. Ex. 14 (Lobbin's brief in *Shire* regarding the court's imposition of Rule 11 sanctions), at 1-2 (Lobbin claiming he has "very limited financial resources"). In *Shire*, Lobbin represented that "[d]eterrence is firmly in place already" based on the court's finding that Lobbin violated Rule 11 by filing a complaint alleging frivolous RICO violations and doing so for an improper purpose. Ex. 14 at 2; *Shire*, 2019 WL 1234848, at *15.

The court nevertheless ordered Lobbin, his former firm, and his client to pay (jointly and severally) "$133,803.75 to Defendants" for a case decided on a motion

to dismiss. *LCS Grp.*, 2020 WL 3412927, at *5. The Second Circuit affirmed. *LCS Grp., LLC v. Shire Dev. LLC*, No. 20-2319, 2022 WL 1217961, (2d Cir. Apr. 26, 2022). In other words, Lobbin represented that he was deterred from future sanctionable conduct, sought leniency because of his claimed inability to pay, yet the court nevertheless issued sanctions. This Court should likewise exercise its discretion to disregard SML Avvocati's claims of an inability to pay and instead sanction Lobbin's firm, Lobbin's client, and Lobbin himself.

It is clear that prior sanctions issued against Lobbin (Dkt. 119-1, at 2 n. 5) did not have their desired deterrent effect, despite Lobbin's assertions to the contrary. As this case shows, and as trial highlighted on a daily basis, Lobbin continues to litigate without fear of reproach. Ideally, the severe yet justified sanctions Kaotica requests—recovery of the entirety of its attorney and expert fees—will finally serve to stop Lobbin and his firm from litigating as if the rules do not apply to them.

3.    <u>Lobbin's alleged *pro bono* representation of Iconic is irrelevant to whether the Court should sanction him and his firm.</u>

Lobbin repeatedly states that his firm represented Iconic *pro bono*. Dkt. 128, at 2, 4-5, 12. This fact is irrelevant to whether the Court should sanction Lobbin and SML Avvocati. "Courts cannot be expected to base codes of proper conduct on whether, or how much, counsel is paid for his or her work. We think that a system which attempted to encourage lawyers to handle ... cases *pro bono* by exempting them from the rules that other attorneys must follow would be not only unwise and unworkable, but perverse." *Foster v. Mydas Assocs., Inc.*, 943 F.2d 139, 144 (1st Cir. 1991); *Offor v. Mercy Med. Ctr.*, No. 17 CIV. 1872, 2018 WL 3364389, at *6 (S.D.N.Y. July 10, 2018) (declining to "consider the fact that [the lawyer] is not being paid … in considering the proper sanction for his misconduct" and rejecting argument that "the Court [should] exercise its discretion in favor of the Plaintiff and refrain from awarding sanctions in this case against this *Pro bono* Attorney").

This case is not Lobbin's first time arguing that sanctions are inappropriate

KAOTICA'S REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO.: 3:22-CV-00092-CAB-DEB                                                                      - 7 -

because of his *pro bono* representation of a client. He made the same argument in *Nutrition Distribution LLC v. PEP Rsch., LLC*, No. 16-CV-2328-WQH-BLM, 2018 WL 6323082 (S.D. Cal. Dec. 4, 2018). There, this Court noted that the "evidence in the record tends to establish that Defendants' counsel [Lobbin] was responsible for the discovery noncompliance. Defendants do not provide cases or other law to support the assertion that sanctions against *pro bono* counsel are inappropriate under the circumstances." *Id.*, at *3. Here, as in that prior case, Lobbin does not give this Court any reason to find that sanctioning *pro bono* counsel is inappropriate.

Lobbin neglects to mention that Iconic repeatedly sought its own "attorney fees" when it believed success was likely against Kaotica. Iconic sought its fees in the complaint, initial disclosures, and pretrial order. *See* Dkt. 1, at 12 ("an award of … attorney fees to Plaintiff [Iconic]"); Dkt. 87-4, at 2 ("[Iconic] claims at least … its reasonable attorneys' fees"); Dkt. 96, at 3 (Iconic seeks "an award of interest, attorney fees"). In other words, "the characterization of the lawyers' efforts as '*pro bono*' lacks the moral fiber that" Lobbin ascribes to it. *Foster*, 943 F.2d at 144.

