UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ICONIC MARS CORP., <br><br> Plaintiff, <br><br> v. <br><br> KAOTICA CORP., <br><br> Defendant. | Case No.: 22-CV-0092-CAB-DEB <br><br> **ORDER ON EQUITABLE CLAIMS AND MOTION FOR ATTORNEYS' FEES AND COSTS** <br><br> **[Doc. Nos. 123, 125 and 119]** |

Before the Court are the parties' post-jury trial motions for resolution of equitable claims asserted in this litigation, and Kaotica Corporation's motion for an award of attorneys' fees and costs. [Doc. Nos. 123, 125 and 119.] Iconic Mars Corporation ("Iconic") seeks a finding of unfair competition against Kaotica. Kaotica Corporation seeks an award of disgorgement of Iconic's profits for trade dress infringement, enhancement of the jury award of damages, attorneys' fees and costs, and a permanent injunction. The Court heard argument on the motions on January 16, 2025. [Doc. No. 142; Doc. No. 144, Hr'g Transcript.]

**A. Background**

As set forth in the pretrial order, [Doc. No. 96], this case is between two companies, Iconic and Kaotica. These companies manufacture and sell microphone isolation products. Generally, these products fit over a microphone to eliminate background noises, isolate the

recording, and remove unwanted room noises. Kaotica manufactures and sells a product known as the Eyeball. Iconic manufactures and sells a product known as the Comet.

In 2021, these parties were involved in a lawsuit filed in this district in which Kaotica accused Iconic's Comet sales of infringing Kaotica's intellectual property rights, including Kaotica's trade dress rights in its Eyeball product under 15 U.S.C. § 1125(a). *See Kaotica Corp. v Iconic Mars Corp., et al.,* Case No. 21-cv-433-CAB.

Trade dress is the non-functional overall appearance or design of a product that consumers recognize and rely upon to distinguish it from others in the market. *See* Ninth Circuit Model Civil Jury Instructions, 15.3; *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 765 n.1 (1992). The 2021 lawsuit was resolved by entry of a Stipulated Judgment in which Iconic agreed that Kaotica's trade dress for the Eyeball product, as depicted in Exhibit 1 of the Stipulated Judgment,[1] is valid and subsisting. Iconic also admitted that sales and offers for sale of its Comet product, as depicted in Exhibit 2 of the Stipulated Judgment, infringed Kaotica's trade dress in violation of 15 U.S.C. § 1125(a). [Doc. No. 1-2, at 3–4, Exs. 1 and 2.] Iconic acknowledged that its sales of the Comet caused Kaotica irreparable harm and agreed to cease sales, promotion, and use of its infringing Comet product (hereinafter referred to as the Old Comet), by January 1, 2022.

On December 30, 2021, Iconic started selling a microphone isolation product which will be referred to as the New Comet.[2] On January 23, 2022, Iconic filed the current lawsuit alleging that Kaotica violated the terms of the Stipulated Judgment by interfering with its sales of the Old Comet prior to January 1, 2022, and with sales of the New Comet after January 1, 2022, causing Iconic damage. Iconic also sought a declaration that the New Comet did not infringe Kaotica's trade dress rights in its Eyeball product.

---

[1] Kaotica's trade dress for the Eyeball product, as depicted in the exhibit to the Stipulated Judgment, is the external appearance of the product consisting of a spherical black body onto one side of which is placed a flat, circular pop filter of a contrasting color, creating the look of an eyeball. The internal configuration of the product is not incorporated in the defined trade dress.

[2] Trial Testimony of Oluseyi James Olaleye, owner and founder of Iconic. [Doc. No. 102, at 23.]

Kaotica counterclaimed for violation of the Stipulated Judgment by Iconic based on Iconic's use of images of the Old Comet to market its products after the cutoff date of January 1, 2022. Kaotica also alleged that Iconic willfully infringed its trade dress rights in the Eyeball design and appearance with its New Comet design and claimed damages for Iconic's sales of the New Comet.

