1  KILPATRICK TOWNSEND & STOCKTON LLP
   X. Diego Wu Min (State Bar No. 317488)
2  dwu@ktslaw.com
   12255 El Camino Real, Suite 250
3  San Diego, CA 92130
   Telephone:(858) 350-6154
4  Facsimile: (858) 350-6111

5  Dario A. Machleidt (Admitted *Pro Hac Vice*)
   dmachleidt@ktslaw.com
6  Kathleen R. Geyer (Admitted *Pro Hac Vice*)
   kgeyer@ktslaw.com
7  1420 Fifth Avenue
   Seattle, WA 98101
8  Telephone: (206) 224-2857
   Facsimile: (206) 374-2199
9
   Kristin M. Adams (Admitted *Pro Hac Vice*)
10 kmadams@ktslaw.com
   1100 Peachtree Street NE, Suite 2800
11 Atlanta, GA 30309
   Telephone: (404) 815-6138
12

13 Attorneys for Defendant
   KAOTICA CORPORATION
14

15              UNITED STATES DISTRICT COURT

16         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

17
   ICONIC MARS CORPORATION, a          Case No. 3:22-cv-00092-CAB-DEB
18 California corporation
                                       **MEMORANDUM OF POINTS AND**
19        Plaintiff,                    **AUTHORITIES IN SUPPORT OF**
                                        **DEFENDANT KAOTICA**
20        v.                            **CORPORATION'S MOTION FOR**
                                        **REASONABLE ATTORNEYS' FEES**
21 KAOTICA CORPORATION, a
   Canadian corporation                Complaint Filed: Jan. 23, 2022
22
          Defendant.                   Hon. Judge Cathy Ann Bencivengo
23
                                       PER CHAMBER RULES, NO ORAL
24                                      ARGUMENT UNLESS SEPARATELY
                                        ORDERED BY THE COURT
25

26

27

28

   MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF KAOTICA'S MOTION FOR
   REASONABLE ATTORNEYS' FEES
   CASE NO. 3:22-CV-00092-CAB-DEB

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................ 1

II.    LEGAL STANDARD ................................................................ 1

III.   ARGUMENT ............................................................................ 3

     A.    Kaotica's Rates Are Reasonable ...................................... 3

     B.    Kaotica Spent a Reasonable Number of Hours on this
          Case .................................................................................. 6

     C.    Kaotica's Reasonable Fees Associated with Sanctions ................. 10

     D.    Kaotica's Reasonable Fees Already Account for the
          *Kerr* Factors .................................................................. 13

     E.    Any Supposed Inability to Pay Should Not Affect the
          Amount of the Fee Award............................................... 14

IV.   CONCLUSION ......................................................................... 16

1

<h1 style="text-align:center">TABLE OF AUTHORITIES</h1>

2

**Page(s)**

3

**Cases**

4

5 *AK Futures LLC v. Smoke Tokes, LLC*,
No. 8:21-cv-1061, 2022 WL 3574280 (C.D. Cal. Jan. 13, 2022) ....................... 5

6 *AMF Bowling Centers, Inc. v. Tanase*,
7 No. 3:23-CV-448, 2025 WL 1132327 (E.D. Va. Apr. 16, 2025) ....................... 7

8 *Belliveau v. Thomson Fin., Inc.*,
9 No. 2:05-CV-1175-GEB-DAD, 2007 WL 1660999 (E.D. Cal. June 6,
10 2007), *aff'd*, 313 F. App'x 49 (9th Cir. 2009) ..................................................... 11

11 *Cairns v. Franklin Mint Co.*,
115 F. Supp. 2d 1185 (C.D. Cal. 2000), *aff'd*, 292 F.3d 1139 (9th Cir.
12 2002) ....................................................................................................................... 10

13 *Chambers v. NASCO, Inc.*,
14 501 U.S. 32 (1991) .............................................................................................. 2, 12

15 *Clairol v. Save-Way Indus.*,
16 211 U.S.P.Q. 223 (S.D. Fla. 1980) .......................................................................... 6

17 *Clarke v. TNSG Health Co.*,
18 No. 2:21-CV-03463-HDV-RAO, 2024 WL 4103563 (C.D. Cal. Aug.
9, 2024) .................................................................................................................... 9

19 *Doad v. C.R. England, Inc.*,
20 667 F. Supp. 3d 1096 (D. Or. 2023) ..................................................................... 14

21 *Dunkin' Donuts v. Mercantile Ventures*,
22 32 U.S.P.Q.2d 1460 (W.D. Tex. 1994) .................................................................. 6

23 *Emerson Radio Corp. v. Emerson Quiet Kool Co.*,
24 No. CV 20-1652-GBW, 2023 WL 6387897 (D. Del. Sept. 29, 2023) ............... 10

25 *Facebook, Inc. v. OnlineNIC Inc.*,
26 No. 19-CV-07071-SI, 2025 WL 510430 (N.D. Cal. Feb. 14, 2025) ............. 9, 13

27 *Flowrider Surf, Ltd. v. Pac. Surf Designs, Inc.*,
28 No. 15CV1879-BEN (BLM), 2017 WL 2212029 (S.D. Cal. May 18,
2017) ........................................................................................................................ 3

MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF KAOTICA'S MOTION FOR REASONABLE ATTORNEYS' FEES
CASE NO. 3:22-cv-00092-CAB-DEB

- ii -

*H.I.S.C., Inc. v. Franmar Int'l Importers, Ltd.*,
  No. 3:16-CV-0480-BEN-WVG, 2020 WL 6263649 (S.D. Cal. Oct.
  22, 2020), *aff'd sub nom*. No. 20-56240, 2021 WL 5632505 (9th Cir.
  Dec. 1, 2021) ........................................................................................... 2

