UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ICONIC MARS CORP., <br><br> Plaintiff, <br><br> v. <br><br> KAOTICA CORP., <br><br> Defendant. | Case No.: 22-CV-0092-CAB-DEB <br><br> **ORDER ON APPLICATION FOR ATTORNEYS' FEES AND COSTS** <br><br> **[Doc. No. 145]** |

**A. Background**

On February 5, 2025, the Court entered an order in this case awarding defendant/counterclaimant Kaotica Corporation its attorneys' fees and costs. [Doc. No. 145.][1] The award was made following a jury trial and post-trial motions on equitable claims. The jury determined plaintiff/counter-defendant Iconic Mars Corporation willfully infringed the trade dress rights of Kaotica. The Court determined that Kaotica had not interfered with Iconic's sales in violation of the terms of the parties' previous Stipulated Judgment or unfair competition law. The Court further determined that based on the Stipulated Judgment entered by the parties in *Kaotica Corp. v. Iconic Mars Corp.*, et al., Case No. 21cv433-CAB ("Iconic I") in which Iconic Mars admitted that its product

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

1

infringed Kaotica's valid and enforceable trade dress, Iconic's position this litigation was initiated and pursued in bad faith.

Considering the totality of the circumstances, the Court determined that this case was exceptional.[2] *See Intel Corp. v. Terabyte Inter., Inc*., 6 F.3d 614, 621 (9th Cir. 1993) (generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful). In accordance with the Lanham Act, 15 U.S.C. § 1117(a), the Court awarded reasonable attorneys' fees and costs to Kaotica against Iconic. [Doc. No. 145.] On June 29, 2025, the Court granted Kaotica's motion to amend the judgment to add Oluseyi James Olaleye, the sole owner and founder of Iconic, as a judgment debtor personally responsible for the compensatory damages and fees due to Kaotica.[3] [Doc. No. 192.]

The Court determined pursuant to its inherent powers that an award of sanctions for the reasonable attorneys' fees and costs incurred by Kaotica may be also recovered against lead counsel for Iconic Stephen Lobbin based on his conduct of this litigation. [Doc. No. 145.] The reasonable amount of that sanction will be addressed *infra*.

Now before the Court is Kaotica's application setting forth its claim for the reasonable attorneys' fees and costs it incurred in this litigation. [Doc. No. 175.] The matter has been fully briefed. [Doc. Nos. 196, 207, 224.] Argument was held on August 19, 2025.

**B. Legal Standard**

The calculation of a reasonable fee award is a two-step process. First the court must calculate the lodestar figure by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. Second the court may adjust the lodestar figures based upon the factors listed in *Kerr v. Screen Extras Guild, Inc*., 526 F.2d

---

[2] The Court's analysis of the circumstances supporting a discretionary fee award is fully discussed in the February 2025 order and will not be repeated here.

[3] The Court's analysis of the equitable justification for including Mr. Olaleye as a judgment debtor is fully discussed in the June 2025 order and will not be repeated here.

67, 69-70 (9th Cir. 1975) that have not been subsumed in the lodestar calculation. *Intel Corp.,* 6 F.3d at 621.

The *Kerr* factors include:

1. The time and labor required;
2. The novelty and difficulty of the questions;
3. The skill requisite to perform the legal services properly;
4. The preclusion of other employment due to acceptance of the case;
5. The customary fee;
6. The contingent or fixed nature of the fee;
7. The limitations imposed by the client or the case;
8. The amount involved and the results obtained;
9. The experience, reputation, and ability of the attorneys;
10. The undesirability of the case;
11. The nature of the professional relationship with the client;
12. Awards in similar cases.

*Id.* at 622.

The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation. *Id.*

The burden is on the applicant to produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Camacho v. Bridgeport Financial, Inc*., 523 F.3d 973, 979 (9th Cir. 2008). "The party seeking an award of fees should submit evidence supporting the hours worked" to enable the court to determine and exclude hours that were not reasonably expended and hours that were excessive, redundant or others unnecessary. *Hensley v. Eckerh*art, 461 U.S. 424, 434 (1983).

Ultimately the opposing party bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged. Failure to offer either countervailing evidence or persuasive argumentation in support of the opposing party's position permits the district court to presume a properly supported fee application is

reasonable. *See U.S. v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105-06 (9th Cir. 2015).