4. <u>Lobbin cannot hide behind his client to avoid the fact that both misrepresented facts during the Contempt Hearing and then litigated those false facts throughout this case.</u>

Lobbin asks this Court to believe he argued at the Contempt Hearing that Iconic completely removed the Old Comet from existence based on "information received from Iconic, and the same information which was in Iconic's contemporaneous declaration." Dkt. 128, at 8 n.5. Even if that is true, as another court told Lobbin, "Lobbin cannot stick his head in the sand and cower behind his client's disobedient conduct." *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, No. CIV. 09-1091 JNE/JSM, 2013 WL 3833065, at *5 (D. Minn. July 23, 2013).

Even if Iconic's owner falsely told Lobbin that Iconic removed all traces of the Old Comet, and that is why Lobbin made those misrepresentations to this Court during the Contempt Hearing, it does not matter to Kaotica's request for sanctions. Instead, it simply supports that the Court should sanction client, lawyer, and law

firm, jointly and severally, letting them deal with who is to blame. *In re S. California Sunbelt Developer's Inc. v. S. California Sunbelt Devs., Inc.*, No. SACV 06-00270, 2009 WL 2138490, at *3 (C.D. Cal. July 15, 2009) ("[I]mposing sanctions against client and counsel jointly and severally is preferred since the sanctioned parties are in the best position to determine who caused the frivolous appeal to be taken.").

The *Aviva* decision provides a succinct rebuttal to Lobbin's argument:

> Based on the extensive record in this case, Lobbin's unreasonable reliance on [his client's] assurances, and his failure to make any diligent attempt to comply with the Court's discovery order … the Court finds that Lobbin's behavior … constituted intentional or reckless disregard of his duties … Lobbin's utter failure to attempt to discharge his duties as an officer of the Court unreasonably and vexatiously multiplied the proceedings in this case and amounted to bad faith.

*Aviva Sports*, 2013 WL 3833065, at *6. The same is true here. The extensive record Kaotica summarized through its motion shows that Lobbin's conduct amounts to bad faith. He cannot run from that finding by pointing the finger at his client who partook in that same bad faith conduct.

Lobbin must have done more than simply ask Olaleye, Did you comply with the Stipulated Judgment? Mere minutes spent reviewing Iconic's various websites confirms Iconic continues to show images of the Old Comet. This fact undercuts Lobbin's specious allegation that, "at the early stage of the contempt hearing, the undersigned counsel was not aware of some of the additional facts developed later in the case." Dkt. 128 at 6.[6] To avoid any doubt, Lobbin's misrepresentation was not limited to the Contempt Hearing. He reiterated these false claims in the complaint (Dkt. 1, ¶¶ 14, 47), even when he had an affirmative duty to confirm that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3).

Lobbin's defensive response to Kaotica's simple retelling of what happened

---

[6] Despite this tacit, half-admission of fault, Iconic and Lobbin remarkably maintain that the Court "appropriately denied Kaotica's motion for contempt." Dkt. 128, at 4.

at the Contempt Hearing confirms the Court should find joint and several liability. Kaotica's motion recounted what happened at that hearing chronologically. Dkt. 119-1, at 5-7. First, Lobbin spoke and misrepresented Iconic's alleged compliance with the Stipulated Judgment. Second, Olaleye testified consistently with what Lobbin argued. But Lobbin characterizes Kaotica's motion in a negative light:

> Kaotica presents a fictional story that the undersigned counsel was "masterminding" the underlying facts presented at the March 2022 contempt hearing, after which this Court denied Kaotica's motion. Kaotica speculates inappropriately that Mr. Olaleye of Iconic "took the stand during the hearing [and] testified consistently with Lobbin's representations."