### B. Pretrial Adjudications

Kaotica moved for summary adjudication on its claim that Iconic breached the Stipulated Judgment by using images of the Old Comet in online marketing after January 1, 2022. The Court granted that motion and left the element of damages resulting from the breach for the jury to determine at trial. [Doc. No. 77.] The Court also granted Kaotica's motions that it did not make misrepresentations to Shopify regarding Iconic's Comet products either before or after January 1, 2022, allegations that gave rise in part to Iconic's claims for breach of contract, intentional interference, and unfair competition. [*Id.*]

### C. Trial

The case went to trial on June 10, 2024. After four days of testimony and argument, the jury returned a verdict in favor of Kaotica finding that Iconic's New Comet willfully infringed Kaotica's trade dress in the Eyeball. The jury awarded Kaotica $275,000 in damages based on evidence that Kaotica had to reduce the price of the Eyeball product to compete with Iconic's infringing New Comet product. [Doc. No. 113, Verdict.]

Kaotica also sought disgorgement of Iconic's profits from sales of the infringing New Comet product. The Court sent this question to the jury for an advisory verdict. The jury returned a verdict that Kaotica should be awarded $411,758 of Iconic's profits from sales of the New Comet. [*Id.*]

The jury did not find for Iconic on its claim that Kaotica intentionally interfered with Iconic's prospective economic advantage by misrepresenting to eBay, Instagram or Facebook after January 1, 2022, that Iconic continued to infringe Kaotica's trade dress rights and by requesting that Iconic's advertising be taken down.

### D. The Parties' Equitable Claims

#### 1. Iconic's Claim for Unfair Competition

Pursuant Fed. R. Civ. P. 52(a)(1), Iconic now moves for a finding from the Court on its claim in equity that Kaotica competed unfairly with Iconic in violation of California Business and Professions Code § 17200. [Doc. No. 123.]

Iconic does not articulate in its moving papers (or address in substance in its reply brief [Doc. No. 135]) what it asserts it demonstrated at trial to establish unfair competition on the part of Kaotica to support its claim. The entirety of its argument is the following, "[At] trial, Iconic presented documents and testimony which could support findings and a conclusion of unfair competition." [*Id.* at 5.] No specific evidence, testimonial or documentary, is identified. The Court is essentially asked to find facts from the record to make Iconic's claim for it. That is not the Court's job. *See generally, Parrish v. Mabus*, 679 Fed. Appx. 620, 621 (9th Cir. 2017) ("A bare assertion in a brief with no supporting arguments, or an argument made only in passing, is insufficient to avoid waiver.")

In the Pretrial Order, Iconic alleged that Kaotica engaged in unfair acts or practices and unfair methods of competition by representing to social media/advertising platforms eBay, Instagram and Facebook that the New Comet product infringed Kaotica's intellectual property rights. [Doc. No. 96 at 4.] The evidence at trial regarding this assertion consisted of notices sent in January 2022 by attorney Timothy John Billick on behalf of Kaotica stating that Iconic was subject to a Stipulated Judgment that prohibited the advertisement and sale of the Old Comet product after January 1, 2022. [Doc. No. 105, Billick Trial Testimony, at 42–45.] Billick requested the advertising platforms remove the Iconic product images as Kaotica asserted they were the same content as the images used prior to 2022 and infringed Kaotica's trade dress in accordance with the Stipulated Judgment. [*Id.*]

Iconic contended that these representations were issued in bad faith because Kaotica was not using images of the Old Comet on advertising platforms and Kaotica did not first obtain the New Comet product before sending takedown notices to the advertising platforms. Iconic argued that had Kaotica done so, it would have seen that the New Comet

did not infringe the trade dress and was not subject to the stipulated injunction and the advertising did not violate the injunction or constitute trade dress infringement.

The evidence presented at trial, however, demonstrated that Iconic was continuing to use the same product images of the Old Comet to promote sales of the New Comet after January 1, 2022.[3] [Doc. No. 103, Zukowski Trial Testimony, at 97–104, demonstrating Iconic online advertising posts.] Further, the trade dress appearance of the New Comet compared to the Old Comet was virtually indistinguishable, at least in photographic images. This was demonstrated at trial when the creator of the Iconic products, Mr. Olaleye, who previously testified that he could distinguish the two versions from each other, [Doc. No. 100, Olaleye Trial Testimony at 59], incorrectly identified an image of the Old Comet as the New Comet on the stand. [*Id.* at 64–65.]

To prove an unfair business practice under Cal. Bus. & Prof. Code § 17200, Iconic was required to prove by a preponderance of the evidence that Kaotica engaged in a business practice that was immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. In determining whether the accused practice was unfair, the court must weigh the utility of the conduct against the gravity of the harm to the alleged victim. *Searle v. Wyndham Int't, Inc.*, 102 Cal. App. 4th 1327, 1334 (2002).