*Haynes v. City & Cnty. of San Francisco*,
  688 F.3d 984 (9th Cir 2012) ................................................................. 14

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................................. 8

*Intel Corp. v. Terabyte Int'l, Inc.*,
  6 F.3d 614 (9th Cir. 1993) ...................................................................... 1

*ITEX Corp. v. Global Links Corp.*,
  No. 2:14-cv-00057-RCJ-NJK, 2015 WL 2152659 (D. Nevada May 7,
  2015) ...................................................................................................... 16

*Kelly v. Wengler*,
  822 F.3d 1085 (9th Cir. 2016) ................................................................. 3

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) .............................................................. 1, 13

*KGK Jewelry LLC v. ESDNetwork*,
  11-cv-9236, 2015 WL 899016 (S.D.N.Y. March 3, 2015) ................... 12

*LG Corp. v. Huang Xiaowen*,
  No. 16-CV-1162 JLS (NLS), 2017 WL 3877741 (S.D. Cal. Sept. 5,
  2017) .................................................................................................... 3, 4

*In re Maxwell Techs., Inc., Derivative Litig.*,
  No. 13-cv-966-BEN (RBB), 2015 WL 12791166 (S.D. Cal. July 13,
  2015) ........................................................................................................ 6

*McCully v. Stephenville Indep. Sch. Dist.*,
  No. 4:13-CV-702-A, 2013 WL 6768053 (N.D. Tex. Dec. 23, 2013) ............... 11

*Mereces-Benz Grp. AG v. A-Z Wheels LLC*,
  No. 16-CV-875 JLS (MDD), 2022 WL 7718800 (S.D. Cal. Oct. 13,
  2022) ........................................................................................................ 2

*Midwest Athletics & Sports All. LLC v. Ricoh USA, Inc.*,
No. 2:19-CV-00514-JDW, 2023 WL 2989950 (E.D. Pa. Apr. 18, 2023) ................................................................................. 12

*Montgomery v. Etreppid Techs., LLC*,
2010 WL 1416771 (D. Nev. April 5, 2010) ...................................... 15

*N.T.A.A. v. Nordstrom, Inc.*,
No. 2:21-CV-00398-DDP-(AGRx), 2024 WL 1723524 (C.D. Cal. Apr. 19, 2024) ................................................................................. 5

*Partners for Health & Home, L.P. v. Seung Wee Yang*,
671 F. App'x 475 (9th Cir. 2016) .................................................... 1

*Shales v. Gen. Chauffeurs, Sales Drivers & Helpers Loc. Union No. 330*,
557 F.3d 746 (7th Cir. 2009) ........................................................ 14

*Soler v. County of San Diego*,
No. 14-cv-2470-MMA (RBB), 2021 WL 2515236 (S.D. Cal. June 18, 2021) ............................................................................................. 4

*United Studios of Self Def., Inc. v. Rinehart*,
No. SA-CV-181048, 2020 WL 1230621 (C.D. Cal. Feb. 10, 2020) .................. 3

*VDPP, LLC v. Volkswagen Grp. of Am., Inc.*,
No. CV H-23-2961, 2024 WL 3856797 (S.D. Tex. Aug. 13, 2024) .................. 11

*In re W.A.R. LLP*,
No. 11-00044, 2012 WL 4482668 (Bankr. D.C. Sept. 26, 2012) ............... 14, 16

*White v. City of Richmond*,
713 F.2d 458 (9th Cir. 1983) ........................................................ 13

*World Triathlon Corp. v. Dunbar*,
539 F. Supp. 2d 1270 (D. Haw. 2008), *aff'd in part, appeal dismissed in part sub nom.* 320 F. App'x 778 (9th Cir. 2009) ............................... 9

**Statutes**

15 U.S.C. § 1117 ................................................................. 1, 10

28 U.S.C. § 1927 ................................................................... 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Rules & Regulations**

Federal Rule of Civil Procedure 11 ................................................................... 2

## __Abbreviations and Definitions__

| | |
|---|---|
| Kaotica | Defendant Kaotica Corporation |
| Iconic | Plaintiff Iconic Mars Corporation |
| Parties | Collectively, Kaotica and Iconic |
| Olaleye | Olusey Olaleye |
| Lobbin | Stephen M. Lobbin |
| Stipulated Judgment | Dkt. 1-2 |
| Kaotica Trade Dress or Trade Dress | *See* Dkt. 111 at 17 (Instruction No. 16) |
| Old Comet or Version 1 | *See* Dkt. 96 at 2 |
| New Comet or Version 2 | *See* Dkt. 96 at 2 |

MEMO. OF POINTS AND AUTHORITIES IN SUPPORT OF KAOTICA'S MOTION FOR
REASONABLE ATTORNEYS' FEES
CASE NO. 3:22-CV-00092-CAB-DEB

- vi -

## I.    INTRODUCTION

This Court found that Lobbin and Iconic owe Kaotica its reasonable fees and expenses for being forced to defend against a meritless case. Despite Kaotica's three-lawyer legal team entering the fray mere days before the deadline to answer Iconic's complaint, once it became clear that neither Lobbin nor Iconic had any interest in resolving this dispute on reasonable terms (or even acknowledging the weaknesses of their case), Kaotica's team at Kilpatrick Townsend litigated efficiently and strategically to achieve a superb result. In the end, at trial and subsequent briefing, the Court and jury: rejected every single one of Iconic's claims; found in favor of Kaotica on its breach-of-contract and trade-dress infringement counterclaims; and ultimately awarded Kaotica—*the defendant*—over $700,000 in monetary relief.