### C. Kaotica's Application

#### 1. Reasonableness of Hourly Rates

Kaotica submitted the declaration of Dario A. Machleidt in support of its fee application. [Doc. No. 175-2.] Mr. Machleidt, a partner at Kilpatrick Townsend & Stockton LLP ("Kilpatrick), was lead counsel in this litigation for Kaotica. Mr. Machleidt identified Kilpatrick as an international law firm with an award-winning intellectual property practice. He attested to the hourly rates charged by the trial team, including himself, Kilpatrick associates Kathleen Geyer and Kristin Adams, Kilpatrick paralegals Steve Bassett and Louie Crumbley, and trial technology consultant Arneita Gray.

During the course of the litigation, Mr. Machleidt's hourly rates ranged from $795 to $1125. Associates Geyer and Adams billed at hourly rates of $495 to $795 and $595 to $845 respectively. The paralegal rate ranged from $410 to $475 an hour and Ms. Gray's hourly rate was between $225 and $265. Mr. Machleidt submits that these rates are in line with its peer firms and supported that with reference to the 2023 AIPLA Report on the Economic Survey as a benchmark for reasonableness of attorneys' fee rates in intellectual property cases and LexisNexis CounselLink's 2025 Trends Report on billing rates. [Doc. No. 175-1, at 10-13.] The rates are consistent with awarded hourly rates in civil litigation in this District. *See Mereces-Benz* [sic] *Grp AG v. A-Z Wheels LLC*, No. 16-cv-875-JLS, 2022 WL 7718800, at *2 (S.D.Cal. Oct. 13, 2022) (this District has previously used AIPLA survey data to determine reasonable fee rates in other intellectual property cases).

Despite its assertion that the rates charged by Kaotica's counsel are unreasonably high, Iconic corroborates Kaotica's hourly rates as reasonable with reference to the 2024 *Real Rate Report* documenting rates in trademark cases at $754 to $1,129 for partners and $540 to $922 for associates in the relevant time period. [Doc. No. 196 at 27.]

Given this Court's own familiarity with the San Diego legal market and the intellectual property practice area, the supporting evidence provided by Kaotica and Iconic,

the Court agrees that the requested rates are reasonable and in line with the prevailing market rates for this type of litigation in this District for the relevant time period.

### 2. Reasonable Number of Hours on this Case

Kaotica's application includes detailed monthly billing statements and charts summarizing those statements. [Doc. Nos. 175-2; 175-8; 207; 208.] The statements include the date of the work, the billing attorney, a brief description of the work performed, time spent, and the amount billed. Mr. Machleidt sets forth in his declarations an analysis of the work claimed, and the charges excluded from the fee application. [Doc. Nos. 175-2; 208.] Having reviewed the comprehensive billing statements and summaries, the Court finds the application thorough and well-supported, and that it reflects a conservative assertion of time and expenses incurred in representing Kaotica in this litigation.

In response, [Doc. Nos. 196, 224], Iconic fails to provide a detailed opposition to Kaotica's support for its application. Although Iconic argues at length in its submission that the Court should reconsider the imposition of fees,[4] a very limited portion of the response specifically challenges the reasonableness of the fees claimed. Iconic alludes to *Kerr* Factor 8 in a conclusory fashion, that the amount of fees involved and the results obtained support a downward adjustment by the Court.[5] [Doc. No. 196 at 27 ("Kaotica argues that its hours spent on this action are reasonable, but simply reviewing the results of this case belies this assertion.").]

Iconic contends that a fee award sought by Kaotica, now in excess of $1.7 million, is inherently unreasonable when Kaotica received a judgment of just over $700,000. [*Id.*] Spending more than twice as much on litigation as a party ultimately recovers in compensation in an intellectual property matter is not unreasonable considering the value

---

[4] Much of this argument, an untimely and improper attempt at reconsideration of the Court's order of February 5, 2025, awarding fees, is directed at disputing the fee award as a sanction pursuant to 28 U.S.C. § 1927, particularly as imposed against counsel. The argument ignores the propriety of a fee shifting award against Iconic under the Lanham Act based on the jury's willful infringement finding.