Dkt. 128 at 5-6. Kaotica never presented any "masterminding" story nor speculated that Lobbin was the original source of the false facts that he argued to this Court. Iconic, Lobbin, and his firm all behaved badly and all should be equally sanctioned.

### 5. Iconic and Lobbin repeat already rejected arguments to excuse their willful violations of this Court' orders.

Kaotica explained why Iconic and Lobbin repeatedly violated this Court's orders. The Opposition does not contend otherwise and in fact acknowledges the legal standard that an "inherent power sanction requires (1) a willful violation of a court order, or (2) bad faith." Dkt. 128, at 3 (quoting *America Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021)). Despite Iconic then claiming that "[n]one of these standards could be met here," Kaotica recounted numerous examples of Iconic's and Lobbin's repeated, willful violations of this Court's orders. Dkt. 119-1, at 21-28.

Rather than dispute this fact, Iconic and Lobbin argue why they were justified in violating one of those orders: "Kaotica argues that Iconic should not have mentioned Kaotica's patents at trial, but Iconic was attempting to defend against an asserted trade dress that had functional elements discussed in Kaotica's own patents. This Court disagreed, but the law supports Iconic's position …" Dkt. 128, at 8. Iconic and Lobbin miss the point. This Court told them not to mention Kaotica's

KAOTICA'S REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO.: 3:22-CV-00092-CAB-DEB                                                                     - 10 -

patents. Instead of seeking to preserve the record on this issue, for example through a proffer outside of the jury's presence, Iconic and Lobbin decided to willfully ignore that order because they think "the law supports Iconic's position."[7] This is one of many factors supporting a finding of bad faith.

6.    <u>Lobbin doubles down on his sanctionable closing argument.</u>

Lobbin tries to defend his rebuttal closing argument that resulted in this Court threatening contempt. He calls "Iconic's trial testimony [mistaking what Comet image was attached to the Stipulated Judgment] … honest, not the result of product confusion, which suggests any mistake occurred elsewhere." Dkt. 128, at 5. While Olaleye's testimony might have been honest mistake, the conclusion Lobbin asked the jury to draw in closing was not. While the Opposition paints those events as involving "a simple misunderstanding in the heat of trial, in the zealous advocacy of closing argument," *id.*, this Court said it best—Lobbin tried to argue that Kaotica and its counsel did something wrong, Dkt. 119-1, at 27-28 (quoting TT 763:10-764:19), which was baseless and bordered on contempt.[8]

7.    <u>Iconic's failed breach-of-contract claim and its defense to Kaotica's successful contract counterclaim were not made in good faith.</u>

Kaotica showed why Iconic, Lobbin, and his firm acted in bad faith. The Opposition simply continues this course of conduct. For example, Iconic asks the Court to believe that "Iconic's allegations of breach of contract were made in good faith …" Dkt. 128, at 6. But Iconic and Lobbin do not dispute they *knew* that the hotly disputed November 2021 Kaotica letter did not lead to any harm in 2021. They admitted this very fact in the SML Avvocati letter dated January 11, 2022, mere

---

[7] Despite Lobbin's and Iconic's insistence that the law supports their position, they never sought a motion for a new trial based on this issue nor otherwise preserved this issue for appeal.

[8] Lobbin tries to factually support his client's mistake about what Comet image is attached to the Stipulated Judgment. Dkt. 128, at 9. He concludes his client's mistaken testimony was "likely" correct. *Id.* There is no support for this after-the-fact attempt to justify Iconic's mistake, nor is it relevant to Kaotica's motion.

KAOTICA'S REPLY ISO MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO.: 3:22-CV-00092-CAB-DEB        - 11 -

days before filing this lawsuit. Dkt. 119-1, at 9. Their decision to act otherwise (and ignore their pre-suit admissions contained in that letter) throughout this case supports a finding of bad faith. The Opposition has no rebuttal to this point.