Iconic was obligated by the Stipulated Judgment entered in the first litigation to stop using the images of the Old Comet to promote sales of its products after January 1, 2022. Iconic also agreed that the Old Comet design infringed Kaotica's valid trade dress rights and it was obligated to discontinue infringing sales. A claim for unfair competition does not permit the court to review the fairness of the obligations and admissions Iconic entered as a result of its 2021 agreement with Kaotica. *Id.*

---

[3] These same allegations of false claims of trade dress infringement and violations of the Stipulated Judgment formed the basis of Iconic's tort claim for Intentional Interference with Prospective Economic Advantage which the jury rejected. [Doc. No. 113.]

The evidence at trial established that the actions Kaotica undertook in January of 2022 were within the scope of its rights under the Stipulated Judgment and terms of the injunction. Further, asserting that the redesign of the Iconic's product, the New Comet, still infringed Kaotica's trade dress was not made in bad faith as the redesigned product's trade dress aspects were virtually indistinguishable from the previously enjoined product. This finding is further supported by the jury's verdict that the New Comet infringed Kaotica's trade dress. [Doc. No. 113.]

Iconic has not proven its claim for unfair competition against Kaotica and the Court finds for Kaotica on that claim.

### 2. Kaotica's Claim for Disgorgement of Profits

The jury having found that Iconic's sales of the New Comet willfully infringed Kaotica's trade dress rights in Kaotica's Eyeball product, also made an award of $411,758 to Kaotica of Iconic's profits. This award was for advisory purposes only, as disgorgement of profits under the Lanham Act is subject to principles of equity and for the Court to determine. 15 U.S.C. § 1117(a).

In awarding disgorgement of profits, courts consider equitable factors which may include: (1) defendant's mental state, such as whether the defendant had the intention to confuse or deceive; (2) whether sales have been diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting the plaintiff's rights; (5) the public interest in making the misconduct unprofitable; and (6) whether it is a case of palming off. *Yuga Labs, Inc. v. Ripps*, No. CV 22-4355-JFW(JEMX), 2023 WL 7089922, at *10 (C.D. Cal. Oct. 25, 2023).

Equitable considerations favor an award of Iconic's profits to Kaotica. Iconic entered a judgment in 2021 acknowledging that Kaotica's trade dress rights were valid and infringed by its Old Comet design. Iconic further agreed that its infringing sales were causing irreparable harm to Kaotica. Iconic committed to stop selling the Old Comet and cease using the infringing design in its advertising no later than January 1, 2022. This did not happen.

After January 1, 2022, Iconic continued to use images of the Old Comet to attract business to its website to sell the New Comet. Kaotica did not delay in asserting its rights for the breach of the Stipulated Judgment and to enforce its rights against the New Comet. Although Kaotica did not present evidence that consumers purchased the New Comet believing it to be a Kaotica product, the circumstances of this case support a conclusion that Iconic continued to use infringing trade dress through the posting of old images to attract potential customers and trade on Kaotica's goodwill. Further, the jury found the design of the New Comet infringed Kaotica's trade dress and that this continued infringement was willful. *See id*. at 11 (citing *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 218 (2020)) (a finding of willfulness is an important consideration in determining whether an award of profits is appropriate).

The evidence supports a finding that Iconic diverted consumers to its website to sell its product in part using product images that infringed Kaotica's trade dress. Iconic continued to use Kaotica's trade dress after committing to cease such use as of January 1, 2022 and did so willfully. Iconic did not adhere to the Stipulated Judgment and disregarded its obligations under that judgment; as such, the Court finds disgorgement of Iconic's profits for its continued infringement an appropriate remedy. *See Playboy Enters., Inc. v. Baccarat Clothing Co., Inc*, 692 F.2d 1272, 1274 (9th Cir. 1982) (violations of the Lanham Act should be unprofitable for the infringer and disgorgement of profits is at times necessary to deter an infringer's deliberate and willful misconduct).

For an award of Iconic's profits, Kaotica's burden at trial was to establish Iconic's revenues from the sale of the infringing New Comet. 15 U.S.C. ¶ 1117(a); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1076 (9th Cir 2015). Kaotica presented evidence at trial of Iconic's revenues through Mr. Jack Roberts. Mr. Roberts provided expert economic testimony analyzing the revenues Iconic earned from sales of the New Comet. [Doc. No. 115, Trial Testimony of Roberts, at 87–93, 97–98.] Based on the documentation provided from Iconic in discovery, Mr. Roberts testified that from January 1, 2022 through April 30, 2023, Iconic generated $339,279 from sales of the New Comet.