Kaotica replaced its former lawyers with an award-winning team from Kilpatrick Townsend to achieve this outcome. But this victory came at a cost; while Kaotica incurred considerably more than the following amount, to limit disputes, it requests the Court find Lobbin and Iconic jointly and severally liable for $1,626,149.48 in reasonable fees and expenses.

## II.    LEGAL STANDARD

Attorneys' fees "awards are calculated using the lodestar method, by 'multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate.'" *Partners for Health & Home, L.P. v. Seung Wee Yang*, 671 F. App'x 475, 476 (9th Cir. 2016) (reviewing attorneys' fees award under 15 U.S.C. § 1117(a)) (quoting *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993)). "Next, in appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation." *Intel*, 6 F.3d at 622. Those factors include:

1    (1) the time and labor required, (2) the novelty and difficulty of the
2    questions involved, (3) the skill requisite to perform the legal service
     properly, (4) the preclusion of other employment by the attorney due to
3    acceptance of the case, (5) the customary fee, (6) whether the fee is fixed
     or contingent, (7) time limitations imposed by the client or the
4    circumstances, (8) the amount involved and the results obtained, (9) the
     experience, reputation, and ability of the attorneys, (10) the
5    'undesirability' of the case, (11) the nature and length of the professional
     relationship with the client, and (12) awards in similar cases.

6    *H.I.S.C., Inc. v. Franmar Int'l Importers, Ltd.*, No. 3:16-CV-0480-BEN-WVG, 2020

7    WL 6263649, at *4 (S.D. Cal. Oct. 22, 2020), aff'd sub nom. No. 20-56240, 2021

8    WL 5632505 (9th Cir. Dec. 1, 2021) (quoting *Kerr* 526 F.2d at 69–70).

9        "[T]he Ninth Circuit has also instructed that, '[b]y and large, the court should

10   defer to the winning lawyer's professional judgment as to how much time he was

11   required to spend on the case; after all, he won, and might not have, had he been

12   more of a slacker[.]'" *Mereces-Benz Grp. AG v. A-Z Wheels LLC*, No. 16-CV-875

13   JLS (MDD), 2022 WL 7718800, at *3 (S.D. Cal. Oct. 13, 2022) (quoting *Moreno v.*

14   *City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)). "Ultimately, the

15   [opposing party] bears the burden of providing specific evidence to challenge the

16   accuracy and reasonableness of the hours charged." *Id.* (quotation omitted).

17       The Supreme Court has made clear that a "court may assess attorney's fees as

18   a sanction for the 'willful disobedience of a court order.' Thus, a court's discretion

19   to determine '[t]he degree of punishment for contempt' *permits the court to impose*

20   *as part of the fine attorney's fees representing the entire cost of the litigation*."

21   *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991)[1] (quoting *Toledo Scale Co. v.*

22   ───────────────
23   [1] Lobbin has repeatedly brought up the fact that Kaotica did not seek Rule 11
     sanctions against him or his client. This fact, however, is irrelevant. *See Chambers*,
24   501 U.S. at 50 ("But neither is a federal court forbidden to sanction bad-faith
     conduct by means of the inherent power simply because that conduct could also be
25   sanctioned under the statute or the Rules."); *id.* ("It is true that the District Court
     could have employed Rule 11 to sanction Chambers for filing 'false and frivolous
26   pleadings,' and that some of the other conduct might have been reached through
27   other Rules. Much of the bad-faith conduct by Chambers, however, was beyond the
     reach of the Rules; his entire course of conduct throughout the lawsuit evidenced
28   bad faith and an attempt to perpetrate a fraud on the court, and the conduct

*Computing Scale Co.,* 261 U.S. 399, 428)) (emphasis added); *see also United
Studios of Self Def., Inc. v. Rinehart*, No. SA-CV-181048, 2020 WL 1230621, at *4
(C.D. Cal. Feb. 10, 2020) ("[T]his Court has the authority to award fees for all
expenses caused by the sanctionable conduct. Indeed, the Supreme Court has
affirmed a district court's authority to sanction a party for the entire amount of
litigation costs and fees when sanctionable conduct occurred throughout the
litigation." (citing *Chambers*, 501 U.S. at 40, 51)).

## III.   ARGUMENT

### A.   Kaotica's Rates Are Reasonable

"A reasonable hourly rate is ordinarily the 'prevailing market rate [ ] in the
relevant community.'" *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). "A
review of recent case law concerning reasonable fee awards in intellectual
property/patent cases in the Southern District of California[] reveals that the hourly
rates charged by Plaintiffs' attorneys and paralegal exceed the prevalent market
rates in this district." *Flowrider Surf, Ltd. v. Pac. Surf Designs, Inc.*, No.
15CV1879-BEN (BLM), 2017 WL 2212029, at *3 (S.D. Cal. May 18, 2017).
Numerous factors confirm that the rates charged by Kilpatrick Townsend to Kaotica
for this intellectual property case are reasonable.

First, Kilpatrick Townsend "is an international intellectual properly law firm
with numerous accolades for its intellectual property work." Machleidt Decl., ¶¶ 27–
27 (discussing firm awards); *see also LG Corp. v. Huang Xiaowen*, No. 16-CV-1162
JLS (NLS), 2017 WL 3877741, at *2 (S.D. Cal. Sept. 5, 2017) (considering the
same for peer firm Finnegan).

In addition to the firm's accolades, the individual attorneys on this case
received numerous personal awards and recognition for their work in intellectual

---

sanctionable under the Rules was intertwined within conduct that only the inherent
power could address" (citation omitted)).

property, including Mr. Machleidt's award by *Managing Intellectual Property* as Washington State's 2025 "Litigator of the Year." Machleidt Decl., ¶¶ 3–19 (discussing personal awards). Courts have also "recognize[d] that intellectual property work requires specialized knowledge." *LG Corp.*, 2017 WL 3877741, at *2.