[5] *Kerr,* 526 F.2d at 70. Iconic does not actually reference *Kerr* or any other authority in support of this singular argument directed at the reasonableness of Kaotica's fee claim.

of the injunction Kaotica also received to stop Iconic's continuing, willful infringement of its trade dress, part of the result obtained. Iconic cites no authority that makes recovery of fees and expenses expended to enforce a property right necessarily unreasonable if that amount exceeds the value of the direct damage caused by the willful infringement of that property interest, when such damage will continue unabated if the property right is not enforced by litigation.

Iconic has not met its burden to provide specific evidence to challenge the accuracy and reasonableness of the hours charged in response to Kaotica's detailed submissions. *See $28,000.00 in U.S. Currency*, 802 F.3d at 1105-6 (failure to offer either countervailing evidence or persuasive argumentation in support of the opposing party's position permits the district court to presume a properly supported fee application is reasonable).

The Court finds the documentation submitted and representations of counsel regarding time that was included and excluded more than sufficient to support an award of $1,793,873.82 against Iconic and Mr. Olaleye, the latter as a judgment debtor individually responsible for Iconic's liabilities. Therefore, in accordance with the Lanham Act, 15 U.S.C. § 1117(a), the Court awards $1,793,873.82 in reasonable attorneys' fees and costs to Kaotica against Iconic and Mr. Olaleye.

**D. The Untimely Attempt at Reconsideration**

Before the Court turns to the assessment of the sanction against Iconic's counsel Mr. Lobbin, the bulk of Iconic's response to Kaotica's fee application needs to be addressed. As noted *supra*, Iconic's submissions, [Doc. Nos. 196, 224], consist primarily of untimely attempts at reconsideration of the Court's order awarding fees, and arguments disputing the Court's findings. Iconic has repeatedly attempted in post-trial filings to redefine, recharacterize, and misrepresent the history of this litigation to counter the reality that 1) the jury found that Iconic's conduct willfully infringed Kaotica's trade dress with its continuing sales of the Comet products, and 2) the Court found that Iconic's and its counsel's obstinate denial and repudiation of the terms of the Stipulated Judgment that Iconic entered in the previous case, Iconic I, amounted to bad faith litigation.

The Court has articulated and enumerated in its prior orders and on the record the conduct it observed throughout this litigation that resulted in its finding that Iconic and lead counsel Mr. Lobbin initiated and pursued this litigation in bad faith. It will not be repeated here in detail, but the Court highlights the bad faith conduct that permeated the case.

No matter how many times counsel tries to rewrite or rephrase the language and content of the Stipulated Judgment entered in Iconic I, its terms are unambiguous. Iconic agreed that its product as shown in Exhibit 2 to the Stipulated Judgment (the "Accused Product"), reproduced below, infringed Kaotica's valid trade dress identified in Exhibit 1 to the Judgment. [Iconic I, Doc. No. 43, Exhibits 1 & 2.]

Counsel for Iconic represented to this Court that the Judgment was the product of "extensive" discussion and executed in an overt effort to avoid further litigation. [Iconic I, Doc. No. 60, Contempt Hrg. Transcript, at 14, ("We wanted to move on.").] It is indisputable that Exhibit 2 represents only the external aspects of the "Accused Product."



In Iconic I, Kaotica filed a motion to find Iconic in contempt of the Stipulated Judgment, by continuing to infringe its trade dress, and supported that motion with comparisons of Kaotica's product which depicted the admitted Trade Dress (Exhibit 1 to the Stipulated Judgment), the Iconic "Accused Product" (Exhibit 2 to the Stipulated Judgment), and Iconic's new version of the Comet. [Reproduced below from *id.*, Doc. No. 44 at 16 (emphasis added).]

| Kaotica Trade Dress | Accused Products | New Product |
|---|---|---|
| *[Exhibit 1 as stipulated]* | *[Exhibit 2 as stipulated]* | |

In opposition to Kaotica's contempt motion, Iconic and its counsel never stated or even suggested that the "Accused Product" was anything other than the product Iconic admitted infringed Kaotica's valid trade dress.[6] [*Id.*, Doc. No. 45.] Iconic contended that its New Product was more than colorably different than its Accused Product and did not infringe, particularly because internal aspects of the New Product were substantially different than the previously Accused Product. [*Id.*, at 6-7.]