Instead, it references but does not cite trial testimony about the extent of Iconic's harm that the jury was prevented from hearing and attempts to tie it to Kaotica's letter to Shopify and contacts with Facebook. Dkt. 128, at 6. Even now, Iconic mixes and matches its claims and collapses its 2021 versus 2022 arguments into one big pile. Its reference to a "75%+ drop in monthly orders … after Kaotica sent notices to Facebook/Instagram" (*id.*) had nothing to do with Iconic's alleged 10-day inability to sell on Facebook in November 2021.

And in any event, as Kaotica recounted in its motion—and Iconic studiously ignores—"Iconic's own financials demonstrate an average of approximately only $2,000 per month [on Facebook]—equating to an average of less than $700 for 10 days, which is less than 5% of the alleged $15,000 damages" Iconic claimed it suffered in 2021. Dkt. 119-1, at 19-20.

Iconic and Lobbin ignore the fact that Shopify should never have been part of Iconic's rejected contract claim that focused solely on Kaotica's actions and Iconic's alleged injuries *in 2021*. Dkt. 119-1, at 9 (Osborn admitting before Iconic filed suit, "it appears that Shopify did not do anything until recently [in January 2022]"); TT 555:14-558:13 ("THE COURT: The letter that appears at Exhibit 340, which was sent from the Iconic firm, specifically says Shopify did not do anything until recently, which I'm understanding to be in January [2022] … I care about you misleading the jury … so I want you to clear up with [the jury] that nothing happened with Shopify."). Iconic and its counsel unreasonably and vexatiously kept that part of the case alive to unnecessarily complicate Kaotica's defense.

Remarkably, the Opposition confirms this point. In attempting to convince this Court they brought the contract claim in "good faith," Iconic and Lobbin state:

> But Iconic's allegations of breach of contract were made in good faith,
> and the allegations included that "Kaotica violated the Stipulated

Injunction by sending a DMCA cease and desist notice concerning IMC's Old Comet product to both Shopify **and Facebook**, resulting in a major interruption in IMC's business." *See* ECF No. 1 at 3 ¶¶ 10-11.

Dkt. 128, at 6 (emphasis in original). Even in the complaint, Iconic and Lobbin tried to mislead the Court—just like Lobbin with did the jury before the Court shut him down—by collapsing "Shopify and Facebook" into the same sentence that concluded with allegations of "major" harm. Such deceptive conduct does not support their cries of "good faith."

### 8. The Court should ignore Iconic's and Lobbin's arguments responding to allegations Kaotica did not raise.

The Opposition posits that Kaotica made several arguments it, in fact, did not. First, Iconic believes Kaotica contends that Iconic "[s]hould have litigated harder" and that, despite Iconic's apparent inability to do so, the facts still "support a jury verdict in its favor." Dkt. 128, at 8. Kaotica has never contended that Iconic should litigate "harder." Rather, Iconic and its counsel should have litigated in good faith and within the bounds of this Court's orders and the Federal Rules. They did not. And their decision warrants sanctions.

Second, Iconic argues that the "only 77 entries" on the Court's docket before trial "contravenes any accusation of litigiousness." Dkt. 128, at 4. But Kaotica never alleged "litigiousness" or that the number of docket entries or court filings had any bearing on its motion for fees and sanctions. Rather, Kaotica explained how Lobbin litigated in bad faith by intentionally injecting confusion into an otherwise simple case, and that he unreasonably and vexatiously tried the case by ignoring facts, the rules, and this Court's orders. Dkt. 119-1, at 20-28. The Opposition says nothing in response to these actual arguments Kaotica raised.

Third, Iconic claims that "Kaotica complains about Iconic's pleadings and discovery responses, but Kaotica should have raised these contentions at the time, in a Rule 12 motion, a discovery motion, or otherwise. These arguments should be deemed waived at this late stage of the proceedings." Dkt. 128, at 6. This is the

proverbial red herring. Kaotica referenced Iconic's complaint and discovery responses to show that its and its counsel's conduct justifies sanctions.

For example, Kaotica pointed out Iconic's ever-shifting story about how the Old Comet compared to the New Comet, beginning with its verified interrogatory responses and ending at trial. Dkt. 119-1, at 11-12. Nothing here required a discovery motion. Iconic testified under oath in its interrogatory responses. Kaotica simply points out how Iconic refused to stick to its sworn, verified answers.