[*Id.* at 87–90.] Mr. Roberts further testified that he did not receive requested additional information updating Iconic's revenues from May 2023 to the trial in June 2024. [*Id.* at 90–91.] He therefore estimated revenues for that period based on the monthly gross revenues reported for January 2022 through April 2023, and estimated additional revenue through trial for sales of the New Comet at $254,459, for a total of $593,738. [*Id.* at 91.]

Mr. Roberts acknowledged that costs should be deducted from the gross revenue. Establishing the expenses that should be deducted from the gross revenue to arrive at the infringer's net profits is the burden of the infringer. 15 U.S.C. § 1117(a); *Fifty-Six Hope Rd.*, 778 F.3d at 1076. The testimony established that Iconic did not produce in discovery sufficient documentation to demonstrate its deductible expenses. [Doc. No. 115 at 92–93.] Although not Kaotica's burden, Mr. Roberts made some general assumptions regarding costs attributable to the production based on cost information presented at trial and concluded that Iconic's net revenue for the New Comet product from January 2022 to June 2024 was $411,758, approximately a 70% profit margin. [*Id.* at 98.] The jury awarded this amount in its advisory verdict. [Doc. No. 113.]

Iconic argues that the Court should not accept this evidence and that an award of $411,758 is excessive and many times Iconic's "real-world profits, based on its typical profit margin, units sold and sales revenue." [Doc. No 123 at 4; Doc. No. 135 at 3.] Iconic's motion references trial testimony as to its "real-world profits" being usually 60% or so, but without specific citation to the record.[4] Iconic asks the Court to assess a more realistic number representing Iconic's "small, real-world profits," such that the disgorgement does not amount to a penalty for its infringement. 15 U.S.C. § 1117(a) (recovery of an infringer's profits shall be compensatory and not a penalty).

---

[4] The Court searched the trial transcripts and located Mr. Olaleye's testimony representing that Iconic Mars' profit margin was 60%. [Doc. No. 100 at 72.] This was offered at trial without corroboration in the form of documentation or any accounting analysis.

8

22-CV-0092-CAB-DEB

The Court accepts Kaotica's calculations of Iconic's gross revenues for the relevant time period at an estimated $593,738. While Iconic challenged Mr. Roberts' calculations on cross-examination, it offered no credible evidence to contradict his opinion. Iconic came up quite short in the view of the jury in establishing its expenses to offset this gross revenue number, resulting in the jury adopting Kaotica's overall disgorgement claim of $411,758.

Iconic had the burden to demonstrate its deductible costs and generally failed to do so with particularity. As the infringer, Iconic should not benefit from its failure to provide documentation in this litigation to support assertions for which it has the burden of proof. Nevertheless, the Court finds that Mr. Roberts' assessment of a profit margin of approximately 70% based on the limited data he received likely overestimates Iconic's actual net profits. Applying the 60% margin testified to by Mr. Olaleye to the revenues calculated by Kaotica, the Court finds an equitable award to Kaotica of Iconic's profits for the infringing sales of the New Comet to be $356,243.

Finding that Iconic willfully continued its infringement of Kaotica's trade dress, the Court orders disgorgement of Iconic's profits for sale of the New Comet in the amount of $356,243.[5]

### 3. Enhancement of Damages

In assessing damages under the Lanham Act, the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. 15 U.S.§ 1117(a). Kaotica made a claim for actual damages based on price erosion—it had to lower the price of its Eyeball product to compete with Iconic's infringing New Comet product.

---

[5] Iconic argued misleadingly that the disgorgement of profits for its willful infringement somehow amounted to a "double recovery" for Kaotica and such an award is prohibited by the Lanham Act. [Doc. No. 132 at 4.] Iconic however also acknowledged that Kaotica did not make a claim for lost sales, but rather price erosion on products it sold—a different theory of damages. Iconic's reference to a prohibited double recovery is another example of misapplying the law.