Second, Kaotica obtained favorable results at every stage in this case, including summary judgement, denial of a *Daubert* challenge to its expert, pretrial conference and motions *in limine*, receiving a directed verdict during trial, and a total win on the issues submitted to the jury. *See, e.g.*, Dkt. 77; Feb. 28, 2024 Transcript of Motion Hearing; Dkt. 113; Dkt. 119-12 (May 23, 2024 Transcript of Motion Hearing); Dkt. 119-1 at 13–14. Kaotica secured permanent injunctive relief and a damages award of almost $750,000. Iconic did not prevail on a single one of its affirmative claims. *LG Corp.*, 2017 WL 3877741, at *2 (considering the fact that the prevailing party "obtained favorable results").

Third, Kilpatrick Townsend's rates are in line with the rates of its peer firms. This Court has looked to the AIPLA Report on the Economic Survey as a benchmark for reasonableness for attorneys' fees rates. *Id.* at *3 (collecting cases). Mr. Machleidt's rate ranged from $795 to $1125 throughout this lawsuit. Machleidt Decl., ¶ 3. According to the AIPLA 2023 Report on the Economic Survey ("AIPLA 2023 Survey"), the average hourly rate for an intellectual property partner in a firm with more than 150 intellectial property lawyers and agents (i.e., like Kilpatrick Townsend) was $1,026 with the Third Quartile 75% being $1,313. Machleidt Decl., ¶ 9; Ex. 3 at I-34. Mr. Machleidt's rates were below average until 2025, and even then, his 2025 rate is still within the third quartile of his peer rates. Machleidt Decl., ¶ 31 (showing hourly rates per year); *see also LG Corp.*, 2017 WL 3877741, at *3 (finding rates for partners up to $895 reasonable *in 2017*); *see also See Soler v. County of San Diego*, No. 14-cv-2470-MMA (RBB), 2021 WL 2515236, at *5 (S.D. Cal. June 18, 2021) (explaining that, "[o]ver the course of the past several years,

1   courts in this District have awarded hourly rates for work performed in civil cases

2   by attorneys with significant experience anywhere in range of $550 per hour to more

3   than $1000 per hour" (collecting cases)).

4        The AIPLA 2023 Survey does not account for recent changes in legal

5   industry billing practices. For example, The American Lawyer published an article

6   summarizing recent trends in lawyer billing rates, with the data coming from

7   LexisNexis CounselLink's 2025 Trends Report. These sources show increases in

8   rates in the largest tier law firms, including average partner rates exceeding $1,000

9   per hour. Machleidt Decl., ¶ 10; Exs. 4 & 5. Therefore, Mr. Machleidt's rates are in

10  line with similar rates for peer law firms. *See also N.T.A.A. v. Nordstrom, Inc.*, No.

11  2:21-CV-00398-DDP-(AGRx), 2024 WL 1723524 at *4 (C.D. Cal. Apr. 19, 2024)

12  (approving rates of $848 to $1,346.70 for partners and senior counsel who

13  contributed to Nike's defense); *AK Futures LLC v. Smoke Tokes, LLC*, No. 8:21-cv-

14  1061, 2022 WL 3574280, at *2 (C.D. Cal. Jan. 13, 2022) (approving rate of

15  $1,137.50 for a partner as reasonable given his expertise in intellectual property).

16       Ms. Geyer and Ms. Adams were the associates who did the bulk of the work

17  on this case, and their rates ranged from $495 to $795 and $595 to $845,

18  respectively. Machleidt Decl., ¶ 31. Ms. Geyer's and Ms. Adams's billing rates are

19  in line with the rates from peer law firms. According to the AIPLA 2023 Survey, the

20  average hourly rate for an intellectual property partner-track attorney in a firm with

21  more than 150 lawyers and agents (i.e., like Kilpatrick Townsend) was $648 with

22  the Third Quartile 75% being $800. Machleidt Decl., ¶ 20; Ex. 3 at I-47. Further,

23  according to the AIPLA 2023 Survey, the average hourly rate for an intellectual

24  property partner-track attorney with 5 to 6 years of experience was $514 with the

25  Third Quartile 75% being $838. Machleidt Decl., ¶ 20; Ex. 3 at I-47. Ms. Geyer and

26  Ms. Adams's rates are commensurate with, and generally lower than, these

27  benchmarks.

28

Like Mr. Machleidt, the only years when the associate rates exceeded the Third Quartile 75% was 2025, which reflects the broader industry trend of increasing rates for largest tier law firms. Machleidt Decl., ¶ 10; Exs. 4 & 5. Moreover, Ms. Adams focuses her practice on trademark litigation, and such focused expertise supports her hourly rate in this trade dress case. *See Clairol v. Save-Way Indus.,* 211 U.S.P.Q. 223, 225 (S.D. Fla. 1980) ("Trademark litigation is a particularly difficult field of specialization and is recognized as meriting greater than average rate of pay."); *Dunkin' Donuts v. Mercantile Ventures*, 32 U.S.P.Q.2d 1460, 1463 (W.D. Tex. 1994) (same).

Finally, Kilpatrick Townsend's rates for paralegals and its trial technician are also reasonable and in line with rates from peer firms. Kilpatrick Townsend's rates for these individuals ranged from $225 through $475. Machleidt Decl., ¶¶ 21–23, 31. This district has found the lower end of that rate to be reasonable nearly a decade ago. *See, e.g.*, *In re Maxwell Techs., Inc., Derivative Litig.*, No. 13-cv-966-BEN (RBB), 2015 WL 12791166, at *5 (S.D. Cal. July 13, 2015) (awarding $225 paralegal rate to paralegals with "significant experience"). Mr. Bassett, Mr. Crumbley, and Ms. Gray each have over 20 years of experience as a paralegal and/or trial technician. Given their years of experience combined with the specialized skillset necessary for trial, their rates are reasonable.