Although the configuration of the internal portion of the Iconic product was relevant to other intellectual property rights asserted by Kaotica in Iconic I, the internal cavity was not an aspect of the stipulated trade dress right. Iconic's counsel however went on to argue that the Stipulated Judgment did not define Kaotica's trade dress and that Iconic did not

---

[6] Iconic sought to dispute this prior admission much later, pursuing an entirely new line of argument. More than three years after entering the Stipulated Judgment, Iconic filed a motion in Iconic I seeking to "correct" the Accused Product exhibit of the Stipulated Judgment. [Iconic I, Doc. No. 66.] Iconic asserted the exhibit attached to the Judgment depicted a later, redesigned version of Iconic's product and was not the version Kaotica accused of infringing and that Iconic admitted infringed Kaotica's trade dress in Iconic I. Iconic completely failed to raise this alleged "error" during the contempt hearing two years earlier. It was apparent counsel's motivation to bring this untimely motion seeking to alter the record in Iconic I was an unavailing attempt to recover from his client's prejudicial testimony misidentifying the Iconic products at issue in the second trial. The motion was denied. [*Id.,* Doc. No. 69.]

admit trade dress infringement in Iconic I.  [*Id*., Doc. 60 at 14-17.]  Despite the Stipulated Judgment explicitly stating, "Photographs showing the Kaotica Trade Dress are attached hereto as Exhibit 1," [*id*., Doc. No. 43 at 2 and Exhibit 1 at 8-15], consisting of only external views of the Kaotica product from various angles, he insisted Kaotica's trade dress was not defined in the Judgment.  [*Id*., Doc. No. 60 at 14-15.]

Notwithstanding Iconic's admissions in the Stipulated Judgment that (1) Kaotica held valid and subsisting trade dress rights as depicted in Exhibit 1, thereby agreeing to the trade dress rights as defined by Kaotica (the trade dress holder), and (2) admitting that Iconic infringed those rights by its sale of the Iconic product depicted in Exhibit 2, he nevertheless argued to the Court that Iconic did not infringe "any trade dress" either when it entered the Stipulated Judgment or with its subsequent design.  [*Id*.]  He repudiated the terms of the Stipulated Judgment his client entered and argued that Iconic did not admit to the validity of any trade dress, or to the infringement of any trade dress.  [*Id*.]  Counsel argued that if Kaotica asserted trade dress again, Iconic had the right to contest it because the trade dress Kaotica was asserting had never been assessed or defined and Kaotica's rights are "thin at best."  [*Id.* at 16.]

Counsel advanced these arguments on behalf of Iconic, in direct contradiction to the explicit terms of the Stipulated Judgment that his client entered on his advice, and advanced this litigation on behalf of Iconic on the unjustifiable theory that the trade dress definition to which his client stipulated was somehow not a binding contractual admission.  Although the terms of the Stipulated Judgment preserved to Iconic the right to challenge Kaotica's trade dress in future litigation if Iconic introduced a more than colorably different product with regard to the trade dress aspect, [*id*., Doc. No. 43, at 4] it did not give Iconic leave to disregard the stipulation it entered which defined Kaotica's trade dress rights or give Iconic authority to define Kaotica's trade dress as it preferred.  *See Sazerac Co., Inc. v. Fetzer Vineyards, Inc*. 251 F. Supp. 3d 1288, 1301 (N.D. Cal. 2017), a*ff'd*, 786 F. App'x 662 (9th Cir. 2019) (defendant cannot insert unclaimed elements into the asserted trade dress as claimed by the holder).

Rather than focus on differences in external appearance of the new Iconic product to Kaotica's stipulated trade dress, Iconic's counsel brought and continued this litigation on the unmeritorious theory that Kaotica's trade dress rights in the Stipulated Judgment entered in first litigation were not sufficiently defined, that his client could redefine them and thereby contest them. As late as the motion in *limine* hearing he continued to argue for the introduction of evidence of internal differences in Iconic's product compared to Kaotica's product, differences that were never relevant to the external trade dress as identified in the Stipulated Judgment. [Doc. No. 91, Hrg. Transcript, at 51-54.]