The same is true about Iconic's complaint. Kaotica explained how it contains allegations that Iconic and its counsel knew were false. *See, e.g.*, Dkt. 119-1, at 9-11. Kaotica sought summary judgment on some of those claims and prevailed on others at JMOL. But those outcomes do not change the fact that Iconic and Lobbin engaged in bad faith by raising and prosecuting arguments they knew were false, just as they admitted in their pre-suit correspondence (i.e., the January 11, 2022 SML Avvocati letter). In an attempt at misdirection, Iconic and Lobbin do not defend their complaint in the face of the contents of that letter.[9]

### D. Iconic ignores Kaotica's actual argument in support of an exceptional case finding and fee award under the Lanham Act.

Kaotica based its exceptional case finding and attendant attorney fee request under the Lanham Act on two grounds: the jury's willfulness finding and, separately, the manner in which Iconic litigated this case. Dkt. 119-1, at 28-33.

---

[9] Iconic argues that it "could not admit many of the facts alleged in Kaotica's counterclaims, including Paragraph 9 which references internal acts of Shopify and its communications with Kaotica's representative Tim Billick, neither of which Iconic had any personal knowledge." Dkt. 128, at 6. But Paragraph 9 contains two sentences. The first references that "Shopify took no action in response to the November 15, 2021 letter until January 2022." Dkt. 12, at 11, ¶ 9. Iconic and Lobbin have always known that to be true. The second sentence states that on "January 1, 2022, Kaotica's counsel, Tim Billick, contacted Shopify to explain that the 'Iconic Mars Comet product' was the subject of the Parties' Stipulated Injunction (Exhibit A)[.]" *Id.* Kaotica then *pasted* that Billick email into its counterclaims and attached it as Exhibit A. Thus, Iconic had "personal knowledge" about the email.

Iconic alleges that "[t]here is nothing exceptional or sanctionable about Iconic's efforts to defend itself from Kaotica's infringement allegations." Dkt. 128, at 7. But this statement ignores Kaotica's actual argument. The *manner in which Iconic defended itself* justifies sanctions. Kaotica explains in detail why Iconic litigated in an exceptionally improper manner. Dkt. 119-1, at 28-33. The Opposition brief contains no response to Kaotica's arguments.

Iconic also contends that "this should not be deemed an 'exceptional case' just because the jury found infringement." Dkt. 128, at 9. Yet again this is not Kaotica's argument. The jury found Iconic's infringement to be "intentional[], willful[], or with bad faith." Dkt. 113, at 2. This outcome supports an exceptional case finding. Iconic never even mentions the jury's willfulness conclusion in its Opposition brief.

## III.  CONCLUSION

The prior sanctions Lobbin faced did nothing to deter him or his firm from litigating this case in bad faith from the very start. Simply put, Lobbin has yet to learn his lesson. Kaotica's opening motion is a detailed roadmap summarizing Lobbin's (and his client's) bad behavior throughout this case. The only conclusion is that severe sanctions are necessary to put an end to Lobbin's unseemly litigation strategies. Those sanctions must take the form of the entirety of Kaotica's attorney fees and expert costs. Absent such an outcome, Lobbin will simply impose his will against future opponents and burden other courts (and likely this one again) with bad faith litigation tactics. Inevitably, most opponents will settle rather than fight.

But Kaotica defended itself, and in doing so, showed this Court the extent of Lobbin's and Iconic's improper conduct. It began before filing suit and continued until the final day of trial. Accordingly, the Court should sanction Iconic, Lobbin, and his firm, finding them jointly and severally liable. It should similarly award Kaotica its fees under the Lanham Act. Parties and lawyers cannot be allowed to litigate in federal court the way Iconic and Lobbin did here.

DATED: August 28, 2024        KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Dario A. Machleidt*
     DARIO A. MACHLEIDT

Attorneys for Defendant
Kaotica Corporation