  Mr. Roberts provided testimony that based on Kaotica's annual pricing history, the net selling price of the Eyeball product had consistently averaged $198 a unit. Kaotica decreased the price to respond to competition from the New Comet product to $177 a unit in 2022, and $166 a unit in 2023. [Doc. No. 115, Trial Testimony of Roberts, at 78–85.] Mr. Roberts calculated that Kaotica lost $349,828 because it had to lower its prices after Iconic's New Comet came onto the market. Although Iconic challenged the assumption that Kaotica dropped its prices due solely to competition from the New Comet, it did not provide any alternative to Mr. Roberts' price erosion computation.

  The jury awarded Kaotica $275,000 for price erosion damages. [Doc. No. 113.] Although the jury may not have been entirely convinced that Kaotica dropped its prices solely to respond to competition from Iconic, and therefore awarded less than the amount Kaotica claimed, the Court finds the evidence presented by Kaotica was sufficient to prove by a preponderance of the evidence that its actual loss due to competition with the infringing product was greater than the jury's award. To fully compensate Kaotica for the damages its incurred due to infringement of its trade dress, pursuant to 15 U.S.C. § 1117(a), the Court enhances the jury's actual damage award to $350,000, supported by Mr. Roberts' analysis.

  Kaotica argues that an award trebling the jury's verdict to an amount of $825,000 is needed to fully compensate Kaotica for its damages. Kaotica argues (1) that it may have increased its price over time but for Iconic's competition and (2) that it incurred other advertising expenses and loss of goodwill due to the infringement not accounted for in the price erosion calculations. Kaotica further represents that Iconic, despite the jury's verdict that its New Comet product infringes Kaotica's trade dress, continues to sell the New Comet and Kaotica therefore continues to accrue price erosion damages to compete with this ongoing infringement. Some of these claims are speculative, others are not sufficiently quantifiable for the Court to include in the enhancement as compensation.

  The Court enhances the damages award to Kaotica from $275,000 to $350,000.

### 4. Attorneys' Fees and Costs

#### a. Award Against Iconic

The Lanham Act authorizes discretionary attorney fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a). Kaotica is the prevailing party in this litigation. A party may be considered prevailing for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Kaotica prevailed on its claims of breach of the Stipulated Judgment and trade dress infringement, the predominant issues in the case.

A court determines if a case is exceptional by considering the totality of the circumstances and evaluating whether the case is one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and facts of the case) or the unreasonable manner in which the case was litigated based on a preponderance of the evidence. *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223 (9th Cir. 2023) (quoting *SunEarth Inc. v. Sun Earth Solar Power Co., Ltd.* 839 F.3d 1179, 1180 (9th Cir. 2016)).

In considering the totality of the circumstances the court may consider "frivolousness, motivation, objective unreasonableness (both in factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Jason Scott*, 68 F.4th at 1223 n.13 (internal citations omitted). Willful infringement alone can satisfy the exceptional case standard. *Id.*

The jury found the infringement willful, and the Court agrees. In this case, the willfulness determination is exacerbated by the fact that Iconic admitted in a Stipulated Judgment that its product design infringed valid trade dress, admitted the infringement caused irreparable harm to Kaotica, and Iconic committed to ceasing that infringement.

The Stipulated Judgment in the first litigation attached photographs of the Eyeball product identifying the claimed trade dress. "Photographs showing the Kaotica Trade Dress are attached hereto as Exhibit 1." [Case No. 21-cv-433, Doc. No. 43 at 7–15.] All

of the photographs in the exhibit depict only the external aspect of the Kaotica product – a spherical black body with a flat, circular pop filter of a contrasting color on one side. The internal cavity is neither shown nor claimed as part of the agreed upon trade dress.

Despite entering a judgment setting forth this trade dress description, in this litigation Iconic repeatedly tried to recraft the scope of admitted trade dress to incorporate other aspects of its accused product. Iconic asserted that because the New Comet used denser foam and has a different internal configuration than the Old Comet, it was a different product that did not infringe Kaotica's trade dress. [Doc. No. 102 at 28–31.] Although Mr. Olaleye acknowledged these alterations did not change the aesthetic look of Iconic's product, [*id.*], Iconic repeatedly asserted, based on these non-trade dress alterations, that it was not restrained by the Stipulated Judgment from challenging whether the Iconic New Comet infringed and whether Kaotica's product design was functional and not valid trade dress. [Doc. No. 96 at 5–6.]