### B.     Kaotica Spent a Reasonable Number of Hours on this Case

Kaotica submits with this motion detailed monthly billing statements from counsel and various charts summarizing those statements, including for specific time periods. Machleidt Decl, ¶ 33, Table 2; Ex. 6. These statements show the date, the billing attorney, a brief description of the work performed, the amount of time spent, and the amount billed. *Id.*

Kaotica has spent three years litigating this case since Kilpatrick Townsend was retained in May 2022. While straightforward at first blush, this case was actually a complicated one because it stemmed from prior litigation (including

1  contempt proceedings); had both parties asserting affirmative claims against each

2  other; and involved patent, trademark, and trade dress claims in addition to

3  numerous state law claims, with many of those state law claims having multiple,

4  distinct factual bases. The interrelated and complicated nature of the case was

5  evident in multiple hearings, particularly as Iconic continued to mislead the Court

6  about which facts underly each cause of action. *See, e.g.*, *AMF Bowling Centers,*

7  *Inc. v. Tanase*, No. 3:23-CV-448, 2025 WL 1132327, at *8 (E.D. Va. Apr. 16, 2025)

8  ("The Court must now consider whether Quinn Emanuel's out-of-town hourly rates

9  are reasonable .... Plaintiffs' counsel performed exceptionally well in what—

10  unnecessarily—became a complicated case.").

11      Kaotica has litigated this case in a reasonable manner. For example, as shown

12  in Table 1 of the Machleidt Declaration, work was appropriately allocated. For

13  example, Ms. Geyer and Ms. Adams did the bulk of the work necessary for the case

14  with Mr. Machleidt acting primarily as a supervisor and reviewer. Machleidt Decl.,

15  ¶ 31 (Table 1 showing that Mr. Machleidt billed less than 40% of the total billed by

16  Ms. Geyer and Ms. Adams). Similarly, more administrative tasks were not done by

17  attorneys but allocated to paralegals as appropriate. *Id.*

18      The allocation of Kaotica's fees for the various stages of the case is also

19  evidence of the reasonableness of the hours spent on the case. As shown in Table 2,

20  Kaotica spent less than $250,000 through the close of fact discovery, which

21  involved minimal motion practice and a limited number of depositions. Kaotica's

22  expenses increased for dispositive motion practice (approximately $250,000) where

23  it was forced to oppose Iconic's motion that sought summary resolution *of every*

24  *single issue in the case*, despite Iconic's nearly nonexistent development of its case

25  through discovery.

26      The majority of the expenses in this case were related to pretrial disclosures,

27  including preparing disclosures that should have been prepared by the plaintiff—

28  Iconic—as discussed further below (approximately $325,000); in preparation for

trial and trial itself (approximately $675,000); and in post-trial briefing to hold
Iconic and Lobbin accountable for their willful and bad-faith conduct
(approximately $650,000).[2] As discussed in detail in the next section, Iconic's and
Lobbin's litigation conduct in pretrial, trial, and post-trial caused Kaotica to incur
additional expenses to perform work that should have been performed by them.

Kaotica has also reduced its fees in numerous ways to further support the
reasonableness of its request and to make a "good faith effort to exclude from [its]
fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley
v. Eckerhart*, 461 U.S. 424, 434 (1983). For example, Kaotica has <u>not</u> sought fees
for over 250 hours of work performed by partners and associates who were not part
of the core litigation team but, rather, provided ad hoc assistance for various issues
(such as researching legal questions and assisting with preparation for trial).
Machleidt Decl., ¶¶ 31, 35. While this work was instrumental to the case, including
assisting with preparation of jury instructions and mid-trial briefing, Kaotica has not
sought these fees.

As another example, Mr. Machleidt, Ms. Geyer, and Ms. Adams all attended
various hearings leading up to trial given their unique contributions to various parts
of the case and given that all three attorneys would play a role in trial. Machleidt
Decl., ¶ 35. Nevertheless, Kaotica has voluntarily excluded Mr. Machleidt's time for
such hearings when Ms. Geyer and/or Ms. Adams also attended. *Id.*

Kaotica has also not sought fees for all time entries related to any of the
patent claims in this case, ensuring that Kaotica's fees are targeted to Lobbin's and
Iconic's sanctionable and willful conduct. *Id.* Moreover, while on paper the parties
litigated more than just Iconic's declaratory judgment action and Kaotica's
corresponding counterclaim, Kaotica's fees spent on the entire case relate to its

---

[2] The numbers provided in this discussion are the total fees, not the reduced fees that
Kaotica requests from the Court. Table 2 in the Machleidt Declaration shows the
reduced fees and expenses Kaotica is seeking for those same time periods.

successful Lanham Act counterclaim and are thus recoverable under the Lanham Act. *See, e.g.*, Dkt. 119-10, at 8:22-9-5 ("[THE COURT:] With regard to the 2.0, everything is pretty much going to flow from whether or not the jury would find that the Comet 2.0, whether or not it falls within the scope of the trade dress that Iconic stipulated to in the contract, that the Comet 1.0 is covered by the trade dress."); *see, e.g.*, *World Triathalon Corp. v. Dunbar*, 539 F. Supp. 2d 1270, 1282 (D. Haw. 2008), *aff'd in part, appeal dismissed in part sub nom. World Triathlon Corp. v. Hapai*, 320 F. App'x 778 (9th Cir. 2009) (awarding attorney fees for all claims, including interference, unfair competition, and declaratory relief, because the "claims are inseparable for the purposes of apportioning fees between the Lanham Act and non-Lanham Act claims … because the claims all arise out of the same facts and occurrences" as they do here).