Despite the Court's exclusion of evidence of the internal aspects of the Comet devices that were not within the scope of Kaotica's claimed trade dress, Iconic's counsel continued to pursue this theory of his case and elicit such evidence at trial. This was beyond zealous advocacy. It was a *mala fide* denial of Iconic's contractual obligations and an obstinate refusal to accept reality and litigate this case on the terms by which he and his client were bound.

Whether or not Iconic and its counsel believed in Iconic I that Iconic's product infringed valid Kaotica trade dress had become irrelevant, they agreed to it. Counsel on behalf of Iconic contractually committed to the definition of Kaotica's trade dress and admitted Iconic's product infringed that trade dress when he executed and submitted the Stipulated Judgment on behalf of Iconic in Iconic I. That they had expressed reservations or objections before they entered the Judgment did not create some loophole that justified ignoring those commitments and litigating this case as if the Stipulated Judgment never happened. No matter how many ways and times Iconic and its counsel try to repackage and recharacterize this litigation, the Court has concluded that it was initiated and advanced on a bad faith theory that the terms of the Stipulated Judgment regarding the trade dress allegations were not enforceable and that Kaotica's trade dress encompassed internal design aspects of the devices at issue.

### E. Sanction award against Mr. Lobbin

Federal courts possess certain "inherent powers," not conferred by rule or statute, to manage their own affairs to achieve the orderly and expeditious disposition of cases. That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017).

The district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct. *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

> For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees.

*Id.*

Sanctions against counsel are available if the court specifically finds bad faith or conduct tantamount to bad faith. "Reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power." *Id.* at 994.

In this case, Mr. Lobbin repeatedly repudiated or misrepresented the terms of a Stipulated Judgment he negotiated and entered on behalf of his client in prior litigation to press a theory in the present litigation that was contrary to those express terms. "Attempts to renege on a valid settlement agreement lend themselves to such a finding" of bad faith or improper purpose and are sanctionable conduct. *Harper v. Nevada Property 1, LLC*, 552 F.Supp.3d 1033, 1046 (D. Nev. 2021); *see also Doi v. Halekulani Corp.*, 276 F.3d 1131, 1141 (9th Cir. 2002) ("[W]e cannot countenance a plaintiff's agreeing to settle a case in open court, than subsequently disavowing the settlement when it suits her.")

Such sanctions are "limited to the fees the innocent party incurred solely because of the misconduct – or put another way, to the fees that party would not have incurred but for

the bad faith." *Harper*, 552 F.Supp.3d at 1046–47. The court can shift only those attorney's fees incurred because of the misconduct at issue. "A sanction counts as compensatory only if it is calibrated to the damages caused by the bad-faith acts on which it is based." *Goodyear*, 581 U.S. at 108.

> In exceptional cases, the but-for standard even permits a trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop. … [Approving] such an award because literally everything the defendant did – 'his entire course of conduct' throughout, and indeed preceding, the litigation – was 'part of a sordid scheme' to defeat a valid claim.

*Id.*

"The district court could reasonably conclude that all legal expenses in the suit were caused solely by [counsel's] fraudulent and brazenly unethical efforts." *Id*. If a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award. *Id.*

The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection. A district court may take into account its overall sense of a suit and may use estimates in calculating and allocating an attorney's time. *Id*.

The record in this case demonstrates that this litigation initiated by Iconic was not based on the terms of the Stipulated Judgment that provided for future challenge to Kaotica's stipulated trade dress if Kaotica asserted it against a colorably different product. Iconic's counsel was attempting a "do over" arguing that the trade dress terms of the Stipulated Judgment were never agreed to, were incomplete, and therefore not binding. He repeatedly advocated for a definition of Kaotica's trade dress contrary to the Stipulated Judgment to avoid his client's ongoing infringing conduct. These positions had no basis in law or fact. He even went so far as to file a motion in Iconic I, improperly pursuant to Fed. R. Civ. P. 60(a), in a desperate effort to alter the record in that case to benefit his client in this action, knowing the motion was time barred by Rule 60(b) and providing no evidence of excusable error. [*See* fn. 6, *supra*.]