Iconic initiated this case alleging that its new design did not infringe Kaotica's trade dress but did so by ignoring what it stipulated to and attempted to redefine what Iconic agreed constituted Kaotica's trade dress. This tactic was objectively unreasonable and without legal justification—the accused infringer cannot redefine the scope to the asserted trade dress to avoid an injunction and infringement, especially after the infringer agreed to the scope and validity of Kaotica's trade dress *and* agreed it infringed that trade dress. *See Sazerac Co., Inc. v. Fetzer Vineyards, Inc*. 251 F. Supp. 3d 1288, 1301 (N.D. Cal. 2017), a*ff'd*, 786 F. App'x 662 (9th Cir. 2019) (defendant cannot insert unclaimed elements into the asserted trade dress as claimed by the holder).

The Stipulated Judgment provided that Iconic could challenge Kaotica's trade dress if asserted against a product other than the Old Comet, if the product trade dress was more than colorably different than the Old Comet. [Doc. No. 1–2 at 4 ¶ 10.] Yet the trade dress aspect of the product configuration between the Old Comet and the New Comet was so similar that even the creator of the product could not tell them apart in a photograph.

The Court finds that Iconic's litigation position was frivolous, and the case meets the exceptional case standard. Given the willfulness of Iconic's conduct and the unreasonableness of its arguments to support its continued infringing conduct, Kaotica's motion for reasonable attorneys' fees and costs is GRANTED.

### b. Award Against Counsel

Kaotica further requests that the Court sanction Iconic's counsel, Mr. Stephen Lobbin, under its inherent power and 28 U.S.C. § 1927 and order him responsible for the awarded fees and costs jointly and severally with Iconic.

The district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct. *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

> For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees.

*Id.* (internal citations omitted).

Sanctions against counsel are justified when an attorney acts in bad faith or intends to mislead the court. *Id*. at 993; *see Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 664, 648 (9th Cir. 1997) (a finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument). An attorney's reckless misstatement of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case to gain tactical advantage in another case, is sanctionable under a court's inherent power. *Fink*, 239 F.3d at 994.

Any attorney who multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct. 28 U.S.C. § 1927. "A prerequisite to the imposition of Section 1927 sanctions is that the attorney's conduct be in

bad faith." *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1185 (9th Cir. 1986). "Bad faith may be inferred from a totally baseless course of conduct." *Kimble v. ADT Sec. Servs.*, No. 3:16-CV-02519-GPC-BLM, 2018 WL 1898556, at *5 (S.D. Cal. April 20, 2018).

Kaotica's motion, [Doc. No. 119], presents a compelling summary of the history of this litigation and the unreasonable and vexatious conduct of Mr. Lobbin as lead counsel for Iconic to justify a sanctions award. At the hearing on these motions, the Court enumerated many of the positions and actions taken by counsel that support its finding of bad faith. [Doc. No. 144 at 21–24.]

The most egregious conduct that permeated this litigation was Mr. Lobbin's obstinate refusal to acknowledge the scope of Kaotica's trade dress claim to which his client had previously stipulated in a judgment. He repeatedly offered improper argument and testimony in an attempt to redefine Kaotica's rights to justify the ongoing infringement. He made unfounded arguments that the exhibits in the Stipulated Judgment in the first litigation had been somehow manipulated by Kaotica. Mr. Lobbin willfully advanced these frivolous and baseless positions from the filing of this lawsuit through closing even after the Court admonished him (multiple times) not to do so.

Mr. Lobbin repeatedly argued that Iconic did not agree to the terms of the 2021 Stipulated Judgment that he counseled his client to enter, particularly regarding the trade dress concessions. He essentially treated the previously entered judgment as if Iconic signed it under duress or with its fingers crossed—such that it was not binding or enforceable. He defied the Court's orders and directions during trial, made factually incorrect statements to the jury, and recklessly and repeatedly attempted to introduce irrelevant evidence to mislead the jury and confuse the issues.

Mr. Lobbin made unfounded assertions regarding discovery and impugned the integrity of opposing counsel without any justification. He never offered any support for his positions despite being given opportunities to do so. It became apparent during pretrial motion practice and at trial that Iconic was woefully deficient in meeting its discovery

obligations. Nevertheless, Iconic needlessly and unmeritoriously moved to challenge Kaotica's damages expert. On the morning of closing arguments, Mr. Lobbin made a frivolous objection to a jury instruction that he himself had offered and had previously confirmed with the Court.