Kaotica also notes that additional fee reductions were already included in the bills it received from Kilpatrick Townsend. Machleidt Decl, ¶¶ 36–29. For example, Mr. Machleidt did not bill Kaotica for his time attending and second chairing the deposition of Mr. Olaleye. *Id.*, ¶ 36. Nor did Mr. Machleidt bill for numerous conferences or discussions with Ms. Geyer or Ms. Adams, choosing, instead, to lessen the financial burden on his client as much as possible. *Id.*, ¶ 37.

Finally, Kaotica has taken an across-the-board 10% "reasonableness" reduction to account for block billing and time entries that contain potential redactions. *Id.*, ¶ 40.

The total amount of fees requested by Kaotica is also reasonable. To take a contentious competitor case with multiple cross-claims from pleadings through pretrial briefing, Kaotica is only seeking $1,626,149.48. Courts have granted attorneys' fees awards of over $2 million for complex cases that did *not* have a trial. *Facebook, Inc. v. OnlineNIC Inc.*, No. 19-CV-07071-SI, 2025 WL 510430, at *4 (N.D. Cal. Feb. 14, 2025) (awarding $2,185,869.14 in fees); *Clarke v. TNSG Health Co.*, No. 2:21-CV-03463-HDV-RAO, 2024 WL 4103563, at *3 (C.D. Cal. Aug. 9,

2024) ("[T]he Court awards Plaintiffs $5,299,205.88 in attorneys' fees and $38,336.78 in costs."). Here, of course, Kaotica incurred fees up to, through, and after trial.

Courts have awarded similarly high attorneys' fee awards in trademark infringement cases. *Cairns v. Franklin Mint Co.*, 115 F. Supp. 2d 1185, 1190 (C.D. Cal. 2000) (awarding $2,308,000 in attorneys' fees in trademark case spanning two years and decided on summary judgment), *aff'd,* 292 F.3d 1139 (9th Cir. 2002) (affirming award and noting that the "[t]he allegedly unprecedented size of the award" does not automatically make it unreasonable (quotation omitted)); *Emerson Radio Corp. v. Emerson Quiet Kool Co.*, No. CV 20-1652-GBW, 2023 WL 6387897, at *5 (D. Del. Sept. 29, 2023) (awarding plaintiffs $3,159,000 in attorneys' fees under 15 U.S.C. § 1117).

Here, while Kaotica incurred over $2,097,890.63 in total fees and expenses, through its voluntary reductions, it seeks the reduced amount of $1,626,149.48. Machleidt Decl., ¶¶ 39–40. This figure is well within the amount found reasonable in other cases. *See supra.*

## C.    Kaotica's Reasonable Fees Associated with Sanctions

To aid the Court in awarding fees, Kaotica provides a breakdown of its costs and fees for various stages of the litigation implementing the deductions discussed in the previous section. Machleidt Decl., ¶ 33, Table 2. Kaotica broke down its fees into various time periods, each of which represent a separate and independent time when Iconic and Lobbin should have walked away from this case. To avoid any doubt, Iconic's willful and Lobbin's sanctionable conduct infected each and every facet of this case.

As this Court recognized, Iconic's lawsuit was faulty from the beginning because it was premised on Lobbin's "obstinate refusal to acknowledge the scope of Kaotica's trade dress claim to which his client had previously stipulated in a judgement" signed by Lobbin himself. Dkt. 145 at 14 (recognizing that Lobbin

1    "essentially treated the previously entered judgment as if Iconic signed it under

2    duress or with its fingers crossed—such that it was not binding or enforceable").

3    This refusal began even prior to this lawsuit at the Contempt Hearing in the

4    prior case and was evident in Iconic's complaint in this lawsuit attempting to

5    redefine Kaotica's trade dress contrary to the Stipulated Judgement (Dkt. 1, ¶ 38

6    (defining the Kaotica Trade Dress to include "a large cylindrical shaped cavity with

7    a uniform diameter"), and refusal to admit the scope of the trade dress in its answer

8    to Kaotica's counterclaims (*compare* Dkt. 12, p. 17, ¶ 28, *with* Dkt. 19, ¶ 28

9    (denying the definition of the trade dress due to "lack [of] sufficient knowledge or

10    information)). Iconic's and Lobbin's assertions were willful, frivolous, and baseless

11    "from the filing of this lawsuit through the closing," as this Court recognized.

12    Dkt. 145 at 14.

13    Lobbin and Iconic were further put on notice that their allegations were

14    meritless and frivolous by July 14, 2022, when Kaotica sent the Sanctions Letter.

15    Dkt. 119-1 at 9–11; Dkt. 119-7. While the Court has discretion to award fees for the

16    entire litigation under its inherent power, it may also do so under 28 U.S.C. § 1927

17    if the case is exceptional, such as when bad-faith conducts is pervasive or egregious.

18    *VDPP, LLC v. Volkswagen Grp. of Am., Inc.*, No. CV H-23-2961, 2024 WL

19    3856797, at *2 (S.D. Tex. Aug. 13, 2024) ("VDPP's misconduct infected the entire

20    litigation. It is entirely fitting to require VDPP to pay all of Volkswagen's fees to

21    defeat a case that never should have been filed."); *Belliveau v. Thomson Fin., Inc.*,

22    No. 2:05-CV-1175-GEB-DAD, 2007 WL 1660999, at *3 (E.D. Cal. June 6, 2007)

23    (awarding attorneys' fees incurred after the plaintiffs' deposition through to

24    summary judgment because plaintiff's counsel "knew or should have known" after

25    the deposition that he was pursuing a claim "for which Plaintiff had no evidence"),