Counsel's conduct throughout this litigation has exhibited reckless disregard of his duties of candor and professionalism to the Court.  During the course of the litigation, he falsely represented to the Court that his client had completely discontinued use and display of the previously admitted infringing product by January 2022, a position laid bare at trial by Kaotica's unrebutted evidence.  Counsel made representations to the Court that were directly contrary to verified interrogatory responses and 30(b)(6) testimony by his client.  Contrary to the Court's admonitions, counsel solicited testimony from his client to introduce to the jury irrelevant and misleading evidence to counter Kaotica's trade dress infringement and damages claims.

Counsel moved this Court for a post-verdict finding of unfair competition against Kaotica based on a single sentence blanketly asserting that documents and evidence presented at trial could support findings and a conclusion of unfair competition. [Doc. No. 123 at 5.]  Despite having the burden to prove this equitable claim, he cited no actual evidence admitted at trial and made no further argument.  It was the essence of a frivolous motion.

This conscious disregard for facts and law demonstrated by Mr. Lobbin in this case is unfortunately not an aberrant occurrence.  Mr. Lobbin has previously been sanctioned by courts in this and other judicial districts. *See LCS Group LLC v. Shire LLC*, No. 18-cv-2688 (AT), 2020 WL 9260990, at *8-9  (SDNY, Jan. 8, 2020) (sanctioning Mr. Lobbin in excess of $133,000 and listing four other litigations in which Mr. Lobbin was personally sanctioned for monetary awards for violations of court orders and unprofessional conduct.); *see also Pham v. Talkdesk, Inc.,* No. 2:22-cv-05325, 2023 WL 6892582, *4 (court dismissed plaintiff's claim with prejudice pursuant to its inherent authority, after finding plaintiff and Lobbin repeatedly made false statements with actual knowledge of their falsity, and as part of a concerted effort to preclude the Court from evaluating the applicable legal standard); *Cap. Sec. Sys., Inc. v. NCR Corp.,* No. 1:23-cv-4691-TCB, 2025 WL 1358594, at *8-10 (N.D. Ga. Apr. 2, 2025) (sanctioning Mr. Lobbin for defendant's attorney's fees for filing an amended complaint with no reasonable chance of success).

Having concluded this case initiated in bad faith by Mr. Lobbin to advance his client's continuing infringement of Kaotica's trade dress rights, the Court in its discretion could find him liable for all the fees incurred by Kaotica. *See Goodyear*, 581 U.S. at 108, (if a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may make a blanket award).

Mr. Lobbin has suggested that if personally sanctioned the amount should not exceed $50,000 as that is what he can afford. While ability to pay is a consideration, the court is not required to reduce the amount to that which the attorney is capable of satisfying. *Haynes v. City & Cnty. of San Francisco*, 688 F.3d 984, 988 (9th Cir. 2012). Moreover, Kaotica has presented evidence that Mr. Lobbin's total annual income consistently exceeds $400,000. [Doc. No. 207 at 10.] As the court pointed out in *LCS Group*, 2020 WL 9260990, at * 9, "a six-figure sanction is needed in order to a have an adequate deterrent effect."

Kaotica claims $621,497.00 in fees and $30,946.17 in costs incurred from the pretrial conference and motion in *limine* hearing through trial, totaling $652,443.17, approximately 36% of the total fees they claim. The Court finds it appropriate to sanction Mr. Lobbin for this portion of the fees and expenses. This case should not have proceeded to trial. By then it was clear, as the jury's verdict demonstrates, that Iconic's position, advocated by Mr. Lobbin, was meritless and contrary to the facts and the law.

Taking into account the Court's overall sense of a suit, the conduct of counsel throughout, and financial hardship this award will impose on him, the Court finds in its discretion that an award holding Mr. Lobbin jointly and severally liable for $652,443.17 of Kaotica's total fee award may be "rough justice" but it at least partially reimburses Kaotica for fees and expenses caused by counsel's conduct.

/////

/////

/////

### F. Conclusion

Kaotica's application for reasonable attorneys' fees and costs is GRANTED. Iconic and Mr. Olaleye, as a judgment debtor are hereby ordered to pay $1,793,873.82 in fees and costs to Kaotica. Iconic's counsel, Mr. Stephen Lobbin, is jointly and severally liable for $652,443.17 of the total fee and cost award.

It is **SO ORDERED**.

Dated: August 25, 2025

_____
Hon. Cathy Ann Bencivengo
United States District Judge