The Court finds it appropriate to sanction Mr. Lobbin pursuant to its inherent authority and under 28 U.S.C. § 1927 for his bad faith tactics and conduct in the litigation of this case to (1) compensate Kaotica for the unnecessary expenses it incurred and (2) as a deterrent to his future conduct. Kaotica's motion for sanctions against Mr. Lobbin is GRANTED and he will be personally responsible, jointly and severally with Iconic, for the fees and costs awarded to Kaotica.[6]

### 5. Permanent Injunction

The Lanham Act "vests district courts with the power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable to prevent the violation of any right." 15 U.S.C. § 1116(a). The decision of whether to grant or deny permanent injunctive relief is an act of equitable discretion by the district court. *Ebay Inc. v. Mercexchange LLC*, 547 U.S. 388, 391 (2006).

A party seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A party must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Id.* Iconic has not argued that Kaotica cannot meet these requirements.

---

[6] The Court recognizes that ability to pay is a factor in the award of sanctions pursuant to 28 U.S.C. § 1927. *Haynes v. City & Cnty. of San Francisco,* 688 F.3d 984, 987 (9th Cir 2012). In imposing sanctions "it lies with within the district court's discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay." *Id.* The district court, should it decide to reduce an amount on account of a sanctioned attorney's inability to pay, is not required to reduce the amount to that which the attorney is capable of satisfying. *Id.* at 988.

A party seeking a permanent injunction is entitled to a rebuttable presumption of irreparable harm upon a finding of a violation of 15 U.S.C. § 1125. 15 U.S.C. § 1116. Iconic has not rebutted this presumption and to the contrary admitted in the Stipulated Judgment that its trade dress infringement was causing Kaotica irreparable harm.

Although monetary damages have been awarded to Kaotica, they have not been adequately compensated for the loss of goodwill or for the continued infringing activity that Iconic engaged in after the initial injunction was entered.

The balance of hardships weighs in favor of Kaotica. A permanent injunction would not bar Iconic from competing in this market but would necessitate that Iconic redesign its product to cease infringing Kaotica's trade dress. At trial the parties highlighted numerous other products in this market with non-infringing design alternatives. A permanent injunction would only require that Iconic comply with the law (and the judgment to which it previously entered) and abandon its use of Kaotica's trade dress in its product design and advertising.

Finally, the public interest is served by upholding Kaotica's rights under the Lanham Act. Consumers have an interest in accurate information about the products they are buying. *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc*. 559 F.3d 985, 993 n.5 (9th Cir. 2009) (the public has in interest avoiding confusion between companies' products).

Kaotica's motion for a permanent injunction is GRANTED. Kaotica will submit a proposed permanent injunction order that prohibits the use of Kaotica's trade dress by Iconic in the sale, offer for sale, manufacture, or distribution of the Old and New Comet products, including prohibiting the use of their images in advertising or promotion of any Iconic products, and the immediate destruction of all infringing products in Iconic's possession or control. Iconic will file a report with the Court within 30 days of the issuance of the injunction certifying the destruction of the infringing products and setting forth the steps taken to comply with the removal of Old and New Comet images from any advertising or web pages.

### E. Conclusion

Having considered the evidence at trial, the submissions of the parties, and the record in this case, in accordance with the determinations set forth above, the Court finds as follows:

1) Iconic's motion for a finding of unfair competition against Kaotica is DENIED.

2) Kaotica's motion for disgorgement of Iconic's profits is GRANTED IN PART to an amount of $356,243.

3) Kaotica's motion to enhance the damage award of $270,000 is GRANTED IN PART to an award of $350,000.

4) Kaotica's motion for attorneys' fees and expenses against Iconic is GRANTED.

5) Kaotica's motion to find Iconic's lead counsel Mr. Stephen Lobbin responsible for the awarded fees and costs jointly and severally with Iconic, pursuant to the Court's inherent authority to sanction and 28 U.S.C. § 1927 is GRANTED.

6) The parties will contact the Magistrate Judge within 3 court days to set a schedule for limited discovery on the financial resources of Iconic and Mr. Lobbin to satisfy the sanctions portion of the award and a briefing schedule for the filing of Kaotica's application for attorneys fees and expenses.

6) Kaotica's motion for a permanent injunction is GRANTED.  Kaotica will submit a proposed injunction in accordance with the scope set forth in this order no later than 10 days after entry of this order.

It is **SO ORDERED**.

Dated:  February 5, 2025

_____
Hon. Cathy Ann Bencivengo
United States District Judge