26    *aff'd,* 313 F. App'x 49 (9th Cir. 2009); *see also McCully v. Stephenville Indep. Sch.*

27    *Dist.,* No. 4:13-CV-702-A, 2013 WL 6768053, at *2 (N.D. Tex. Dec. 23, 2013)

28    (discussing sanctions awards against the plaintiff's counsel and noting that

"[t]hough § 1927 speaks of vexatious multiplication of litigation, the section can support an award of attorney's fees for an entire course of proceeding if the case never should have been brought in the first place"); *KGK Jewelry LLC v. ESDNetwork*, 11-cv-9236, 2015 WL 899016, at *3 (S.D.N.Y. March 3, 2015) ("Since plaintiff's counsel brought this entire proceeding in bad faith, as noted above, 'the temporal scope of [Experian's and Equifax's] fee application will not be limited to the briefing of its' motion for summary judgment but rather 'will include all work reasonably performed in' response to the meritless compliant.").[3]

By the end of fact discovery, there should have been no doubt in Iconic's and Lobbin's minds that its case was meritless. Third-party discovery demonstrated that what Iconic and Lobbin told this Court in the Contempt Hearing was false and that Iconic willfully continued to violate the Stipulated Judgment and use Kaotica's trade dress. Iconic should have also known all of its claims were meritless. For example, Iconic failed to serve any third party discovery demonstrating harm to those third parties required to show its claims. *See, e.g.*, Dkt. 111 at 12 (requiring Iconic to show that third parties "reasonably relied on Kaotica's representation" and "were harmed"). Iconic's and Lobbin's continued pursuit of its claims and defenses when it knew it had no evidence to rebut either was unreasonable and meritless. *See, e.g.*, *Midwest Athletics & Sports All. LLC v. Ricoh USA, Inc.*, No. 2:19-CV-00514-JDW, 2023 WL 2989950, at *5 (E.D. Pa. Apr. 18, 2023) (finding case exceptional and awarding costs incurred after the close of fact discovery because plaintiff's "continued pursuit of its claims after fact discovery closed … was also unreasonable because [plaintiff] lacked evidence for those claims"); *id.* at *6 ("Following the

---

[3] *See also Chambers*, 501 U.S. at 45 ("[A] court may assess attorney's fees as a sanction for the 'willful disobedience of a court order.' Thus, a court's discretion to determine '[t]he degree of punishment for contempt' *permits the court to impose as part of the fine attorney's fees representing the entire cost of the litigation*." (emphasis added)).

close of fact discovery, the weakness of [plaintiff's] claims and its unreasonable manner of litigating this case makes this case stand out from others.").

Further, other courts have expressly considered "that defendants' litigation conduct has caused plaintiffs to have to work harder than they otherwise might have. While it may appear at first blush that plaintiffs billed an excessive number of hours, a closer look shows that the billing is justified when considered in the broader context of this litigation and the complexity of facts at play." *Facebook, Inc. v. OnlineNIC Inc.*, No. 19-CV-07071-SI, 2025 WL 510430, at *3 (N.D. Cal. Feb. 14, 2025). That is precisely the case here at least with respect to work done leading up to and in trial. For example, Iconic's proposed jury instructions merely copied the instructions and comments from the Ninth Circuit *without modification*, in which form the instructions are not usable to the jury. Dkt. 89-4. That is, Iconic did not select between options within the instruction (*e.g.*, *id.* at 20) nor make any required case-specific descriptions or modifications (e.g., *id.* at 26), Instead, Kaotica was forced to prepare a full set of jury instructions targeted to the specific issues in this case. Dkt. 89-5. Iconic's repeated persistence in attempting to redefine Kaotica's trade dress through trial and lack of adherence to the Court's rulings further and repeatedly overcomplicated issues. Dkt 145 at 12.

### D.    Kaotica's Reasonable Fees Already Account for the *Kerr* Factors

The *Kerr* factors have already been factored into the determination of the Lodestar reasonable fees. Notably, Kaotica prevailed on every issue at trial and substantial issues before trial, ultimately obtaining a monetary judgement of over $700,000. This high degree of success militates against any downward adjustment to the fee award. *See, e.g., White v. City of Richmond*, 713 F.2d 458, 461 (9th Cir. 1983) (among factors for adjusting lodestar, "the 'degree of success' or 'results obtained' is the most critical"). Other factors, such as "whether the fee is fixed or contingent," "the preclusion of other employment by the attorney due to acceptance of the case," "time limitations imposed by the client or the circumstances," and "the

'undesirability' of the case" are not applicable here.

E.    **Any Supposed Inability to Pay Should Not Affect the Amount of the Fee Award**

Lobbin and Iconic have consistently acted in bad faith, willfully, unethically, or in a way that vexatiously multiplied these proceedings from the inception of this case. Dkt. 145 at 11–15. That Lobbin may not make as much money at in his career—or from this case—as he would prefer is not Kaotica's fault, nor should Lobbin's implication that he fails to maintain a successful practice allow him to shirk responsibility for his bad acts. *See Shales v. Gen. Chauffeurs, Sales Drivers & Helpers Loc. Union No. 330*, 557 F.3d 746, 750 (7th Cir. 2009) ("No court would say, in a medical-malpractice action, that a doctor whose low standards and poor skills caused a severe injury should be excused because he does not have very many patients. No more is a bad lawyer excused because he has few clients.").

In imposing sanctions "it lies with within the district court's discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay." *Haynes v. City & Cnty. of San Francisco*, 688 F.3d 984, 987 (9th Cir 2012). It is wholly "within the discretion of the district court to decide whether to reduce the amount *at all*," and a fee reduction is not necessary despite an alleged inability to pay. *Id.* at 988 (emphasis added). Likewise, a court should not temper its inherent authority to award attorneys' fees as a sanction when the underlying conduct is as egregious as it is here. *See, e.g.*, *Doad v. C.R. England, Inc.*, 667 F. Supp. 3d 1096, 1099–100 (D. Or. 2023) ("Given that the vexatious and bad faith conduct by plaintiffs infected the entirety of these proceedings, the Court exercises its inherent authority to assess attorney fees as a sanction and awards defendants their reasonable fees expended in litigating this action."); *see also In re W.A.R. LLP*, No. 11-00044, 2012 WL 4482668, at *3 (Bankr. D.C. Sept. 26, 2012) ("When fees are imposed as a sanction pursuant to the court's inherent power, consideration of inability to pay similarly ought not mandate limiting the fees

1  awarded to those the offender is able to pay when other considerations weigh in

2  favor of awarding the full amount of the opponent's fees arising from the bad faith

3  conduct.").

4      This is precisely the type of case in which the Court should <u>not</u> exercise its

5  discretion to lower the sanctions amount against Lobbin due to an alleged inability

6  to pay. Lobbin has been sanctioned time and time again. It is plain that the multiple

7  previous sanctions—for amounts lower than what Kaotica requests here—have no

8  deterrent effect on Lobbin's sanctionable behavior. Dkt. 119-1 at 10 n.5 (collecting

9  exemplary cases in which Lobbin has been sanctioned); Dkt. 130 at 6. In one of

10  those cases, Lobbin requested leniency from the court:

11      I assure this Court that never again will I come close to any violation of
        Rule 11. I have already been deterred from any future Rule 11
12      transgression, because I have already suffered greatly in the form of
13      personal and professional embarrassment, the loss of my position at my
        former firm, and a loss of the time and finances required to pursue this
14      action. Based on my longstanding, good professional record, I believe I
15      should be permitted some degree of mercy in this situation from our
        justice system.
16

17  Ex. 9, ¶ 4. Lobbin made this request for mercy in 2019. Lobbin's attempts at

18  contrition have not been reflected in his actions in this case, as he repeatedly

19  engaged in bad-faith conduct throughout this case, beginning in 2022 and continuing

20  to today.

21      Moreover, even if the Court was inclined to mitigate the amount of Lobbin's

22  fee payment, it also should not do so here because Lobbin fails to meet his burden to

23  establish an inability to pay. *Montgomery v. Etreppid Techs., LLC,* 2010 WL

24  1416771 at *19–20 (D. Nev. April 5, 2010) (citing *Fed. Election Comm'n. v.*

25  *Toledano*, 317 F.3d 939, 949 (9th Cir. 2002)). Though post-trial discovery into

26  Lobbin's inability to pay remains ongoing (with Kaotica recently prevailing on the

27  majority of its motion to compel), what he has produced demonstrates a healthy

28  income stream that can be used to satisfy the sanctions. Even if it did not, "it is just

1   to allow the opposing party to pursue collection of a judgment for the full amount of

2   fees based on the offending party's financial circumstances as they change over

3   time." *In re W.A.R. LLP*, 2012 WL 4482668, at *3.

4         The same is true for Iconic with respect to its alleged inability to pay the

5   attorney fee award under the Lanham Act. It closed its operations conveniently the

6   day of the sanctions hearing. *See* Dkt. 152-1 at 8 (summarizing relevant facts). It

7   cannot escape a full award of attorneys' fees by voluntarily electing to shutter its

8   business—particularly when it inexplicably operated for 6 months after it closed its

9   supposedly only bank account. *Id.* It was Iconic who brought meritless claims

10  against Kaotica and required Kaotica to defend its rights all the way through trial—

11  Iconic should not now receive any degree of benefit for its gamesmanship. *See ITEX*

12  *Corp. v. Global Links Corp.*, No. 2:14-cv-00057-RCJ-NJK, 2015 WL 2152659 at *6

13  (D. Nevada May 7, 2015) (rejecting argument that "Defendants have limited means

14  to satisfy a burdensome fee award," stating "Defendant's cries that their limited

15  means justify a reduction in the fee award is simply unpersuasive. As previously

16  stated, it was Defendants' own willful and deliberate actions that served as the basis

17  for the Court's "exceptional" finding").

18  **IV.    CONCLUSION**

19        For the reasons stated herein, Kaotica respectfully requests that the Court

20  grant its motion and find Lobbin and Iconic jointly and severally liable for

21  $1,626,149.48 in reasonable fees and expenses.

22

23

24

25

26

27

28

1    DATED:  May 2, 2025            Respectfully submitted,

2                                   KILPATRICK TOWNSEND & STOCKTON LLP

3

4                                   By: */s/ Dario A. Machleidt*
                                    X. Diego Wu Min (State Bar No. 317488)
5                                   dwu@ktslaw.com
                                    12255 El Camino Real, Suite 250
6                                   San Diego, CA 92130
                                    Telephone:(858) 350-6154
7                                   Facsimile: (858) 350-6111

8                                   Dario A. Machleidt
                                    (Admitted *Pro Hac Vice*)
9                                   dmachleidt@kilpatricktownsend.com
                                    Kathleen R. Geyer
10                                  (Admitted *Pro Hac Vice*)
                                    kgeyer@kilpatricktownsend.com
11                                  1420 Fifth Avenue
                                    Seattle, WA  98101
12                                  Telephone:(206) 224-2857

13                                  Kristin M. Adams
                                    (Admitted *Pro Hac Vice*)
14                                  kmadams@ktslaw.com
                                    1100 Peachtree Street NE, Suite 2800
15                                  Atlanta, GA 30309
                                    Telephone: (404) 815-6138

16

17                                  Attorneys for Defendant
                                    Kaotica Corporation

18

19

20

21

22

23

24

25

26

27

28